Kevin J, Stoops, Esq. (SBN 332200)
kstoops@sommerspc.com
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, MI 48076
Telephone: (248) 355-0300
Facsimile: (248) 746-4001

*Attorney for Plaintiffs
and the Class*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **BARBARA KULIK**, **JAMES ESKRIDGE**, and **MARY DUNNING GAROFALO** individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**NMCI MEDICAL CLINIC, INC.**, a corporation,<br><br>Defendant | Case No.:  5:21-cv-03495-BLF<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS/COLLECTIVE ACTION SETTLEMENT AND OTHER RELATED RELIEF**<br><br>Complaint Filed: May 10, 2021<br>Trial Date: None Set |

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................ 1

II. PROCEDURAL HISTORY OF THE CASE .................................................. 2

    A. The Proceedings, Pleadings, and Parties.................................................. 2

    B. Summary of Discovery Conducted Prior to Mediation ........................... 3

    C. Estimated Liability .................................................................................. 4

III. SETTLEMENT TERMS .................................................................................. 5

    A. Value of the Settlement to the Class ....................................................... 5

    B. Size of the Class/Collective and Class Definition .................................. 6

    C. Nature of the Payments and Notice, Exclusion, Objection Periods ........ 7

    D. The Released Claims and Released Parties .............................................. 8

    E. Attorney's Fees, Costs, Enhancement, Administration, PAGA............... 9

    F. Notice Procedures................................................................................... 10

IV. ARGUMENT IN SUPPORT OF PRELIMINARY APPROVAL............... 11

    A. Standard of Review for Class Action Settlements ................................ 11

        1. Strength of Plaintiffs' Case, Mediation Supports Approval ........... 12

        2. The Risk, Expense, Complexity, Likely Duration of Litigation...... 12

        3. The Risk of Maintaining Class Action Status Through Trial .......... 13

        4. The Amount Offered In Settlement Is Fair and Reasonable ........... 13

        5. The Extent of the Discovery Completed, Stage of Proceedings...... 14

        6. The Experience and Views of Counsel ........................................... 14

        7. The Presence of a Governmental Participant................................... 15

V. THE CLASS SHOULD BE CONDITIONALLY CERTIFIED ................... 15

    A. The Settlement Classes Satisfy the Requirements of Rule 23................ 15

        1. The Numerosity Requirement is Satisfied....................................... 15

        2. Common Questions of Law and Fact Exist ..................................... 15

        3. Claims of the Plaintiff Are Typical ................................................ 15

        4. Class Representatives and Class Counsel Are Adequate ................ 16

    B. The Prerequisites of Rule 23(b) Are Also Satisfied .............................. 16

        1. The Predominance Requirement...................................................... 16

    C. The Standard for Section 216(b) FLSA Settlement Approval is Met ..... 17

VI. REQUESTED APPROVAL AND FEES, COSTS, ENHANCEMENT .......... 17

    A. The Requested Fees and Costs are Appropriate, and Class Counsel Will Submit Detailed Support for Them Prior to Final Approval ................................................... 17

    B. The Class Representative Enhancement Is Reasonable........................... 19

    C. The Administrator and Administration Costs Should Be Approved ........ 19

VII. THE PROPOSED METHOD OF NOTICE IS APPROPRIATE ................. 20

**VIII.   A FINAL APPROVAL HEARING SHOULD BE SCHEDULED** .................................. **21**

**IX.     CONCLUSION** ............................................................................................ **22**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## TABLE OF AUTHORITIES

*Adams v. Inter-Con Security Sys., Inc.*
  2007 WL 3225466 (N.D. Cal. Oct. 30, 2007) ......................................... 20
*Boyd v. Bank of Am. Corp.*
  2014 WL 6473804 (C.D. Cal. Nov. 18, 2014) .......................................... 18
*Boyd v. Bechtel Corp.*
  485 F. Supp. 610 (N.D. Cal. 1979) ....................................................... 14
*Churchill Village, L.L.C. v. General Electric*
  361 F.3d 566 (9th Cir. 2004) ............................................................... 20
*Class Plaintiffs v. City of Seattle*
  955 F.2d 1268 (9th Cir. 1992) ........................................................ 13, 14
*Cook v. Niedert*
  142 F.3d 1004 (7th Cir. 1998) ............................................................. 19
*Cotter v. Lyft, Inc.*
  193 F. Supp. 3d 1030 (N.D. Cal. 2016) ............................................ 11, 16
*Cotter*
  176 F. Supp. 3d ................................................................................. 11
*Eisen v. Carlisle & Jacquelin*
  417 U.S. 156 (1974) ........................................................................... 20
*General Tel. Co. of the Sw. v. Falcon*
  457 U.S. 147 (1982) ........................................................................... 15
*Hanlon v. Chrysler Corp.*
  150 F.3d 1011 (9th Cir.1998) ..................................................... 11, 14, 15
*In re Activision Sec. Litig.*
  723 F. Supp. .................................................................................... 18
*In re Am. Apparel, Inc. S'holder Litig.*
  2014 WL 10212865 (C.D. Cal. July 28, 2014) ...................................... 18
*In re American Med. Sys.*
  75 F.3d 1069 (6th Cir. 1996) ............................................................... 16
*In re Heritage Bond Litig.*
  2005 WL 1594403 (C.D. Cal. June 10, 2005) ...................................... 18
*In re High–Tech Emp. Antitrust Litig.*
  2014 WL 3917126 (N.D. Cal. Aug. 8, 2014) ........................................ 11
*Kirkorian v. Borelli*
  695 F. Supp. 446 (N.D. Cal. 1988) ...................................................... 14
*Linney v. Cellular Alaska P'ship*
  151 F.3d 1234 (9th Cir. 1998) ............................................................. 14
*Lynn's Food Stores, Inc. v. U.S. By and Through U.S. Dept. of Lab., Empl. Standards Admin., Wage and Hour Div.*
  679 F.2d 1350 (11th Cir. 1982) ........................................................... 17
*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*
  221 F.R.D. 523 (C.D. Cal. 2004) ......................................................... 14
*Staton v. Boeing Co.*
  327 F.3d 938 .................................................................................... 19
*Van Bronkhorst v. Safeco Corp.*
  529 F. 2d 943 (9th Cir. 1976)- ............................................................. 14

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Vaquero v. Ashley Furniture Indus., Inc.*
  824 F.3d 1150 (9th Cir. 2016) ........................................................................ 17
*Vizcaino*
  290 F.3d ....................................................................................................... 18
*Wright v. Linkus Enters., Inc.*
  259 F.R.D. 468 (E.D. Cal. 2009) .................................................................... 20
*Yue Zhou v. Wang's Rest.*
  2007 WL 2298046 (N.D. Cal. Aug. 8, 2007) ................................................. 17

