# EXHIBIT B

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **BARBARA KULIK, JAMES ESKRIDGE**, and **MARY DUNNING GAROFALO** individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**NMCI MEDICAL CLINIC, INC.**, a corporation,<br><br>Defendant | Case No.: 5:21-cv-03495-BLF<br><br>**DECLARTION OF KEVIN J. STOOPS IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, LITIGATION EXPENSES, AND CLASS REPRESENTATIVE INCENTIVE AWARDS** |

# DECLARATION OF KEVIN J. STOOPS

In accordance with 28 U.S.C. § 1746, I, Kevin J. Stoops, first being duly sworn, deposes and states as follows:

1. I make this declaration in support of Plaintiffs' Unopposed Motion for Attorneys' Fees, Litigation Expenses, and Class Representative Incentive Awards (the "Attorneys' Fees Motion").

2. I am a Senior Shareholder at the law firm of Sommers Schwartz P.C., attorneys for the Plaintiffs in the above captioned case. I have been involved in this case from the beginning and I have personal knowledge of the matters set forth herein, based on my active participation in all material aspects of this litigation, including personal involvement in the negotiation of the Settlement.

## Experience and Background

3. I received my JD degree, *magna cum laude*, from the Thomas M. Cooley Law School in May 2004. I have practiced law in the State of Michigan. In addition to Michigan, I am licensed to practice law in the State of California. Other admissions to practice include the following courts: United States Supreme Court; Sixth Circuit Court of Appeals; U.S. District Court for the Eastern District of Michigan; U.S. District Court for the Western District of Michigan; U.S. District Court for the District of Colorado; U.S. District Court for the Northern District of Alabama. I have appeared *pro hac vice* in numerous U.S. District Courts across the country including, but not limited to, the following: U.S. District Court, Northern District of California; U.S. District Court, Middle District of Florida; U.S. District Court, Southern District of Florida; U.S. District Court, Middle District of Georgia; U.S. District Court, Western District of Kentucky; U.S. District Court, District of Nevada; U.S. District Court, Western District of New York; U.S. District Court, Eastern District of North Carolina; U.S. District Court, Western District of North Carolina; U.S. District Court, Northern District of Ohio; U.S. District Court, Western District of Texas; U.S. District Court, Western District of Virginia; and U.S. District Court, Western District of Washington.

4. I am a Senior Shareholder in the law firm of Sommers Schwartz, P.C. in Southfield, Michigan, and have worked for the firm since 2003. I have served on the Firm's Board of Directors since 2012. *See*, Tab 1 – Stoops Firm Bio.

5. Since obtaining my law license in 2004 I have litigated actions spanning the following practice areas: employment law (including discrimination, breach of contract, whistleblower's law and public policy claims); commercial litigation; and intellectual property (including complex trade secret, patent and trademark matters). Representative cases from these practice areas include the following:

- July 2018: $800,000 arbitration judgment in connection with minority shareholder claims (Detroit, Michigan).

- December 2017: $482,500 settlement in connection with breach of contract claims asserted by class of truck drivers (Macomb County Circuit Court, Michigan)

- November 2014: $450,000 settlement in connection with ADA, FMLA, and breach of contract claims asserted by terminated middle school principal (U.S. District Court for Western District of Michigan).

- May 2012: $1,100,000 settlement. Served as lead counsel in a complex commercial litigation case that involved claims (including breach of contract, fraud, and violation of the Michigan Sales Representative Commission Act) by my clients against a former joint venture partner. (U.S. District Court for Western District of Michigan).

- February 2012: $2.5 Million settlement. Along with my partner, Andrew Kochanowski, assisted client in obtaining a $2.5 Million settlement in a complex business litigation dispute involving joint venture contract and trademark infringement claims. (U.S. District Court for the District of Colorado).

- June 2011: $800,000 settlement. Served as lead counsel in a complex litigation arbitration pending in Chicago, Illinois, that involved claims of oppression, breach of contract and breach of fiduciary duty by a former shareholder against a multi-million dollar business involved in the medical insurance industry.