**Statutes**

29 U.S.C. 216(b) ..................................................................................... 3, 12, 17
29 U.S.C. §201 ................................................................................................... 2
Section 1542 of the California Civil Code ........................................................ 9
U.S.C. § 201 ...................................................................................................... 9

**Rules**

Fed. R. Civ. P. 23(a)(1) ................................................................................... 15
Fed. R. Civ. P. 23(a)(2) ................................................................................... 15
Fed. R. Civ. P. 23(c) ....................................................................................... 22
Fed. R. Civ. P. 23(c)(2)(B) ............................................................................. 20
Fed. R. Civ. P. 23(e) ........................................................................... 11, 16, 21
Fed. R. Civ. P. 23(e) (1) .................................................................................. 20
Rule 23 of the Federal Rules of Civil Procedure ...................... 2, 12, 13, 15
Rule 23(b) ........................................................................................................ 16
Rule 23(b)(3) .............................................................................................. 16, 20
Rule 23(e) and Rule 23(c) ............................................................................... 20
Rule 23(e)(2) of the Federal Rules of Civil Procedure ................................. 11

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.     INTRODUCTION**

3

This is a FLSA/California wage-and-hour hybrid collective/class action. Plaintiffs, Barbara Kulik,

4

James Eskridge, and Mary Dunning Garofalo (hereinafter "Plaintiffs") have settled this litigation on behalf

5

of approximately 94 hourly, non-exempt California employees of Defendant.  The Plaintiffs filed their

6

First Amended Complaint ("FAC") asserting the following causes of action on a class or representative

7

basis against Defendant: (1) failure to pay overtime under the Fair Labor Standards Act (FLSA); (2) failure

8

to pay minimum wages under the California Labor Code ("Labor Code"); (3) failure to pay overtime under

9

the Labor Code; (4) failure to provide meal and rest periods under the Labor Code; (5) failure to provide

10

accurate wage statements under the Labor Code; (6) failure to reimburse business expenses under the Labor

11

Code; (7) failure to pay wages at separation under the Labor Code; (8) unfair competition under the

12

California Business and Professions Code; and (9) violations of the California Private Attorneys General

13

Act ("PAGA").

14

Without waiving any arguments regarding the merits of these claims, or the suitability of the case

15

for class treatment, the Defendant has agreed to pay $875,000.00 (the Gross Settlement Amount) to resolve

16

all of the claims asserted in the FAC. Plaintiffs, without opposition from Defendant, seek court approval

17

of the Parties' Settlement Agreement. Filed concurrently in support of this Motion is the Settlement

18

Agreement attached as Exhibit 1 and the declaration of proposed Class Counsel, Kevin Stoops, attached

19

as Exhibit 2.  A proposed order is attached as Exhibit 3.

20

This is a common fund settlement, with no claims process and no reversion. There will be no

21

claim forms, and those class/collective members who do not request exclusion from the Settlement will

22

automatically receive settlement checks. However, the Agreement allocates $20,000 to resolution of the

23

claims asserted under the FLSA, and any individual who wishes to participate in the FLSA settlement will

24

need to sign and return a consent to join form.  As discussed in more detail below, the

25

Class/Collective/Group is comprised of Defendant's current and former hourly employees in

26

California holding the positions of Medical Assistants, Physician Assistants, and Nurse Practitioners

27

during. *See*, Exh. 1 at ¶ 10(a).

28

MEMORANDUM FOR PRELIMINARY APPROVAL                          Case No. 5:21-cv-03495-BLF

For settlement purposes only, Plaintiffs request entry of an order (1) preliminarily certifying the proposed Settlement Class and FLSA Collective under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") and 29 U.S.C. §201 *et seq*.; (2) preliminarily approving the Parties' Settlement; (3) preliminarily appointing the named Plaintiffs and Plaintiff Yadira Gomez as the representatives for the Settlement Class Members, and proposed Class Counsel as counsel for the Class Members, FLSA Collective Members, and PAGA Group; (4) approving the Parties' proposed Notice; and (5) scheduling a hearing on the final approval of the Settlement and approval of the application of Class Counsel and Plaintiffs for their requested attorneys' fees, costs, and service awards.

## II.    PROCEDURAL HISTORY OF THE CASE

### A.    The Proceedings, Pleadings, and Parties

On May 10, 2021, Plaintiffs filed this lawsuit and provided notice to the Labor and Workforce Development Agency of the forthcoming PAGA claims. [Docs. 1-2.] On June 22, 2021, Defendant filed an Answer to Plaintiffs' Complaint. [Doc. 11.]  At the conclusion of the statutory waiting period, on July 13, 2021, Plaintiffs filed the First Amended Complaint ("FAC") adding their claims under the PAGA. [Doc. 17.]  As referenced above, the Plaintiffs and Class Members are all hourly, non-exempt Medical Assistants, Physician Assistants, and Nurse Practitioners.

In the FAC, Plaintiffs, make a number of allegations of off-the-clock work, including time spent completing necessary work-related paperwork (such as medical charting). [FAC ¶15.]  Plaintiffs were scheduled to see patients every twenty minutes during the workday.  However, the appointments often ran beyond the allotted twenty minutes, which left Plaintiffs with little time to perform their necessary medical charting duties. [*Id*. ¶24.]  Indeed, the FAC alleges "Defendant would always discourage or outright refuse to allow Plaintiffs and other Class Members to log overtime hours." [*Id*. ¶27.]  Additionally, at the end of 2019, Defendant informed Plaintiffs and other Class Members that they were "exempt" employees under state and federal labor laws, and would not receive overtime premium wages. [*Id*.]  If proven true, these facts would establish valid claims under both state and federal law.

However, Defendant strongly disputes the veracity of Plaintiffs' factual allegations and also

maintains the alleged claims are not suitable for class treatment.  Nonetheless, on September 16, 2021, the Parties submitted a stipulation and proposed order to attend a private mediation.  [Doc. 30.]

In the months that followed, the parties engaged in informal discovery, which included production of payroll and employment data for the putative class/collective.  This informal discovery assisted the parties in preparing detailed mediation summaries. Additionally, for assistance in creating a class-wide damage model, Class Counsel enlisted the services of damages expert and forensic accountant Eric Lietzow, CPA/ABV of Desmond, Marcello & Amster, P.C.  Finally, in January 2022, the Parties attended a mediation with the Honorable Cecily Bond (Ret.).  Unfortunately, the first mediation the Parties attended was unsuccessful.