- January 2011: $367,000 settlement. Successfully obtained a $367,000 settlement for the conservator of a minor child in a complex probate litigation matter involving claims of conversion and breach of fiduciary duty against the personal representatives of decedent's estate. (Kalamazoo County Circuit Court, Michigan).

- July 2010: Holbrook et al v GenTek, Inc. 2010 WL 2697126. Obtained summary judgment in favor of four clients, former executives in the automotive industry, on claim that the former employer breached their executive bonus agreement. (U.S. District Court for the Eastern District of Michigan).

- March 2009: $3.1 Million Breach of Contract Verdict. Along with partner Andrew Kochanowski, obtained a breach of contract and patent infringement verdict for the Michigan inventor of an aluminum baseball bat safety testing machine.(U.S. District Court for the Western District of Michigan).

- April 2006: $2.4 million Employment Discrimination Verdict. Along with partner Joe Golden,

- 2 -

DECLARATION OF KEVIN J. STOOPS, ESQ.                                    Case No. 5:21-cv-03495-BLF

obtained Title VII and Elliot-Larsen national origin discrimination verdict for a public school teacher in the U.S. District Court for the Eastern District of Michigan. (U.S. District Court for the Eastern District of Michigan).

6. Since 2014, I have served as a member of the firm's national wage & hour litigation practice, which currently consists of eight attorneys and five staff members. Most, if not all, of my time is devoted to challenging illegal wage and hour practices on behalf of current and former employees. Representative cases from my wage and hour practice include the following:

- *In re: Lowe's Companies, Inc., Fair Labor Standards Act and Wage and Hour Litigation* – Lead Counsel in connection with $9,950,000 settlement of over 2,500 opt-in and arbitration claimant hourly manager employees who alleged off-the-clock work related to opening and closing defendant's stores and performing exterior perimeter sweeps in violation of the Fair Labor Standards Act and several state wage and hour laws (District Court for the Western District of North Carolina).

- *Davis v. TTEC Healthcare Solutions, Inc.* – Lead Counsel in connection with $5,125,000 settlement of over 2,200 opt-in and arbitration claimant call center customer service representatives who alleged off-the-clock work related to booting up and shutting down their computer systems in violation of the Fair Labor Standards Act and several state wage and hour laws (District Court for the District of Colorado).

- *Ealy-Simon v. Change Healthcare Operations, LLC* – Lead Counsel in connection with $2,500,000 settlement of over 3,500 call center customer service representatives who alleged off-the-clock work related to booting up and shutting down their computer systems in violation of the Fair Labor Standards Act and several state wage and hour laws (District Court for the Middle District of Tennessee).

- *McCroskey v. Tate & Lyle Ingredients Americas, LLC* – Lead Counsel in connection with $3,900,000 settlement of approximately 1,600 Process Operators and Process Technicians who claimed their employer unlawfully withheld compensation in violation of the Fair Labor Standards Act's wage and hour provisions and various state laws (District Court for the Northern District of Illinois).

- *Gabel v. Carenet Infomedia Group, Inc.* – Lead Counsel in connection with a $618,750 settlement of 764 Tele-Nurses who alleged off-the-clock work related to booting up and shutting down their computer systems in violation of the Fair Labor Standards Act and several state wage and hour laws.

- *Chetwood v. T-Mobile USA, Inc.* – Lead Counsel in connection with $2,000,000 settlement of over 7,000 call center customer service representatives who claimed their employer unlawfully withheld compensation in violation of the Fair Labor Standards Act's wage and hour provisions and Colorado, Missouri, New Mexico, Oregon and Washington state laws. (District Court for the Western District of Washington).

- *Smith v. Kaiser Foundation Hospitals* – Lead Counsel in connection with $1,475,000 settlement of approximately 474 call center Telehealth Nurses and Wellness Specialists who claimed their employer unlawfully withheld compensation in violation of the Fair Labor Standards Act's wage and hour provisions and California state law. (District Court for the Southern District of California).