Immediately after the failed mediation, Class Counsel wasted no time in moving the litigation forward. On February 10, 2022, Class Counsel filed a comprehensive motion for conditional certification, pursuant to 29 U.S.C. 216(b).  [Doc. 35.]  However, before briefing on the conditional certification motion continued, the Parties reached an agreement to attend a second mediation. On February 21, 2022, a Joint Motion and Stipulation to Continue the Hearing on Plaintiffs' Motion for Conditional Certification was filed, which included a tolling agreement for the FLSA statute of limitations.  [Doc. 36.] The Court granted the Motion to Continue and the case returned to a mediation/settlement posture.  [Doc. 37.]

On March 1, 2022, the Parties attended a second mediation with nationally respected wage and hour mediator, Gig Kyriacou.  After extensive arms-length negotiations, and with the assistance of Mr. Kyriacou, the Parties were able to reach a class-wide settlement of all of the claims asserted in the FAC.  A Memorandum of Understanding was executed the same day, and, over the next several weeks, the Parties continued to negotiate the terms of the long-form settlement agreement.  On April 1, 2022, Plaintiffs filed a Notice of Settlement and Withdrawal of Pre-Discovery Motion for Conditional Certification. [Doc. 39.]

**B.    Summary of Discovery Conducted Prior to Mediation**

As stated above, significant discovery has already occurred in this case.  In preparation for the mediation, Defendant produced payroll and time data for the Class Members.  Eric Lietzow assisted

Class Counsel in synthesizing the data into an accurate damage model based on the sampling of records produced by Defendant.[1]

Specifically, in preparation for mediation, Defendant produced complete payroll and time data for 21 of the 94 Class Members (22% of the class). From analyzing this representative data, Class Counsel was able to extrapolate the findings to the remainder of the Class Members to create a damage model.  Based on the data produced, and with the assistance of Mr. Lietzow, Class Counsel was able to obtain the following metrics relative to the Class Members: approximately 23,683 shifts, 5,666 workweeks and 2,833 pay periods. However, by the time of the second mediation, the estimated number of workweeks had increased to 6,500 workweeks (3,250 pay periods).  Exhibit 2, Stoops Decl. at ¶¶ 14, 18-19.

### C.     Estimated Liability

If Plaintiffs succeeded in proving: ten (10) minutes of off the clock work every shift; that they worked through their meal periods on 10% of their shifts; missed 10% of their rest breaks (with no valid waiver); and incurred $10 a month in unreimbursed business expenses, then Class Counsel estimates the maximum damage exposure to the Class Members for every claim asserted in the FAC to be $1,666,170.15.  Exh. 2, ¶¶  20-21.  This number is broken down as follows: $265,798.27 in straight time wages; $159,342.31 in overtime wages; $159,342.31 in liquidated damages; $16,270.80 in unreimbursed business expenses; $112,594.38 in meal break damages; $114,425.30 in rest break damages; $555,892.78 in waiting time penalties; $91,411.50 in wage statement penalties; $63,697.50 in Labor Code §558 penalties; and $127,395.00 Labor Code 2699(f)(2) penalties. *Id*.

Of course, Defendant strongly disputes any off the clock work occurred and also denies any unreimbursed business expenses. Furthermore, although Plaintiffs maintain there is absolutely no excuse for classifying the Class Members as exempt from overtime, as illustrated above, the overtime component of the damages in this case is relatively insignificant.  The data sampling demonstrated there were many workweeks in which the hours worked did not support a claim for unpaid overtime (daily or weekly). *Id*., ¶ 22.  In any case, based on the above maximum possible recovery, the proposed

---

[1] *See*, www.dmavalue.com (last visited 4-26-22).

MEMORANDUM FOR PRELIMINARY APPROVAL     Case No. 5:21-cv-03495-BLF

Settlement offers the Class Members approximately 52% of their damages. *Id*., ¶ 23.

The settlement amount is substantial, completely reasonable, and marks a fair compromise of the claims. Significantly, the total settlement amount equates to more than the total actual wage damages (overtime wages plus straight time wages) of $318,684.62 and the unreimbursed business expenses ($16,270.80) suffered by the Class when computing claims equal to **10 minutes of off-the-clock work per shift per class member**. Indeed, a large portion of the damages to be paid under the settlement are for various penalties under the California Labor Code. *Id*., ¶ 23.

## III.    SETTLEMENT TERMS

The Stipulation of Settlement provides as follows:

### A.    Value of the Settlement to the Class

The settlement provides for a non-reversionary Gross Fund Value ("GFV") of $875,000.00. [Exh.1, at ¶2.] The Net GFV means the Settlement Amount minus Class Counsel's fees and costs, the charges for the Claims Administrator, the named Plaintiffs' ("Class Representatives") enhancement awards, the FLSA settlement fund, and the PAGA settlement fund. [*Id*. at ¶ 2(f).] The anticipated Net GFV is approximately $571,500.00, based on the following deductions from the GFV: $5,000.00 to each of the three Class Representatives as an enhancement award; $20,000.00 for settlement administration fees; $20,000.00 for the FLSA Penalty Payment fund; $20,000.00 for the PAGA Payment fund; $262,500.00 for attorney fees (30% of the GFV); and up to $20,000 in litigation expenses. The Net GFV of $571,500.00 provides *substantial* relief and will be distributed to the approximately 94 class members on a pro-rata basis. *Id*. ¶ 2.

More specifically, all Participating Class Members will receive a portion of the Net GFV on a pro rata basis, based on the number of workweeks they worked during the Class Period with an adjustment to be made based on each Participating Class Member's position and rate of pay ("Class Payment"). First, the Administrator will calculate the total number of workweeks worked by each Class Member and multiply that number by their base hourly rate of pay for the last pay period that they worked for Defendant during the Class Period to determine their "Individual Qualifying Wages." Second, the Administrator will add together the Individual Qualifying Wages for all of the

Participating Class Members to determine the "Aggregate Qualifying Wages." Third, the Administrator will divide each Participating Class Member's Individual Qualifying Wages by the Aggregate Qualifying Wages to determine that Participating Class Member's "Qualifying Wages Ratio." Finally, the Administrator will multiply each Participating Class Member's Qualifying Wages Ratio by the Net GFV to determine their "Class Payment." [*See*, Exh.1 at ¶2(f)(ii).]