- *Marston v. Ashland Specialty Ingredients* – Lead Counsel in connection with $3,900,000 settlement of over 800 chemical operators who claimed their employer unlawfully withheld compensation in violation of the Fair Labor Standards Act's wage and hour provisions and various state laws (District Court for the Northern District of Ohio).

- *Clark v. Bank of America N.A.* – Lead Counsel in connection with $1,755,000 settlement of over 1,400 call center customer service representatives who claimed their employer unlawfully withheld compensation in violation of the Fair Labor Standards Act's wage and hour provisions of Nevada state law (District Court for the District of Nevada).

- *Bell v. CoWorx Staffing Services, LLC, et al.* – Lead Counsel in connection with $850,00 settlement of over 3,600 call center customer service representatives who claimed their employer unlawfully withheld compensation in violation of the Fair Labor Standards Act's wage and hour provisions and Pennsylvania and Arizona state law (District Court for the Eastern District of Pennsylvania).

- *Banks v. Kaiser Foundation Health Plan, Inc.* – Lead Counsel in connection with $1,650,000 settlement of approximately 1,200 call center customer service representatives who claimed their employer unlawfully withheld compensation in violation of the Fair Labor Standards Act's wage and hour provisions and California state law. (District Court for the Central District of California).

- *Lopez v. Stamps.com, Inc.* – Lead Counsel in connection with $687,594 settlement of over 250 call center customer service representatives who claimed their employer unlawfully withheld compensation in violation of the Fair Labor Standards Act's wage and hour provisions and California state law (District Court for the Central District of California).

- *Purnell v. Clearview Centers, LLC* – Lead Counsel in connection with $447,000 settlement of 125 counselors who claimed their employer unlawfully withheld compensation in violation of the Fair Labor Standards Act's wage and hour provisions and California state law. (District Court for the Central District of California).

- *Adams v. Sitel* – Lead Counsel in connection with $1,200,000 settlement of over 10,000 at home customer service representatives who claimed their employer unlawfully withheld compensation in violation of the Fair Labor Standards Act's wage and hour provisions and various state laws. (District Court for the Middle District of North Carolina).

- *Shaulis v. Falcon Subsidiary, LLC d/b/a AxisPoint Health* – Lead Counsel in connection with $595,000 settlement of over 450 Telehealth Nurses Telephone (handling patient telephone calls) who claimed their employer unlawfully withheld compensation in violation of the Fair Labor Standards Act's wage and hour provisions and state law. (District Court for the District of Colorado).

- *Wolf v. The Permanente Medical Group* – Lead Counsel in connection with $2,950,000 settlement of over 1,700 Telephone Service Representatives (handling patient telephone calls) who claimed their employer unlawfully withheld compensation in violation of the Fair Labor Standards Act's wage and hour provisions and California state law. (District Court for the Northern District of California).

- *Brown v. The Permanente Medical Group* – Lead Counsel in connection with $6,255,000

settlement of over 1,300 Advice Nurses (handling patient telephone calls) who claimed their employer unlawfully withheld compensation in violation of the Fair Labor Standards Act's wage and hour provisions and California state law. (District Court for the Northern District of California).

- *Atkinson v. Teletech* – Co-Lead/Class Counsel in connection with $3,500,000 settlement on behalf of over 20,000 home-based customer service agents (call center workers) who claimed their employer unlawfully withheld compensation in violation of the Fair Labor Standards Act's wage and hour provisions. (District Court for the Southern District of Ohio).

- *Matthews v. Convergys* – Co-Lead/Class Counsel in connection with $4,500,000 settlement in nationwide wage and hour class action involving more than 20,000 at-home call center employees who alleged they were not paid for their pre-shift computer login and boot-up time and for time spent working "off-the-clock" while experiencing system downtime. (U.S. District Court for the Western District of North Carolina).

- *Matthews v. Cloud 10* – Lead/Class Counsel in connection with $1,100,000 settlement in nationwide wage and hour class action involving more than 1,000 at-home call center employees who alleged they were not paid for their pre-shift computer login and boot-up time and for time spent working "off-the-clock" while experiencing system downtime. (U.S. District Court for the Western District of North Carolina).