Additionally, the PAGA Payment will be calculated in a similar fashion, after 75% of the PAGA Payment fund is allocated to the LWDA. The Administrator will also calculate the total number of PAGA Workweeks worked by each PAGA Group Member during the PAGA Period and the aggregate total number of PAGA Workweeks worked by all PAGA Group Members during the PAGA Period. The Administrator will then use the following formula to calculate each PAGA Group Member's "PAGA Payment": After deducting $5,000, or any other amount approved by the Court that is 25% of the PAGA Penalties, the Net PAGA allocation will be divided by the aggregate total number of PAGA Workweeks, resulting in the "Workweek Value." Each PAGA Group Member's PAGA Payment will be calculated by multiplying their number of PAGA Workweeks worked by the Workweek Value. [*Id* at ¶2(f)(iii).]

Finally, The Administrator will also calculate the total number of FLSA Workweeks worked by each Participating FLSA Collective Member during the FLSA Period and the aggregate total number of FLSA Workweeks worked by all Participating FLSA Collective Members during the FLSA Period. The Administrator will then use the following formula to calculate each Participating FLSA Collective Member's "FLSA Payment": the $20,000 FLSA allocation will be divided by the aggregate total number of FLSA Workweeks, resulting in the "Workweek Value." Each Participating FLSA Collective Member's FLSA Payment will be calculated by multiplying their number of FLSA Workweeks worked by the Workweek Value. [*Id* at ¶2(f)(iv).]

## B. Size of the Class/Collective and Class Definition

Under the Agreement, "Participating Class Members" are defined as: "all of Defendant's current and former hourly employees in California holding the positions of Medical Assistants, Physician Assistants, and Nurse Practitioners during the Class Period (between May 10, 2017 through

May 10, 2022) and who did not submit a valid and timely Request for Exclusion (or opt-out) from the Class. [*Exh. 1* at ¶10(a).]

"Participating FLSA Collective Members" are defined as: "all of Defendant's current and former hourly employees in California holding the positions of Medical Assistants, Physician Assistants, and Nurse Practitioners during the FLSA Period (between May 10, 2018 through May 10, 2022) and who submit a valid opt-in form." [*Id.*]

"PAGA Group Members" means "all of Defendant's current and former hourly employees in California holding the positions of Medical Assistants, Physician Assistants and Nurse Practitioners during the PAGA Period (May 10, 2020 through May 10, 2022)." [*Id.*]

As of the time of mediation, Defendant estimated that the Class consists of approximately 6,500 workweeks.  [*Id.* at ¶13.]

**C.    Nature of the Payments and Notice, Exclusion, Objection Periods**

This is a common fund settlement with no reversion, and every Participating Class Member will automatically be sent a check from the Net GFV. [*Exh. 1*, ¶10(a)-(b).]  The Administrator shall mail and distribute to all Class Members a notice of the settlement in English informing them of the basic information regarding its terms, how to submit objections, how to exclude themselves from this proposed settlement, their estimated shares of the Net GVF, how to dispute the allocated number of workweeks, and the date for a final fairness hearing (the "Class Notice," in a form substantially similar to that attached as *Exhibit A* to the Settlement Agreement) and the FLSA Opt-in Form (in a form substantially similar to that attached as *Exhibit B* to the Settlement Agreement).

Any monies allocated to Class Members who do not participate in this settlement because they opted out will be redistributed to the Net GVF for distribution in accordance with this Agreement. The redistribution will take place by eliminating the non-participating class members' Individual Qualifying Wages from the Aggregate Qualifying Wages used to calculate the Total Value per Workweek. The Total Value per Workweek will then be recalculated and applied to Participating Class Members' workweeks to determine their respective share of the Net GFV.  [Exh. 1, ¶10(b).]

Eighty Percent 80% of the payment of the Net GFV to Participating Class Members will

consist of 1099 income representing payment for statutory penalties, interest and expense reimbursement. Id. ¶10(c).  The remaining 20% will be considered wages subject to deductions for withholdings for the Employer's Taxes and Required Withholding and a Form W-2. [*Id*.] The PAGA Penalty Payments and FLSA Penalty Payments will be allocated 100% to penalties and interest that will not be subject to deductions and withholdings. [*Id*.]

The Response Deadline for purposes of a Class Member's Request for Exclusion, FLSA Opt-in Form, or Notices of Objection to the Administrator shall be forty-five (45) calendar days from the initial mailing of the Class Notice by the Administrator, unless the forty-fifth (45th) calendar day falls on a Sunday or Federal holiday, in which case the Response Deadline will be extended to the next day on which the U.S. Postal Service is open. [*Id*., ¶10(j).] The Response Deadline for Requests for Exclusion, FLSA Opt-in Form, and Notices of Objection will be extended by fourteen (14) calendar days for any Class Member who is re-mailed a Class Notice by the Administrator, unless the fourteenth (14th) calendar day falls on a Sunday or Federal holiday, in which case the Response Deadline will be extended to the next day on which the U.S. Postal Service is open. [*Id*.]  The Response Deadline may also be extended by express written agreement between Class Counsel and Defendant. Under no circumstances, however, will the Administrator have the authority to unilaterally extend the deadline for Class Members to submit a Request for Exclusion, FLSA Opt-in Form, or Notice of Objection. [*Id*.]

### D.    The Released Claims and Released Parties

The Participating Class Members will release only the claims asserted in the FAC. Specifically, the Class Members will release: "any and all claims, demands, debts, duties, obligations, promises, liabilities, damages, accounts, payments, liens acts, costs, expenses, sums of money, suits, dues, actions or causes of action, both in law and in equity, whether known or unknown, matured or unmatured, suspected or unsuspected, against any of the Released Parties which were alleged in the Action or which could have been alleged based on the facts alleged in the Action and which occurred during the Class Period (including, but not limited to, claims for failure to pay overtime wages; failure to pay minimum wages; failure to provide meal periods or compensation in lieu thereof; failure to

provide rest periods or compensation in lieu thereof; waiting time penalties; wage statement violations; unfair competition in connection with the allegations brought in the Action; and any violations of Labor Code sections 201, 202, 203, 226, 226(c), 226.7, 227.3, 510, 512, 558.1, 1194, 1194.2, 1197, 1198.5, and 2802).” [*Exhibit 1* at ¶ 3(b).]

Additionally, all FLSA Collective Members will release: “any and all claims, demands, debts, duties, obligations, promises, liabilities, damages, accounts, payments, liens acts, costs, expenses, sums of money, suits, dues, actions or causes of action, both in law and in equity, whether known or unknown, matured or unmatured, suspected or unsuspected, against any of the Released Parties, for any and all types of relief under the Fair Labor Standards Act, U.S.C. § 201, et seq., including without limitation claims for failure to pay minimum wage, overtime, and for all hours worked, and any and all claims for recovery of compensation, overtime pay, minimum wage, liquidated damages, interest, and/or penalties tied to such claims, that arose or accrued at any time during the FLSA Period.” *Id.* at ¶ 3(c).