- *Tarrant v. Sutherland* – Lead/Class Counsel in connection with $1,075,000 settlement in nationwide wage and hour class action involving more than 7,000 at-home call center employees who alleged they were not paid for their pre-shift computer login and boot-up time and for time spent working "off-the-clock" while experiencing system downtime. (U.S. District Court for the Western District of New York).

- *Hall v. Higher One, Inc. et al* – Lead/Class Counsel in connection with $964,637 settlement in nationwide wage and hour class action involving approximately 2,000 at-home call center employees who alleged they were not paid for rest breaks and their pre-shift computer login and boot-up time and for time spent working "off-the-clock" while experiencing system downtime. (U.S. District Court for the Eastern District of North Carolina).

- *Padan v. West* – Co-Lead/Class Counsel in nationwide wage and hour class action involving more than 5,000 opt-in brick-and-mortar call center employees alleging unpaid off-the-clock time. (U.S. District Court for the District of Nevada).

- *Gaffers v. Kelly Services* -- Lead/Class Counsel in nationwide wage and hour class action involving more than 8,000 at-home call center employees alleging unpaid off-the-clock time. (U.S. District Court for the Eastern District of Michigan).

- *Ross v. Jack Rabbit, Services* – Co-Lead/Class Counsel in nationwide wage and hour class action involving more than 1,000 roadside assistance drivers alleging that the employer failed to pay them minimum wage and overtime after improperly classifying them as independent contractors. (U.S. District Court for the Western District of Kentucky).

- *Jones v. Coliseum* – Co-Lead/Class Counsel in wage and hour action involving 20 individual

plaintiffs alleging that the employer failed to pay them minimum wage and overtime after improperly classifying them as independent contractors. (U.S. District Court for the Eastern District of Michigan).

7. I have been a member of numerous legal organizations throughout my career and have served in leadership roles in multiple legal organizations including serving as a Board Member for the Detroit Metropolitan Bar Association (2011-2013), and serving as a Board Member for the Litigation Section of the Michigan State Bar (2011-2015). I currently serve as a Hearing Panel Member the State Bar of Michigan's Attorney Discipline Board and as a Case Evaluator for the Oakland County Circuit Court.

8. Sommers Schwartz, P.C. is Class Counsel in this case, filed on behalf of current and former hourly employees of NMCI Medical Clinic, Inc. ("Defendant"), who are or were employed in California during the Class Period in the positions of Medical Assistant, Physician Assistant, or Nurse Practitioner ("Class Members").

## My Role in the Litigation and Reasonableness of the Settlement

9. Prior to filing the present lawsuit, I met with and discussed in detail the facts and legal theories of liability with my former partner, Trenton Kashima (Attorney Kashima). Together, Attorney Kashima mapped out our litigation plan for this case.

10. In the days that followed, Attorney Kashima assisted our Associate Attorney, Alana Karbal, in preparing the class and collective action complaint. At or around the same time, they prepared the notice letter to the California Workforce and Development Agency of the Class Members PAGA Claim.

11. In addition to the above documents, Attorney Kashima prepared other essential litigation documents and correspondence, such as the consent to join forms, a letter to the Defendant to preserve evidence, and a demand letter. He also conducted additional interviews with our clients on various litigation related matters.

12. On June 22, 2021, the Defendant filed an answer, which listed forty (40) affirmative defenses. Upon careful review, we determined many of the asserted affirmative defenses were improper. As such, Attorney Kashima began preparing a motion to strike those defenses. However, work on that project was suspended, as we ultimately elected to prepare a First Amended Complaint

(FAC), which was filed on July 13, 2021. On July 27, 2021, the Defendant filed an answer to the FAC, which once again, listed a number of affirmative defenses which Plaintiffs maintain were improperly asserted.