The Representative Plaintiffs will provide a general release, including a waiver of the provisions of Section 1542 of the California Civil Code. *Id.* at ¶ 3(e-f).

### E.   Attorney’s Fees, Costs, Enhancement, Administration, PAGA

From the GFV, Two Hundred Sixty Two Thousand Five Hundred Dollars and Zero Cents ($262,500.00), or 30% of the GFV, shall be allocated to Class Counsel’s Fees. Additionally, Class Counsel seeks reimbursement of litigation expenses (“Costs”), which are estimated to be no more than Twenty Thousand Dollars ($20,000.00) by the conclusion of the Settlement. [*Exh. 1* at ¶2(e).]  The current total for Class Counsel’s litigation expenses is $14,256.43. [*Exh. 2*, Stoops Decl. at ¶ 39.]

Furthermore, the Agreement provides that Twenty Thousand Dollars and Zero Cents ($20,000) of the GFV will be allocated to resolve the Class Members’ claims under the Private Attorneys General Act (“PAGA”) and will be distributed in accordance with the percentages identified within the Act. Specifically, twenty-five percent (25%) of the PAGA penalty allocation or $5,000.00 will be distributed to the Net GFV for distribution to PAGA Group Members (defined in 10(a) below) on a pro rata basis, and seventy-five percent (75%) of the PAGA penalty allocation (i.e. $15,000.00) will

be distributed to the California Labor and Workforce Development Agency (LWDA)." [*Exh. 1* at ¶ 2(e).]

For their assistance in obtaining relief for the Settlement Classes, the Class Representatives (Barbara Kulik, James Eskridge, Mary Dunning Garofalo, and Yadira Gomez) seek Enhancements in the amount of $5,000.00 each.

Finally, Settlement Agreement allocates up to $20,000.00 for settlement administration expenses, but the bid accepted for the administration of the settlement was just $4,226.46. *Id*. at ¶ 2(b). The parties have selected Simpluris, Inc. as the Settlement Administrator. Any unused funds allocated to settlement administration expenses will pour into the Net GFV.

### F. Notice Procedures

Within ten (10) calendar days after the date that the Court grants preliminary approval of this Agreement, Defendant shall provide to the Administrator a list of all Class Members ("Class List") and all information necessary to locate Class Members, process payments, and process claims for payments, including, but not limited to, Class Member workweeks or dates of employment, last known addresses, last known email addresses, social security numbers, and any other information required to effectuate the Agreement. [*Exh. 1*, Settlement, ¶ 10(e).] The Administrator shall mail and distribute to all Class Members a notice of this settlement in English informing them of the basic information regarding its terms, how to submit objections, how to exclude themselves from this proposed settlement, their estimated shares of the Net GVF, how to dispute the allocated number of workweeks, and the date for a final fairness hearing (the "Class Notice," in a form substantially similar to that attached the Agreement as **Exhibit A**) and the FLSA Opt-in Form (in a form substantially similar to that attached the Agreement as **Exhibit B**). *Id*., ¶10 (b).

As discussed above, the Response Deadline for purposes of a Class Member's Request for Exclusion, FLSA Opt-in Form, or Notices of Objection to the Administrator shall be forty-five (45) calendar days from the initial mailing of the Class Notice by the Administrator, unless the forty-fifth (45th) calendar day falls on a Sunday or Federal holiday, in which case the Response Deadline will be extended to the next day on which the U.S. Postal Service is open. *Id.* at ¶ 10(j). In the event Class

1    Notice is returned as undeliverable, the Response Deadlines will be extended by fourteen (14) calendar

2    days. *Id.*

3         The parties agree to cooperate with the Claims Administrator to locate Class Members, if

4    necessary.  *Id.*, ¶17.

5    **IV.      ARGUMENT IN SUPPORT OF PRELIMINARY APPROVAL**

6         **A.      Standard of Review for Class Action Settlements**

7         Actions brought as class actions may only be settled with court approval. *See* Fed. R. Civ. P. 23(e).

8    There is a presumption that settlement negotiations were conducted in good faith, but nevertheless, "district

9    courts should review class action settlements just as carefully at the initial stage as they do at the final

10   stage. At the initial stage, the inquiry should be whether the settlement is 'fair, reasonable, and adequate,'

11   based on any information the district court receives from the parties or can obtain through its own

12   research." *Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1037 (N.D. Cal. 2016). Rule 23(e)(2) of the Federal

13   Rules of Civil Procedure states that the district court may only approve the settlement if, taken as a whole,

14   "it is fair, reasonable, and adequate." *See also, Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th

15   Cir.1998). In determining whether to finally approve a settlement, the district court must balance "the

16   strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the

17   risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of

18   discovery completed and the stage of the proceedings; the experience and views of counsel; the presence

19   of a governmental participant; and the reaction of the class members to the proposed settlement." *Id.*

20        While it is less clear what standard should drive the preliminary approval process, "[s]ome district

21   courts ... have stated that the relevant inquiry is whether the settlement 'falls within the range of possible

22   approval' or 'within the range of reasonableness.'" *Cotter*, 176 F. Supp. 3d at 935 (citing *In re High–Tech*

23   *Emp. Antitrust Litig.*, No. 1–CV–02509–LHK, 2014 WL 3917126, at *3 (N.D. Cal. Aug. 8, 2014); *see*

24   *also, id.* ("perhaps the most important factor to consider is 'plaintiffs' expected recovery balanced against

25   the value of the settlement offer."). Where both sides face significant uncertainty, the attendant risks favor

26   settlement. *Hanlon*, at 1026.

27

28

1

**1.  Strength of Plaintiffs' Case, Mediation Supports Approval**

Courts presume a settlement is fair. The Settlement here was reached through arm's-length bargaining between counsel, which included offers and counteroffers, a failed mediation, and eventually an agreement after the parties returned to settlement discussions at a second mediation with Gig Kyriacou. Class Counsel was confident in the merits of claims asserted, and likewise Defendant maintained that it would be able to defeat a class certification motion and/or class claims on the merits, including an anticipated motion for summary judgment. The parties preferred this Settlement to facing protracted litigation and incurring costs and fees before this honorable Court or the Ninth Circuit.