13. On August 20, 2021, after meeting and conferring with Defense Counsel to discuss a number of litigation related issues (including Defendant's affirmative defenses), the Parties filed a Joint Motion and Stipulation to Continue Plaintiffs' Deadline to File a Motion to Strike Affirmative Defenses and Tolling Fair Labor Standards Act Claims. [*See*, Doc. 21.] The purpose of this motion was primarily to focus the Parties on reaching a class wide resolution of the claims asserted, specifically, by submitting the case to private mediation. This motion was granted and the informal discovery process commenced.

14. In the months that followed, the parties engaged in informal discovery, which included production of payroll and employment data for the putative class/collective. This informal discovery assisted the parties in preparing detailed mediation summaries. To assist in the informal discovery for mediation, Attorney Charles R. Ash (Attorney Ash) became involved in the case. Additionally, for assistance in creating a class-wide damage model, Class Counsel enlisted the services of damages expert and forensic accountant Eric Lietzow, CPA/ABV of Desmond, Marcello & Amster, P.C. Finally, in January 2022, the Parties attended a mediation with the Honorable Cecily Bond (Ret.). Unfortunately, the mediation was unsuccessful.

15. Immediately after the failed mediation, Class Counsel wasted no time in moving the litigation forward. On February 10, 2022, Class Counsel filed a comprehensive motion for conditional certification, pursuant to 29 U.S.C. 216(b), which was primarily drafted by Attorney Ash. [Doc. 35.] However, before briefing on the conditional certification motion continued, the Parties reached an agreement to attend a second mediation. On February 21, 2022, a Joint Motion and Stipulation to Continue the Hearing on Plaintiffs' Motion for Conditional Certification was filed, which included a tolling agreement for the FLSA statute of limitations. [Doc. 36.] The Court granted the Motion to Continue and the case returned to a mediation/settlement posture. [Doc. 37.]

16. On March 1, 2022, the Parties attended a second mediation with nationally respected wage and hour mediator, Gig Kyriacou. After extensive arms-length negotiations, and with the

1   assistance of Mr. Kyriacou, the Parties were able to reach a class-wide settlement of all of the claims
2   asserted in the FAC. A Memorandum of Understanding was executed the same day, and, over the
3   next several weeks, the Parties continued to negotiate the terms of the long-form settlement agreement.
4   On April 1, 2022, Plaintiffs filed a Notice of Settlement and Withdrawal of Pre-Discovery Motion for
5   Conditional Certification. [Doc. 39.]

6   17.  For both mediations, I was the lead attorney overseeing mediation preparation and
7   strategy, including preparation of Plaintiffs' damage analysis. A tremendous amount of work went
8   into reaching the proposed settlement in this contested litigation, as evidenced by the fact that the first
9   mediation was unsuccessful.

10  18.  As stated above, to evaluate and negotiate settlement and take part in mediation,
11  Sommers Schwartz retained expert economist Eric Lietzow of Desmond, Marcello & Amster, LLP.
12  *See*, Damage Expert Bio at Tab 2. Mr. Lietzow, with my (and Attorney Kashima's) assistance,
13  prepared a time consuming and complicated damage analysis of all claims at issue in this case.

14  19.  The first objective of the analysis was to identify the class metrics. In connection with
15  that task, the following estimations were ascertained: 23,683 shifts for all Class Members; 5,666
16  workweeks for all Class Members; and 2,833 pay periods for all Class Members;

17  20.  Next the analysis identified the damages that could be recovered for each of the claims
18  in the litigation. Specifically, if Plaintiffs succeeded in proving: ten (10) minutes of off the clock work
19  every shift; that they worked through their meal periods on 10% of their shifts; missed 10% of their
20  rest breaks (with no valid waiver); and incurred $10 a month in unreimbursed business expenses, then
21  Class Counsel estimates the maximum damage exposure to the Class Members for every claim
22  asserted in the FAC to be $1,666,170.15. This number is broken down as follows: $265,798.27 in
23  straight time wages; $159,342.31 in overtime wages; $159,342.31 in liquidated damages; $16,270.80
24  in unreimbursed business expenses; $112,594.38 in meal break damages; $114,425.30 in rest break
25  damages; $555,892.78 in waiting time penalties; $91,411.50 in wage statement penalties; $63,697.50
26  in Labor Code §558 penalties; and $127,395.00 Labor Code 2699(f)(2) penalties. *Id*.