Prior to the mediation process, both parties researched their claims and defenses in order to appropriately evaluate the strengths and weaknesses of their respective cases, and did so in view of the comprehensive class-wide (albeit informal) discovery addressed above. Prior to and during the mediation, Defendant also voluntarily provided class data and information which permitted an objective assessment of Defendant's potential liability exposure. Ultimately, both parties carefully weighed the risks and benefits of resolving the case in comparison to proceeding with the motion for class certification and summary judgment, and, potentially, before the Ninth Circuit. The parties concluded that the settlement terms were acceptable and the benefits of settling outweighed the risks of further litigation.

**2.  The Risk, Expense, Complexity, Likely Duration of Litigation**

The parties have disputed the strength of Plaintiff's claims and the substantial risk of not attaining class certification under Rule 23, or certification of the Collective under 29 U.S.C. §216(b), or an adverse ruling on a summary judgment motion. Defendant maintains even if the Plaintiff and Class Members prevail on their claims, the damages owed to the Class Members are nominal. Class Counsel submits it has properly assessed the risks of continued litigation, including at trial and on appeal, in concluding the Settlement is fair. [*Exh. 2*, Stoops Decl. at ¶ 40.]

Both sides advocated strongly for their respective clients' chances for success on the primary claim that Defendant failed to properly compensate employees for all hours worked and failed to provide compliant meal and rest breaks.  Proof of liability and damages here would have been challenging. This is particularly true on the off the clock work claim where no records exist to

specifically document the duration of off the clock work from one employee to another. The Settlement now saves the parties and the Court from years of litigation, including Rule 23 class certification, a FLSA collective decertification motion, dispositive motions, trial, and appeal.  It is very likely that this litigation would extend for another two years and cost the parties hundreds of thousands of dollars or more in attorneys' fees and expenses.  For these same reasons, the law strongly favors settlements, particularly where complex class action litigation is concerned.  *See, Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

In light of Defendant's advocated defenses, the difficulties in proving damages, the number of class members, uncertainty of certifying claims, and the manageability issues presented, the Settlement is within the range of reasonableness for approval.

### 3.   The Risk of Maintaining Class Action Status Through Trial

The above discussion applies to the risks of maintaining this action through trial, as Plaintiff would have faced contested motion practice and continued expenses and delay to get to trial, would have faced manageability challenges at trial, and would have likely faced the additional time and delay required in further proceeding before the Ninth Circuit.  The uncertainty on the legal issues at the core of the parties' claims and defenses further underscores the reasonableness of the proposed Settlement in the face of palpable risk.

The parties strongly contested the relative risks in this case, and adjusted them based on several factors, including recent case law, likelihood of success at certification, likelihood of success on the merits, and varying assumptions of alleged non-compliance with California law. Given the constantly shifting legal landscape of class action litigation, there is also a significant chance that any class certification, collective and/or representative order or judgment in favor Plaintiffs could be overturned on appeal. All of these were very substantial risks any of which could have resulted in the class/collective members receiving nothing if the claims were further litigated.

### 4.   The Amount Offered In Settlement Is Fair and Reasonable

Based upon the evidence obtained and the figures above, Defendant's realistic maximum damage exposure in this case is approximately $1,666,170.15. [*Exh. 2*, Stoops Decl. at ¶ 20-21.]

Accordingly, the $875,000.00 Settlement offers the Class Members 52% of their maximum damages. Courts in the Ninth Circuit have observed that: "simply because a settlement may amount to only a fraction of the potential recovery does not in itself render it unfair or inadequate. Compromise is the very nature of settlement." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 624 (N.D. Cal. 1979); *see also Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.,* 221 F.R.D. 523, 527 (C.D. Cal. 2004) (it is "well settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery"). The Settlement here is significantly more than a "fraction" and provides a recovery commensurate with the associated risk factors involved in the case.

Settlement in class actions is preferable where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation. *See, e.g., Class Plaintiffs v. City of Seattle*, 955 F. 2d 1268, 1276 (9th Cir. 1992); *Van Bronkhorst v. Safeco Corp.*, 529 F. 2d 943, 950 (9th Cir. 1976). Here, the Settlement is fair and reasonable based on the strength of Plaintiffs' claims and the risks and costs of further litigation. The Settlement compares favorably to the uncertainties of further litigation. *Nat'l Rural Telecomm. Coop. v. Hughes Commc'ns Galaxy, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998).

### 5.    The Extent of the Discovery Completed, Stage of Proceedings

This factor supports approval as the parties have completed substantial discovery, which has allowed them to properly evaluate the strengths and weaknesses of their positions on the various legal issues.  As such, significant investment has been made by both parties who stand to lose everything based on the uncertainty of the outstanding legal issues in this case.

### 6.    The Experience and Views of Counsel

Another factor considered in determining the fairness of a settlement is the experience and views of counsel.  *Hanlon*, 150 F.3d at 1026. Courts do not second guess the parties, or substitute their judgment for that of the proponents of the settlement, and many courts give considerable weight to the opinion of experienced counsel supporting the settlement. *See, e.g., Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988). Where there is no evidence of fraud or collusion, courts presume they were conducted in good faith. *See Newberg on Class Action*, 3d Ed. § 11.51.

Class Counsel have practiced law for many years, have focused their practices on wage and hour class actions, and have cumulatively been appointed class counsel or co-class counsel in scores of class actions, obtaining substantial recoveries for hundreds of thousands of employees. Similarly, Defendant is represented by Fisher & Phillips, LLP, a well-known employment defense firm, and defense counsel are well-versed in litigating wage and hour class actions. The parties and counsel believe the Settlement is fair and appropriate given all factors involved.

### 7.     The Presence of a Governmental Participant

Contemporaneous with the filing of this Motion for Preliminary Approval, the Settlement will be submitted to the California LWDA pursuant to the PAGA statute.

## V.     THE CLASS SHOULD BE CONDITIONALLY CERTIFIED

### A.     The Settlement Classes Satisfy the Requirements of Rule 23

Plaintiffs, without opposition, request conditional certification under Rule 23(a).

### 1.     The Numerosity Requirement is Satisfied

Rule 23(a) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Here, the proposed Class totals approximately ninety four (94) employees and numerosity is satisfied.

### 2.     Common Questions of Law and Fact Exist

Commonality is met because "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). In the Ninth Circuit, this requirement "has been construed permissively." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019-20 (9th Cir. 1998). Even though proposed class members "may possess different avenues of redress," so long as "their claims stem from the same source," there is sufficient commonality "to satisfy the minimal requirements of Rule 23(a) (2)." *Id.* at 1019-20. Here, common questions include, primarily: (a) Defendant's failure to pay for all hours worked; (b) Defendant's temporary misclassification of hourly employees as exempt; (c) Defendant's failure to provide meal/rest break; and (d) Defendant's failure to provide accurate wage statements.