27  21.  In sum, a reasonable estimation of the maximum likely damages for all of the Class
28  Members straight time and overtime wages is $1,666,170.15.

22. Of course, Defendant strongly disputes any off the clock work occurred and also denies any unreimbursed business expenses. Furthermore, although Plaintiffs maintain there is absolutely no excuse for classifying the Class Members as exempt from overtime, as illustrated above, the overtime component of the damages in this case is relatively insignificant. The data sampling demonstrated there were many workweeks in which the hours worked did not support a claim for unpaid overtime (daily or weekly).

23. In any case, based on the above maximum possible recovery, the proposed Settlement offers the Class Members approximately 52% of their damages.

24. The gross value of the settlement equals an average recovery of $8,838.38 per Class Member. Further, the Settlement equals $269.23 per pay period worked across all of the Class Members. This number is staggering considering a large portion of the workweeks did not include enough hours worked to trigger weekly or daily overtime pay.

25. The settlement amount is substantial, completely reasonable, and marks a fair compromise of the claims. Significantly, the total settlement amount equates to more than the total actual wage damages (overtime wages plus straight time wages) of $318,684.62 and the unreimbursed business expenses ($16,270.80) suffered by the Class when computing claims equal to 10 minutes of off-the-clock work per shift per class member. Indeed, a large portion of the damages to be paid under the settlement are for various penalties under the California Labor Code.

26. Furthermore, the estimated Net Settlement Fund of $571,500.00 would result in each of the approximate 94 Class Members receiving over $6,000.00, if it were divided equally. Of course, under the parties proposed settlement, the Net Settlement Fund will be distributed in a more equitable fashion – on a pro-rata basis, based on the number of work weeks each Class Member worked during the Class Period.

27. The proposed release by the Participating Class Members was extensively scrutinized and negotiated by the attorneys involved in this litigation. It represents a fair compromise and constitutes a fair negotiated bargain for release of claims that arise from the facts as alleged in the FAC. The Class Representatives have consented to the release, as well as the settlement agreement, have been afforded full access to Class Counsel, and have signed the settlement and release.

28. This settlement was the result of arm's-length negotiations, with assistance by esteemed and very experienced mediator Gig Kyriacou, conducted by experienced counsel for all parties, and reached after extensive (albeit informal) discovery. Prior to settlement, each side independently and thoroughly investigated the claims and defenses at issue. The work performed allowed each party to intelligently, and in good faith, weigh both the risks and benefits of settlement as compared to continued litigation. These efforts culminated in a substantial settlement, which provides the Class Members with an opportunity to resolve their claims against Defendants in a meaningful way.

29. Based on my past experience in litigating wage and hour cases, I fully endorse this settlement and believe that it is truly in the best interests of all parties. For all the reasons set forth herein, I believe this Court should honor the terms of the settlement and give it preliminary and final approval.

### Reasonableness of Requested Attorneys' Fees

30. In preparing this declaration, I reviewed the time records of all participating attorneys and paralegals from Sommers Schwartz, P.C., confirming that the accuracy, utility, efficiencies and reasonableness of the time spent by Class Counsel working on this litigation, and the expenses incurred.

31. After reviewing all of the time records and expenses, I can attest they are reasonable as to both the hourly rate, time spent, work allocation and totals, as well as being absolutely necessary to reach the settlement in this case. Class Counsel diligently worked to avoid duplication of efforts and expenses, while at the same time not sacrificing work quality on behalf of the class. The settlement obtained in this litigation was directly affected by the efforts and expenses advanced by Class Counsel in this lawsuit.

32. Based on my personal experience, the fees requested for the legal services rendered in this action ($262,500, equaling 30% of the gross settlement amount) reflects the reasonable value of those services in light of the nature of the case, the result obtained, the quality of representation, the risks of the litigation, the customary fee, and other applicable considerations as set forth by the law.