### 3.     Claims of the Plaintiff Are Typical

Rule 23 typicality is satisfied. Typicality tends to merge with commonality, such that "a

finding of commonality will ordinarily support a finding of typicality." *General Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  A class plaintiff's claim is typical of those of other class members if the claims arise from the same practice or course of conduct and are based on the same legal theory." *In re American Med. Sys.*, 75 F.3d 1069, 1082 (6th Cir. 1996).  Here, Plaintiffs' and Class Members' claims arise from the same practices and are based on the same legal theory, for the reasons set forth above.

### 4. Class Representatives and Class Counsel Are Adequate

Class Representatives and Class Counsel provide adequate representation of the interests of the Class Members. Class Counsel has represented employees in numerous wage and hour lawsuits brought as class actions, and has ample resources, experience, and expertise to draw upon in representing the class in this action. Here, the Class Representatives understand and accept their obligations as representative of the Class, and has adequately represented the Class Members' interests by devoting time to prosecution of the claims including numerous detailed interviews with Class Counsel, providing Class Counsel with substantial amounts of documents and information, and assisting Class Counsel in reviewing and analyzing the factual defenses raised by Defendant.

### B. The Prerequisites of Rule 23(b) Are Also Satisfied

### 1. The Predominance Requirement

Rule 23(b)(3) provides that a class may be maintained if "the court finds that the questions of law and fact common to the members of the class predominate over any questions affecting only individual members." As noted in *Cotter*, "settlement approval that takes place prior to formal class certification requires a higher standard of fairness. The dangers of collusion between class counsel and the defendant, as well as the need for additional protections when the settlement is not negotiated by a court[-]designated class representative, weigh in favor of a more probing inquiry than may normally be required under Rule 23(e)." *Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1035 (N.D. Cal. 2016). Here, Plaintiffs contend that adjudication of the common issues surrounding Defendant's alleged employment practices could establish Defendant's liability on a class-wide basis.  Common legal issues could predominate because, in Plaintiffs' view, all class/collective members were subject to the same policies and were subject to the

alleged misclassification, off-the-clock work, and missed meal/rest breaks. Subsequently, as a result of Defendant's employment and payroll practices, all Class Members received defective wage statements. Although an individual class/collective member may have incurred more damages than another, individual damages calculations will not defeat predominance. *See, e.g., Vaquero v. Ashley Furniture Indus., Inc.,* 824 F.3d 1150, 1155 (9th Cir. 2016).

### C. The Standard for Section 216(b) FLSA Settlement Approval is Met

The FLSA provides that "any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee ... affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be." 29 U.S.C. § 216(b). A plaintiff may assert claims on behalf of himself and those similarly situated. *Id.* FLSA claims may be compromised where a court reviews and approves a settlement in a private action for back wages under 29 U.S.C. § 216(b). *Lynn's Food Stores, Inc. v. U.S. By and Through U.S. Dept. of Lab., Empl. Standards Admin., Wage and Hour Div.*, 679 F.2d 1350, 1354 (11th Cir. 1982). If the settlement of an FLSA suit reflects a "fair and reasonable resolution of a bona fide dispute" of the claims raised, the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id.* at 1354-55.

For all of the foregoing reasons, this settlement is a fair and reasonable compromise and should be approved.

## VI. REQUESTED APPROVAL AND FEES, COSTS, ENHANCEMENT[2]

### A. The Requested Fees and Costs are Appropriate, and Class Counsel Will Submit Detailed Support for Them Prior to Final Approval

"[U]nder the FLSA an award of reasonable attorney fees is mandatory." *Yue Zhou v. Wang's Rest.*, 2007 WL 2298046, at *1 (N.D. Cal. Aug. 8, 2007). Indeed, 29 U.S.C. § 216(b) provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney fee to be paid by defendant, and costs of the action."

In the Ninth Circuit, 25 percent of the common fund is the "benchmark" for an attorneys' fees

---

[2] Plaintiffs' Counsel recognizes that all requested allocations for attorneys' fees, costs, and enhancement awards, are preliminary in nature and subject to final approval of the Court after the notice and objection period.

award in "mega-fund" class actions in the $50-200 million range. *See, e.g., Vizcaino*, 290 F.3d at 1047. The Ninth Circuit has instructed that district courts are entrusted with wide discretion to approve fees above or below that benchmark, based on the circumstances of the case. *See id.* at 1048 ("The 25% benchmark rate, although a starting point for analysis, may be inappropriate in some cases."); *In re Am. Apparel, Inc. S'holder Litig.*, No. 10 Civ. 06352, 2014 WL 10212865, at *23 (C.D. Cal. July 28, 2014) ("[I]n most common fund cases, the award exceeds the benchmark"). Where the common fund is below the $50 million "mega-fund" threshold, an award above the 25% benchmark is particularly appropriate. In fact, "in class action common fund cases the better practice is to set a percentage fee and that, absent extraordinary circumstances that suggest reasons to lower or increase the percentage, the rate should be set at 30%." *In re Activision Sec. Litig.*, 723 F. Supp. at 1378. In fact, "[i]n most common fund cases, the award exceeds the benchmark" of 25 percent. *In re Am. Apparel, Inc. S'holder Litig.,* No. 10 Civ. 6352, 2014 WL 10212865, at *23 (C.D. Cal. July 28, 2014).  However, "[s]election of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." *Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1048 (9th Cir. 2002). Under *Vizcaino* the relevant factors are: (1) results achieved; (2) risks of litigation; (3) whether there are benefits to the class beyond the immediate generation of a cash fund; (4) whether the percentage rate is above or below the market rate; (5) the contingent nature of the representation and the opportunity cost of bringing the suit; (6) reactions from the class; and (7) a lodestar cross-check. *Id.* at 1048-52.

Plaintiffs will address each of these factors and will fully brief the attorney fees prior to final approval. However, it is a near certainty that the fee award in the Settlement Agreement will result in a multiplier of less than two and a half (2.5), based on Class Counsel's current lodestar calculations. The fees requested are well within the range of approval. *See, e.g., Boyd v. Bank of Am. Corp*., No. 13 Civ. 0561, 2014 WL 6473804, at *9 (C.D. Cal. Nov. 18, 2014) (approving fee award of 36% of common fund settlement in wage and hour case); *Birch v. Office Depot, Inc*., No. 06 Civ. 1690 (S.D. Cal. Sept. 28, 2007) (awarding a 40% fee on a $16 million settlement); *In re Heritage Bond Litig*., No. 02 Civ. 1475, 2005 WL 1594403, at *18 (C.D. Cal. June 10, 2005) (approving fees of  33.33% of

approximately $28 million common fund).  Similarly, the modest costs, currently in the amount of up to $20,000 are also well within the range of approval; particularly, in light of the fact the Parties attended two mediations before the case was finally settled. The current balance of the litigation expenses is $14,256.43.  [*Exh. 2*, Stoops Decl. at ⁋ 39.]  Class Counsel will provide a detailed itemization of costs prior to final approval in the attorney fee and costs motion.