33. I typically charge $675 per hour for my legal services in FLSA and state wage law class

action cases. My partner Jason Thompson, who has over 30 years experiences, charges $725 per hour for his work in FLSA and state wage law class action cases. I am familiar with rates customarily charged in the legal market for FLSA and state wage law class action litigation. The rates charged by my firm for my services and those of Senior Shareholders, Shareholders, Associates and Paralegals are, on the whole, lower than prevailing rates charged for equivalent services by attorneys of similar skill, experience, and reputation. Therefore, I believe that we are reasonable in seeking lodestar rates of $725 per hour for Mr. Thompson, $675 per hour for myself, $475 per hour for Mr. Ash and Mr. Kashima (Shareholders), and lower rates for Associates and Paralegals who worked on this matter.

34. To date, Class Counsel has incurred almost 225 hours and nearly $116,000 in fees. It is anticipated that at the conclusion of this case (including additional work to be performed at the Final Approval stage, and extensive work related to settlement administration and Class Member payment processing), that Class Counsel will have accumulated a lodestar in an amount that, based on the requested fee amount, will result in a multiplier of 2.0 or less.

35. In my opinion, and based on my experience in, and research of, other FLSA and state wage law class action settlements in this District and nationwide, the requested fee will be reasonable and appropriate, especially in light of the amount of work performed by Class Counsel in this case and the substantial recovery obtained on behalf of the Class.

36. Sommers Schwartz, P.C.'s hours by working attorney and paralegal are as follows:

| Timekeepers | Position | Hours | Rate | Amount |
|---|---|---|---|---|
| Kevin Stoops | Senior Shareholder | 63.6 | $675 | $42,930.00 |
| Jason Thompson | Senior Shareholder | 2.9 | $725 | $2,102.50 |
| Trent Kashima | Shareholder | 88 | $475 | $41,800.00 |
| Charles Ash | Shareholder | 55.3 | $475 | $26,267.50 |
| Alana Karbal | Associate | 3.6 | $325 | $1,170.00 |
| Debbie Nichols | Paralegal | 5.9 | $175 | $1,032.50 |

| | | | | |
|---|---|---|---|---|
| Andrew Malecki | Law Clerk | 3 | $125 | $375 |
| **Totals** | | **222.3** | | **$115,680.50** |

37. As of December 16, 2022, the Sommers Schwartz, P.C., has expended 222.3 hours on this matter. Class Counsel's total lodestar for these hours amounts to $115,680.50. The "blended rate" for Counsel's combined hours over the course of this litigation is $520.38.

38. Based on my personal experience, the requested 30% attorneys' fee (equal to $262,500) reflects less than the reasonable value of those services in light of the nature of the case, the result obtained, the quality of representation, the risks of the litigation, the customary fee, and other applicable considerations as set forth by the law.

39. Further, Sommers Schwartz, P.C., typically enters into 40% contingent fee retainer agreements with clients in connection with employment litigation matters including wage and hour actions.

40. The Named Plaintiffs in this action retained Sommers Schwartz, P.C., pursuant to a 40% contingent fee agreement. However, the Firm only seeks 30% under the Parties' Settlement.

41. Class Counsel undertook to prosecute this action without any assurance of payment for their services, litigating the case on a wholly contingent basis in the face of significant risk. Class and collective wage and hour cases of this type are, by their very nature, complicated and time-consuming. Any lawyer undertaking representation of large numbers of affected employees in wage and hour actions inevitably must be prepared to make a tremendous investment of time, energy and resources. Due also to the contingent nature of the customary fee arrangement, lawyers are asked to be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind. Class Counsel stood to gain nothing in the event the case was unsuccessful.

42. Class Counsel takes on difficult cases like this one because we believe that they are important. We take seriously our responsibility to push the law in a direction favorable for employees.