### B.    The Class Representative Enhancement Is Reasonable

The Settlement calls for enhancement awards for each Class Representative in the amount of $5,000 each. [*Exh. 1*, Settlement ¶ 2(a).] It is customary for "named plaintiffs . . . [to be] eligible for reasonable incentive payments" as part of a class action settlement. *Staton v. Boeing Co.*, 327 F.3d 938, 977. Service or incentive payments constitute "an essential ingredient of any class action," because they provide an incentive to bring important cases that have a broad impact benefiting a class of individuals, not just the plaintiff.  *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). These payments recognize the plaintiff's time, effort, and inconvenience, as well as the risk they are exposed to in asserting their and others' rights in a particularly public and powerful manner.

The Class Representatives assisted Class Counsel with investigation and evaluation of the class claims throughout the litigation, including producing documents and attending multiple telephonic conferences.[3] Class Representatives have satisfied their obligations as class representatives, have incurred many hours in service to this case and the Class Members, and have been invaluable in developing the claims, conducting discovery into them, and in reaching the Settlement that is before the Court for approval. Plainly put, there would be no Settlement without the efforts of the Class Representatives.

### C.    The Administrator and Administration Costs Should Be Approved

The Settlement Agreement provides for an allocation of funds to cover the costs of third party settlement administration. Currently, it is estimated that the settlement administration cost for this case will not exceed $4,226.46. The settlement administration duties, as outlined in the settlement agreement,

---

[3] Plaintiff Yadira Gomez, who opted-into this case just prior to the second mediation, provided considerable help in obtaining the present settlement. She was the sole medical assistant Plaintiff, who provided substantial rebuttal evidence to Defendant's arguments the medical assistants should not be included in the case.

will be handled by Simpluris, Inc.[4] Simpluris, Inc., is well-respected and has been utilized successfully by Class Counsel in numerous settlements of similar nature to the instant litigation.  A bid of $5,000 or less is reasonable given the number of individuals involved in the Settlement. Therefore, Plaintiffs request approval of Simpluris, Inc., as the administrator and of the allocation of up to $5,000 to administration expenses.

## VII.    THE PROPOSED METHOD OF NOTICE IS APPROPRIATE

The notice here satisfies the requirements that the class notice must be the "best notice that is practicable under the circumstances," Fed. R. Civ. P. 23(c)(2)(B), and that the Court "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1).  Notice is satisfactory "if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004) (internal citation and quotation marks omitted).  Notice mailed to each class member "who can be identified through reasonable effort" constitutes reasonable notice. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974).  For any class certified under Rule 23(b)(3), the notice must inform class members "that the court will exclude from the class any member who requests exclusion," stating "when and how members may elect to be excluded." Fed. R. Civ. P. 23(c)(2)(B).

The form of the notice here is consistent with modern best practices set forth by the Federal Judicial Center and was negotiated and agreed upon by counsel for the parties. The notice encourages Class Members to contact the Claims Administrator with any questions, and it provides telephone, mail, e-mail, and facsimile contact information for the Claims Administrator.  *Id*

This notice plan is consistent with class certification notices approved by numerous state and federal courts, and is, under the circumstances of this case, the best notice practicable. *See, e.g.*, *Wright v. Linkus Enters., Inc.*, 259 F.R.D. 468, 477-76 (E.D. Cal. 2009) (holding notice involving similar mail procedures as here meets both Rule 23(e) and Rule 23(c) requirements); *Adams v. Inter-Con Security Sys., Inc.*, No. 06 Civ. 5428, 2007 WL 3225466, at *4 (N.D. Cal. Oct. 30, 2007) (finding that notice

---

[4] *See*, https://simpluris.com (last visited May 11, 2022).

using similar mail procedure as here "satisfies the notice requirements of Rule 23(e), and ... all other legal and due process requirements").

## VIII.   A FINAL APPROVAL HEARING SHOULD BE SCHEDULED

If the Court grants preliminary approval, a date for the final fairness hearing needs to be set and included in the class notice.  The parties request that the Court adopt the following schedule for purposes of effectuating the various steps in the settlement approval process described above.

| Event | Proposed Date |
|---|---|
| Preliminary Approval Hearing Date | July 21, 2022 |
| Entry of Preliminary Approval Order | July 21, 2022 (assumed; balance of dates work off this assumed date) |
| Defendant to provide the Claims Administrator with addresses for Class Notice to be mailed | July 31, 2022 |
| Deadline for the Claims Administrator to mail Class Notice Packet (Mailing Date) | August 10, 2022 |
| Deadline for Filing Motion for Attorneys' Fees and Costs | September 4, 2022 |
| Deadline for Class Members to mail Elections Not to Participate in Settlement, Objections, and Opt-in to the FLSA Collective ("Response Deadline") | September 24, 2022 |
| Response Deadline for Re-Mailed Notice Packets | October 8, 2022 |
| Deadline for Parties to file response to objections. | October 22, 2022 |
| Deadline for filing Final Approval Motion | October 22, 2022 |

| Event | Proposed Date |
|-------|---------------|
| Final Approval Hearing and Entry of Order | December 1, 2022 |

## IX.   CONCLUSION

For the foregoing reasons Plaintiffs, without opposition from Defendant, respectfully requests that the Court: (1) preliminarily approve the Settlement pursuant to Fed. R. Civ. P. 23(c) and § 216(b) of the FLSA; (2) preliminarily certify the proposed settlement class and collective; (3) approve the proposed class notice and forms; (4) set the deadlines for filing elections not to participate and objections to the Settlement; and (5) schedule a final approval hearing.

Respectfully Submitted,

SOMMERS SCHWARTZ, P.C.

DATED:  June 10, 2022

By: /s/ Kevin J. Stoops
Kevin J. Stoops (SBN 332200)
kstoops@sommerspc.com
SOMMERS SCHWARTZ, P.C.
402 West Broadway, Suite 1760
San Diego, California 92101
Telephone: (619) 762-2125
Facsimile: (619) 762-2127

*Attorneys for Plaintiff and Proposed Collective and Class members*