Case 5:21-cv-03495-BLF   Document 56-3   Filed 12/16/22   Page 15 of 17

We continue to do so despite, unfortunately, having suffered several major (and very expensive) losses in wage and hour cases over the years. Like this case, we believed that each of these cases was meritorious and socially useful but understood the risks. For example, over a period of 4 years Sommers Schwartz, P.C., litigated the companionship exemption issue in several home healthcare aid cases, and lost approximately $1,000,000 in lodestar.

43. To date, Class Counsel has worked without compensation of any kind on this case, and the fee has been wholly contingent upon the result achieved.

44. In my experience, administering class/collective settlements of this nature and size requires a substantial and ongoing commitment. Class Counsel will continue to invest time and incur litigation expenses for the next several months as Class Counsel communicates with Class/Collective Members and the settlement administrator concerning the settlement, prepares for an attends the Final Approval hearing, and monitors the implementation of the settlement. Thus, the final lodestar and litigation expenses will be higher – potentially significantly higher – than the current amounts reported in this declaration. Class Counsel will provided updated lodestar and litigation costs at the time of the Final Approval hearing.

45. Based on my experience, it is anticipated that at the conclusion of this case (including additional work to be performed at the Final Approval stage, and extensive work related to settlement administration and Class/Collective Member payment processing), that Class Counsel will have incur additional lodestar in a range of $15,000 to $25,000 (or more).

46. Based on the current lodestar of $115,680.50 the requested $262,500 fee will result in a multiplier of less than 2.3. Taking into account the $15,000 to $25,000 in additional lodestar that will be incurred, the multiplier at the conclusion of this case will fall in the range of 1.86 to 2.0.

47. In my opinion, and based on my experience in, and research of, other FLSA and state wage law class action settlements in this District and nationwide, the requested fee will be reasonable

- 13 -

DECLARATION OF KEVIN J. STOOPS, ESQ.  Case No. 5:21-cv-03495-BLF

and appropriate, especially in light of the amount of work performed by Class Counsel in this case and the substantial recovery obtained on behalf of the Class/Collective.

### Reasonableness of Requested Class Representative Incentive Awards

48. As set forth in their Declarations, the Named Plaintiffs and Opt-in Plaintiff Yadia Gomez (collectively "Class Representatives") worked diligently to assist Class Counsel in their activities during the pendency of this litigation. In particular, the Class Representatives took part in multiple interviews, provided records and documentation to Class Counsel, and were invaluable in assisting Class Counsel understand the legal violations at issue. They were all counseled on the rights and responsibilities of serving as a Rule 23 class representatives, and agreed to serve in that capacity.

49. The requested amounts of $5,000 to be allocated to each of them for an incentive award is commensurate with other incentive awards I have been involved in nationally and, as documented by research of other similar awards, is reasonable under the circumstances.

### Reasonableness of Requested Litigation Expenses

50. Pursuant to the Parties' Settlement Agreement, Class Counsel is seeking reimbursement of reasonable and necessary litigation expenses not to exceed $20,000.

51. I have personally reviewed the records of litigation expenses incurred in this matter by Sommers Schwartz, P.C. According to those records, to date, Sommers Schwartz, P.C., has incurred litigation expenses in the amount of $14,272.32. The litigation expenses are itemized as follows:

| | |
|---|---|
| Outside courier: | $316.18 |
| Video Conference Fees: | $15.89 |
| Filing fees: | $794.00 |
| Mediation fees: | $8,346.25 |
| Expert fees: | $4,800.00 |

52. Sommers Schwartz, P.C., has not yet received any reimbursement for any of the monies expended to cover the litigation expenses listed above.

53. In the event, Class Counsel incurs additional litigation expenses, Class Counsel will inform the Court of said amounts at the March 2, 2023 final approval hearing.

54. The records identifying the litigation expenses are available for submission to the Court upon request, and a final amount will be submitted to the Court in connection with Class Counsel's

Final Approval briefing if requested. All the expenses were reviewed by me and are reasonable, necessary, and customary for FLSA and state wage statute cases. They were all incurred in the normal course of litigation, directly benefited the Class/Collective Members, and added to the overall success of this case.

    I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 16, 2022 in Southfield, Michigan.

_____
Kevin J. Stoops