Kevin J. Stoops, Esq. (SBN 332200)
kstoops@sommerspc.com
SOMMERS SCHWARTZ, P.C.
One Towne Square Ste. 1700
Southfield, MI 48076
Telephone: (248) 355-0300

*Attorney for Plaintiffs*
*and the Class*

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

**BARBARA KULIK, JAMES ESKRIDGE,** and **MARY DUNNING GAROFALO** individually and on behalf of all others similarly situated,

          Plaintiffs,

v.

**NMCI MEDICAL CLINIC, INC.,** a corporation,

          Defendant

Case No.: 5:21-cv-03495-BLF

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS/ COLLECTIVE ACTION SETTLEMENT**

Judge: Beth Labson Freeman

Complaint Filed: May 10, 2021
FAC Filed: July 13, 2021
Final Approval Hearing: March 1, 2023

### TABLE OF CONTENTS

I.      INTRODUCTION.................................................................................................1

II.     PROCEDURAL HISTORY OF THE CASE ...................................................2

      A.      The Proceedings, Pleadings, and Parties................................................2

      B.      Summary of Discovery Conducted Prior to Mediation ...........................3

      C.      Estimated Liability.................................................................................4

III. SETTLEMENT TERMS ....................................................................................5

      A.      Value of the Settlement to the Class .......................................................5

      B.      Size of the Class/Collective and Class Definition ...................................6

      C.      Nature of the Payments and Notice, Exclusion, Objection Periods........7

      D.      The Released Claims and Released Parties .............................................8

      E.      Attorney's Fees, Costs, Enhancement, Administration, PAGA ...........................9

      F.      Notice Procedures ................................................................................10

IV. ARGUMENT ....................................................................................................10

      A.      The Best Practicable Notice of Settlement Has Been Provided to the Class/Collective ................................................................................. 10

      B.      Final Approval Standards Under Rule 23 and the FLSA .....................11

      C.      The Agreement is Presumptively Fair Because No Class/ Collective Members Have Objected to the Agreement, the Significant Discovery Conducted, Class Counsel's Experience, and Arms-Length Negotiations...........12

            1.      Zero Objections and only 1 Request for Exclusion ..................................13

            2.      The Parties Engaged in Substantial Investigation and Analysis of the Legal Issues................................................................................14

            3.      The Recommendations of Experienced Counsel Favor Approval of the Agreement ..............................................................................14

            4.      The Parties Participated in Arms-Length Negotiations Before an Experienced Neutral Mediator ...........................................................15

      D.      The Agreement Provides Substantial, Certain Benefits and Avoids the Risk, Cost, Delay and Burden of Further Litigation................................15

            1.      The Value of the Agreement Favors Final Approval................................15

            2.      Further Litigation Would Involve Risk, Expense, Delay and Burden on Class/Collective Members .......................................................16

      E.      The Court Should Grant Final Certification and Collective Action Designation .........................................................................................17

IX. CONCLUSION ................................................................................................17

i.

1

## <u>TABLE OF AUTHORITIES</u>

2

Page(s)

3

Cases

4

*Boyd v. Bechtel Corp.,*
   485 F. Supp. 610 (N.D. Cal. 1979) ........................................................................ 12, 14

5

*Chun-Hoon v. McKee Foods Corp.,*
   716 F. Supp. 2d 848 (N.D. Cal. 2010) ............................................................................ 13

6

*City of Detroit v. Grinnell Corp.,*
   495 F.2d 448 (2d Cir. 1974)............................................................................................ 16

7

*Class Plaintiffs v. City of Seattle,*
   955 F.2d 1268 (9th Cir. 1992)..............................................................................2, 11, 12

8

*Eisen v. Carlisle & Jacquelin,*
   417 U.S. 156 (1974) ........................................................................................................ 11

9

*Ellis v. Naval Air Rework Facility,*
   87 F.R.D. 15 (N.D. Cal. 1980) ................................................................................. 12, 14

10

*Greko v. Diesel U.S.A., Inc.,*
   2013 WL 1789602 (N.D. Cal. Apr. 26, 2013) ................................................................ 16

11

*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011 (9th Cir. 1998)........................................................................... 11, 14, 16

12

*Hughes v Microsoft Corp,*
   No.98 Civ. 1646 2001 U.S. Dist. LEXIS 5976, (W.D. Wash. Mar. 26, 2001)............... 15

13

*In re Mego Fin. Corp. Sec. Litig.,*
   213 F.3d 454 (8th Cir. 2000)........................................................................................... 14

14

*In re Pacific Enters. Sec. Litig.,*
   47 F.3d 373 (9th Cir. 1995)............................................................................................. 14

15

*Linney v. Cellular Alaska P'ship,*
   151 F.3d 1234 (9th Cir. 1998)......................................................................................... 15

16

*Lynn's Food Stores, Inc. v. U.S.,*
   679 F.2d 1350 (11th Cir. 1982)....................................................................................... 11

17

*M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.,*
   671 F. Supp. 819 (D. Mass. 1987) .................................................................................. 12

18

*Mandujano v. Basic Vegetable Prods. Inc.,*
   541 F.2d 832 (9th Cir. 1976)........................................................................................... 13

19

*Mora v. Harley-Davidson Credit Corp.,*
   2014 WL 29743 (E.D. Cal. Jan. 3, 2014)........................................................................ 16

20

*Mullane v. Central Hanover Bank & Trust Co.,*
   339 U.S. 306 (1950) ........................................................................................................ 11

21

*Nat'l Rural Telecomms. Coop v. DIRECTV, Inc.,*
   221 F.R.D. 523 (C.D. Cal. 2004) .................................................................................... 13

22

*Officers for Justice v. Civil Serv. Comm'n,*
   688 F.2d 615 (9th Cir. 1982)............................................................................. 11, 12, 15

23

*Ortiz v. Fibreboard Corp.,*
   527 U.S. 815 (1999) ........................................................................................................ 12

24

*Phillips Petrol. Co. v. Shutts,*
   472 U.S. 797 (1985) .......................................................................................................... 1

25

26

27

28

ii

*Rodriguez v. West Publishing Corp.*,
    563 F.3d 948 (9th Cir. 2009) ............................................................................. 14
*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ...........................................................................2, 11
*Thieriot v. Celtic Ins. Co.*,
    2011 WL 1522385 (N.D. Cal. April 21, 2011) ................................................... 16
*Tijero v. Aaron Bros., Inc.*,
    2013 WL 6700102 (N.D. Cal. Dec. 19, 2013) .................................................... 15
*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ................................................................................ 12

Statutes

29 U.S.C. 216(b) .......................................................................................................... 3
29 U.S.C. § 201 ..................................................................................................... 1, 17
Section 1542 of the California Civil Code .................................................................. 9
U.S.C. § 201 ................................................................................................................ 9

Rules

Federal Rule of Civil Procedure 23(e) ..................................................................... 11
Federal Rules of Civil Procedure, Rule 23 ......................................................... 1, 17
Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure ............................... 17

Other Authorities

*Manual for Complex Litigation (Third)* § 30.42 (1995) ......................................... 15
*Manual for Complex Litigation, Fourth* ,
    (Fed. Judicial Center 2004) ("*Manual*") ......................................................... 11

iii

## I.    INTRODUCTION

This is a FLSA/California wage-and-hour hybrid collective/class action. Plaintiffs, Barbara Kulik, James Eskridge, and Mary Dunning Garofalo (hereinafter "Plaintiffs") have settled this litigation on behalf of approximately 100 hourly, non-exempt California employees of Defendant, NMCI Medical Clinic, Inc. ("Defendant").

In this unopposed Motion, Plaintiffs request entry of an order (1) certifying a class for settlement purposes under the Federal Rules of Civil Procedure, Rule 23 (e.g., "Rule 23") and certifying a FLSA collective for settlement purposes under 29 U.S.C. § 201, *et seq.* (as defined in the Parties' Stipulation of Settlement); (2) finally approving the Parties' Settlement (Exh. A); (3) appointing Plaintiffs Barbara Kulik, James Eskridge, and Mary Dunning Garofalo, as well as Opt-in Plaintiff Yadira Gomez, as Class Representatives for the Class/Collective and Plaintiffs' counsel as Class Counsel; and (4) awarding fees to the third-party Settlement Administrator Simpluris, Inc.

The Agreement resolves litigation over Plaintiffs' and Class/Collective Members' claims that Defendant violated the Fair Labor Standards Act ("FLSA") and California wage and hour laws by failing to pay Plaintiffs and the Class/Collective Members for off-the-clock work and required overtime. The Agreement is the product of arms-length negotiations by experienced counsel, after significant investigation, and recognition of the strengths and weaknesses of each side's positions.

The $875,000 settlement readily satisfies the Rule 23 standard of being "fair, reasonable, and adequate." The Class/Collective has responded overwhelmingly favorably to the Agreement. *See* Declaration of Kevin Stoops (Exh. B at ¶ 35) and Declaration of Lindsay Kline (Simpluris, Inc.) (Exh. C at ¶¶ 10-14). The objection and exclusion period closed on December 30, 2022. Zero objections were made to the Settlement. And, only there was only 1 request for exclusion from the settlement out of the 100 Class Members who received notice of the Agreement. *Id.* Additionally, the Settlement Administrator received 22 consent to join forms from individuals wishing to join the FLSA collective. (*Id.*). The average estimated payment is **$5,636.41** and the highest estimated payment is **$43,742.17**. (*Id.* at ¶ 17).

Furthermore, Class Counsel (who are among the most highly experienced attorneys in the

country handling complex wage and hour class and collective actions) have conducted sufficient discovery to enable them to adequately evaluate the claims and defenses in the action. (Exh. B, Stoops Decl. at ¶¶ 9-28). Lastly, the Settlement is in line with the strength and recoverability of Plaintiffs' claims given the risk, expense, complexity, and likely duration of further litigation. *See Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992). (A proposed order of Final Approval is attached as Exhibit D).

## II.     PROCEDURAL HISTORY OF THE CASE

### A.     The Proceedings, Pleadings, and Parties

On May 10, 2021, Plaintiffs filed this lawsuit and provided notice to the Labor and Workforce Development Agency of the forthcoming PAGA claims. [ECF Nos. 1-2]. On June 22, 2021, Defendant filed an Answer to Plaintiffs' Complaint. [ECF No. 11]. At the conclusion of the statutory waiting period, on July 13, 2021, Plaintiffs filed the First Amended Complaint ("FAC") adding their claims under the PAGA. [ECF No. 17]. As referenced above, the Plaintiffs and Class Members are all hourly, non-exempt Medical Assistants, Physician Assistants, and Nurse Practitioners.

In the FAC, Plaintiffs, make a number of allegations of off-the-clock work, including time spent completing necessary work-related paperwork (such as medical charting). (FAC at ¶15). Plaintiffs were scheduled to see patients every twenty minutes during the workday. However, the appointments often ran beyond the allotted twenty minutes, which left Plaintiffs with little time to perform their necessary medical charting duties. (*Id.* at ¶24). Indeed, the FAC alleges "Defendant would always discourage or outright refuse to allow Plaintiffs and other Class Members to log overtime hours." (*Id.* at ¶27). Additionally, at the end of 2019, Defendant informed Plaintiffs and other Class Members that they were "exempt" employees under state and federal labor laws, and would not receive overtime premium wages. (*Id.*). If proven true, these facts would establish valid claims under both state and federal law.

However, Defendant strongly disputes the veracity of Plaintiffs' factual allegations and also maintains the alleged claims are not suitable for class treatment. Nonetheless, on September 16, 2021,

the Parties submitted a stipulation and proposed order to attend a private mediation. [ECF No. 30].

In the months that followed, the parties engaged in informal discovery, which included production of payroll and employment data for the putative class/collective. This informal discovery assisted the parties in preparing detailed mediation summaries. Additionally, for assistance in creating a class-wide damage model, Class Counsel enlisted the services of damages expert and forensic accountant Eric Lietzow, CPA/ABV of Desmond, Marcello & Amster, P.C. Finally, in January 2022, the Parties attended a mediation with the Honorable Cecily Bond (Ret.). Unfortunately, the first mediation the Parties attended was unsuccessful. (Exh. B, Stoops Decl. at ¶¶ 14-15).

Immediately after the failed mediation, Class Counsel wasted no time in moving the litigation forward. On February 10, 2022, Class Counsel filed a comprehensive motion for conditional certification, pursuant to 29 U.S.C. 216(b). [ECF No. 35]. However, before briefing on the conditional certification motion continued, the Parties reached an agreement to attend a second mediation. On February 21, 2022, a Joint Motion and Stipulation to Continue the Hearing on Plaintiffs' Motion for Conditional Certification was filed, which included a tolling agreement for the FLSA statute of limitations. [ECF No. 36]. The Court granted the Motion to Continue and the case returned to a mediation/settlement posture. ECF No. 37].

On March 1, 2022, the Parties attended a second mediation with nationally respected wage and hour mediator, Gig Kyriacou. After extensive arms-length negotiations, and with the assistance of Mr. Kyriacou, the Parties were able to reach a class-wide settlement of all of the claims asserted in the FAC. A Memorandum of Understanding was executed the same day, and, over the next several weeks, the Parties continued to negotiate the terms of the long-form settlement agreement. (Exh. B, Stoops Decl. at ¶ 16). On April 1, 2022, Plaintiffs filed a Notice of Settlement and Withdrawal of Pre-Discovery Motion for Conditional Certification. [ECF No. 39].

**B.      Summary of Discovery Conducted Prior to Mediation**

As stated above, significant discovery has already occurred in this case. In preparation for the mediation, Defendant produced payroll and time data for the Class Members. Eric Lietzow assisted Class Counsel in synthesizing the data into an accurate damage model based on the sampling of records

produced by Defendant. (Exh. B, Stoops Decl. at ¶¶ 9-28).

Specifically, in preparation for mediation, Defendant produced complete payroll and time data for 21 of the 94 Class Members (22% of the class). From analyzing this representative data, Class Counsel was able to extrapolate the findings to the remainder of the Class Members to create a damage model. Based on the data produced, and with the assistance of Mr. Lietzow, Class Counsel was able to obtain the following metrics relative to the Class Members: approximately 23,683 shifts, 5,666 workweeks and 2,833 pay periods.

### C.    Estimated Liability

If Plaintiffs succeeded in proving: ten (10) minutes of off the clock work every shift; that they worked through their meal periods on 10% of their shifts; missed 10% of their rest breaks (with no valid waiver); and incurred $10 a month in unreimbursed business expenses, then Class Counsel estimates the maximum damage exposure to the Class Members for every claim asserted in the FAC to be $1,666,170.15. (Exh. B, Stoops Decl. at ¶¶ 20-21). This number is broken down as follows: $265,798.27 in straight time wages; $159,342.31 in overtime wages; $159,342.31 in liquidated damages; $16,270.80 in unreimbursed business expenses; $112,594.38 in meal break damages; $114,425.30 in rest break damages; $555,892.78 in waiting time penalties; $91,411.50 in wage statement penalties; $63,697.50 in Labor Code §558 penalties; and $127,395.00 Labor Code 2699(f)(2) penalties. (*Id*).

Of course, Defendant strongly disputes any off the clock work occurred and also denies any unreimbursed business expenses. Furthermore, although Plaintiffs maintain there is absolutely no excuse for classifying the Class Members as exempt from overtime, as illustrated above, the overtime component of the damages in this case is relatively insignificant. The data sampling demonstrated there were many workweeks in which the hours worked did not support a claim for unpaid overtime (daily or weekly). (*Id*. at ¶ 22). In any case, based on the above maximum possible recovery, the proposed Settlement offers the Class Members approximately 52% of their damages. (*Id*. at ¶ 23).

The settlement amount is substantial, completely reasonable, and marks a fair compromise of the claims. Significantly, the total settlement amount equates to more than the total actual wage

damages (overtime wages plus straight time wages) of $318,684.62 and the unreimbursed business expenses ($16,270.80) suffered by the Class when computing claims equal to **10 minutes of off-the-clock work per shift per class member**. Indeed, a large portion of the damages to be paid under the settlement are for various penalties under the California Labor Code. (*Id*. at ¶ 24). (*Id*.).

## III. SETTLEMENT TERMS

The Stipulation of Settlement provides as follows:

### A.      Value of the Settlement to the Class

The settlement provides for a non-reversionary Gross Fund Value ("GFV") of $875,000.00. (Exh. A, at ¶2). The Net GFV means the Settlement Amount minus Class Counsel's fees and costs, the charges for the Claims Administrator, the named Plaintiffs' ("Class Representatives") enhancement awards, the FLSA settlement fund, and the PAGA settlement fund. (*Id*. at ¶ 2(f)). The anticipated Net GFV is approximately $571,500.00, based on the following deductions from the GFV: $5,000.00 to each of the three Class Representatives as an enhancement award; $20,000.00 for settlement administration fees; $20,000.00 for the FLSA Penalty Payment fund; $20,000.00 for the PAGA Payment fund; $262,500.00 for attorney fees (30% of the GFV); and up to $20,000 in litigation expenses. The Net GFV of $571,500.00 provides *substantial* relief and will be distributed to the 99 class members on a pro-rata basis. (*Id*. at ¶ 2).

More specifically, all Participating Class Members will receive a portion of the Net GFV on a pro rata basis, based on the number of workweeks they worked during the Class Period with an adjustment to be made based on each Participating Class Member's position and rate of pay ("Class Payment"). First, the Administrator will calculate the total number of workweeks worked by each Class Member and multiply that number by their base hourly rate of pay for the last pay period that they worked for Defendant during the Class Period to determine their "Individual Qualifying Wages." Second, the Administrator will add together the Individual Qualifying Wages for all of the Participating Class Members to determine the "Aggregate Qualifying Wages." Third, the Administrator will divide each Participating Class Member's Individual Qualifying Wages by the Aggregate Qualifying Wages to determine that Participating Class Member's "Qualifying Wages

Ratio." Finally, the Administrator will multiply each Participating Class Member's Qualifying Wages Ratio by the Net GFV to determine their "Class Payment." (*Id.* at ¶2(f)(ii)).

Additionally, the PAGA Payment will be calculated in a similar fashion, after 75% of the PAGA Payment fund is allocated to the LWDA. The Administrator will also calculate the total number of PAGA Workweeks worked by each PAGA Group Member during the PAGA Period and the aggregate total number of PAGA Workweeks worked by all PAGA Group Members during the PAGA Period. The Administrator will then use the following formula to calculate each PAGA Group Member's "PAGA Payment": After deducting $5,000, or any other amount approved by the Court that is 25% of the PAGA Penalties, the Net PAGA allocation will be divided by the aggregate total number of PAGA Workweeks, resulting in the "Workweek Value." Each PAGA Group Member's PAGA Payment will be calculated by multiplying their number of PAGA Workweeks worked by the Workweek Value. (*Id* at ¶2(f)(iii)).

Finally, The Administrator will also calculate the total number of FLSA Workweeks worked by each Participating FLSA Collective Member during the FLSA Period and the aggregate total number of FLSA Workweeks worked by all Participating FLSA Collective Members during the FLSA Period. The Administrator will then use the following formula to calculate each Participating FLSA Collective Member's "FLSA Payment": the $20,000 FLSA allocation will be divided by the aggregate total number of FLSA Workweeks, resulting in the "Workweek Value." Each Participating FLSA Collective Member's FLSA Payment will be calculated by multiplying their number of FLSA Workweeks worked by the Workweek Value. (*Id.* at ¶2(f)(iv)).

**B.     Size of the Class/Collective and Class Definition**

Under the Agreement, "Participating Class Members" are defined as: "all of Defendant's current and former hourly employees in California holding the positions of Medical Assistants, Physician Assistants, and Nurse Practitioners during the Class Period (between May 10, 2017 through May 10, 2022) and who did not submit a valid and timely Request for Exclusion (or opt-out) from the Class. (Exh. A at ¶10(a)).

"Participating FLSA Collective Members" are defined as: "all of Defendant's current and former hourly employees in California holding the positions of Medical Assistants, Physician Assistants, and Nurse Practitioners during the FLSA Period (between May 10, 2018 through May 10, 2022) and who submit a valid opt-in form." (*Id*.).

"PAGA Group Members" means "all of Defendant's current and former hourly employees in California holding the positions of Medical Assistants, Physician Assistants and Nurse Practitioners during the PAGA Period (May 10, 2020 through May 10, 2022)." (*Id*.).

As of the time of mediation, Defendant estimated that the Class consists of approximately 6,500 workweeks. (*Id*. at ¶13).

**C.      Nature of the Payments and Notice, Exclusion, Objection Periods**

This is a common fund settlement with no reversion, and every Participating Class Member will automatically be sent a check from the Net GFV. (Exh. A at ¶10(a)-(b)). The Administrator shall mail and distribute to all Class Members a notice of the settlement in English informing them of the basic information regarding its terms, how to submit objections, how to exclude themselves from this proposed settlement, their estimated shares of the Net GVF, how to dispute the allocated number of workweeks, and the date for a final fairness hearing (the "Class Notice," in a form substantially similar to that attached as *Exhibit A* to the Settlement Agreement) and the FLSA Opt-in Form (in a form substantially similar to that attached as *Exhibit B* to the Settlement Agreement).

Any monies allocated to Class Members who do not participate in this settlement because they opted out will be redistributed to the Net GVF for distribution in accordance with this Agreement. The redistribution will take place by eliminating the non-participating class members' Individual Qualifying Wages from the Aggregate Qualifying Wages used to calculate the Total Value per Workweek. The Total Value per Workweek will then be recalculated and applied to Participating Class Members' workweeks to determine their respective share of the Net GFV. (*Id.* at ¶10(b)).

Eighty Percent 80% of the payment of the Net GFV to Participating Class Members will consist of 1099 income representing payment for statutory penalties, interest and expense reimbursement. (*Id.* at ¶10(c)). The remaining 20% will be considered wages subject to deductions

for withholdings for the Employer's Taxes and Required Withholding and a Form W-2. (*Id.*). The PAGA Penalty Payments and FLSA Penalty Payments will be allocated 100% to penalties and interest that will not be subject to deductions and withholdings. (*Id.*).

The Response Deadline for purposes of a Class Member's Request for Exclusion, FLSA Opt-in Form, or Notices of Objection to the Administrator shall be forty-five (45) calendar days from the initial mailing of the Class Notice by the Administrator, unless the forty-fifth (45th) calendar day falls on a Sunday or Federal holiday, in which case the Response Deadline will be extended to the next day on which the U.S. Postal Service is open. (*Id.* at ¶10(j)). The Response Deadline for Requests for Exclusion, FLSA Opt-in Form, and Notices of Objection will be extended by fourteen (14) calendar days for any Class Member who is re-mailed a Class Notice by the Administrator, unless the fourteenth (14th) calendar day falls on a Sunday or Federal holiday, in which case the Response Deadline will be extended to the next day on which the U.S. Postal Service is open. (*Id.*). The Response Deadline may also be extended by express written agreement between Class Counsel and Defendant. Under no circumstances, however, will the Administrator have the authority to unilaterally extend the deadline for Class Members to submit a Request for Exclusion, FLSA Opt-in Form, or Notice of Objection. (*Id.*).

### D.     The Released Claims and Released Parties

The Participating Class Members will release only the claims asserted in the FAC. Specifically, the Class Members will release: "any and all claims, demands, debts, duties, obligations, promises, liabilities, damages, accounts, payments, liens acts, costs, expenses, sums of money, suits, dues, actions or causes of action, both in law and in equity, whether known or unknown, matured or unmatured, suspected or unsuspected, against any of the Released Parties which were alleged in the Action or which could have been alleged based on the facts alleged in the Action and which occurred during the Class Period (including, but not limited to, claims for failure to pay overtime wages; failure to pay minimum wages; failure to provide meal periods or compensation in lieu thereof; failure to provide rest periods or compensation in lieu thereof; waiting time penalties; wage statement violations; unfair competition in connection with the allegations brought in the Action; and any violations of

Labor Code sections 201, 202, 203, 226, 226(c), 226.7, 227.3, 510, 512, 558.1, 1194, 1194.2, 1197, 1198.5, and 2802)." (Exh. A at ¶ 3(b)).

Additionally, all FLSA Collective Members will release: "any and all claims, demands, debts, duties, obligations, promises, liabilities, damages, accounts, payments, liens acts, costs, expenses, sums of money, suits, dues, actions or causes of action, both in law and in equity, whether known or unknown, matured or unmatured, suspected or unsuspected, against any of the Released Parties, for any and all types of relief under the Fair Labor Standards Act, U.S.C. § 201, et seq., including without limitation claims for failure to pay minimum wage, overtime, and for all hours worked, and any and all claims for recovery of compensation, overtime pay, minimum wage, liquidated damages, interest, and/or penalties tied to such claims, that arose or accrued at any time during the FLSA Period." (*Id.* at ¶ 3(c)).

The Representative Plaintiffs will provide a general release, including a waiver of the provisions of Section 1542 of the California Civil Code. (*Id.* at ¶ 3(e-f)).

### E.    Attorney's Fees, Costs, Enhancement, Administration, PAGA

From the GFV, Two Hundred Sixty Two Thousand Five Hundred Dollars and Zero Cents ($262,500), or 30% of the GFV, shall be allocated to Class Counsel's Fees. Additionally, Class Counsel seeks reimbursement of litigation expenses ("Costs"), which are estimated to be no more than Twenty Thousand Dollars ($20,000) by the conclusion of the Settlement. (Exh. A at ¶2(e)).

Furthermore, the Agreement provides that Twenty Thousand Dollars and Zero Cents ($20,000) of the GFV will be allocated to resolve the Class Members' claims under the Private Attorneys General Act ("PAGA") and will be distributed in accordance with the percentages identified within the Act. Specifically, twenty-five percent (25%) of the PAGA penalty allocation or $5,000 will be distributed to the Net GFV for distribution to PAGA Group Members (defined in 10(a) below) on a pro rata basis, and seventy-five percent (75%) of the PAGA penalty allocation (i.e. $15,000) will be distributed to the California Labor and Workforce Development Agency (LWDA)." (Exh. A at ¶ 2(e)).

For their assistance in obtaining relief for the Settlement Classes, the Class Representatives (Barbara Kulik, James Eskridge, Mary Dunning Garofalo, and Yadira Gomez) seek Enhancements in the

amount of $5,000 each.

Finally, Settlement Agreement allocates up to $20,000 for settlement administration expenses, but the bid accepted for the administration of the settlement was just $4,495. (*Id*. at ¶ 2(b)). The parties have selected Simpluris, Inc. as the Settlement Administrator. Any unused funds allocated to settlement administration expenses will pour into the Net GFV.

**F.      Notice Procedures**

The procedures for giving notice and supplemental notice to the Class/Collective Members, as set forth in the Agreement and ordered in the Preliminary Approval Order [ECF No. 55], have been properly followed. (Exh. B, Stoops Decl. at ¶ 31). On November 15, 2022, the Settlement Administrator issued notice to each of the 100 Class/Collective Members. (Exh. C, Kline Decl. at ¶ 8).

The notice and the exclusion forms contained detailed information about the lawsuit, including the total amount of the settlement, the method by which the settlement funds would be allocated among the Class/Collective Member, and procedures for opting-in, requesting exclusion from, and objecting to the Agreement. The Notice also provided contact information for Class Counsel and the Settlement Administrator.

The Settlement Administrator followed accepted best practices to ensure that the notice reached as many Class Members as feasible. (*Id.* at ¶¶ 7-9). The Settlement Administrator disseminated the Court-approved notice to all Class/Collective Members by first class mail, using the National Change of Address ("NCOA") database to verify the accuracy of all addresses prior to sending the Notices. (*Id.*). The Settlement Administrator also ran traces on the addresses of any returned Notices to again search for an updated address. (*Id.*).

**IV. ARGUMENT**

**A.      The Best Practicable Notice of Settlement Has Been Provided to the Class/Collective.**

The mailing of the Notice and corresponding forms to Class/Collective Members, and the general administration of the notice process as described above, meets the requirements for the "best practicable" notice in this case as necessary to protect the due process rights of Class Members. *See*

*e.g., Phillips Petrol. Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) (provision of "best practicable" notice with description of the litigation and explanation of opt-out rights satisfies due process); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974) (individual notice must be sent to class members who can be identified through reasonable means); *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested Parties of the pendency of the action and afford them an opportunity to present their objections"). Therefore, the Court may proceed to determine the fairness and adequacy of the Agreement, and order its approval, secure in the knowledge that all absent Class/Collective Members have been given the opportunity to participate fully in the opt-in, opt-out, comment, and approval process.

**B.    Final Approval Standards Under Rule 23 and the FLSA.**

"[V]oluntary conciliation and settlement are the preferred means of dispute resolution," especially in complex class actions. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). Class action lawsuits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation. *Class Plaintiffs*, 955 F.2d at 1276 (noting that "strong judicial policy [. . .] favors settlements, particularly where complex class action litigation is concerned"). On a motion for final approval of a class action settlement under Federal Rule of Civil Procedure 23(e), a court's inquiry is whether the settlement is "fair, adequate and reasonable," recognizing that "'it is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness.'" *Staton,* 327 F.3d at 952 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

Similarly, under the FLSA, a settlement that results in waiver of FLSA claims should be approved where it is "entered as part of a stipulated judgment approved by the court after scrutinizing the settlement for fairness." *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1352-53 (11th Cir. 1982). A settlement is fair, adequate and reasonable, and therefore merits final approval, when "the interests of the class are better served by the settlement than by further litigation." *Manual for Complex Litigation, Fourth* (Fed. Judicial Center 2004) ("*Manual*"), § 21.6 at 309.

When determining whether to grant final approval, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the Parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating Parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625. The court should balance "the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the state of the proceedings; the experience and views of counsel [. . .] and the reaction of the class to the proposed settlement." *Class Plaintiffs*, 955 F.2d at 1291; *accord Torrisi v. Tucson Elec. Power Co*., 8 F.3d 1370, 1375 (9th Cir. 1993). "The recommendations of Plaintiffs' counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.,* 485 F. Supp. 610, 622 (N.D. Cal. 1979); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight.").

### C.    The Agreement Is Presumptively Fair Because No Class/Collective Members have Objected to the Agreement, the Significant Discovery Conducted, Class Counsel's <u>Experience, and the Arms-Length Negotiations.</u>

The Court should begin its analysis with a presumption that the Agreement is fair and should be approved, due to (1) the existence of zero objection to the Agreement by the Class/Collective Members, (2) the meaningful discovery conducted, (3) Class Counsel's significant experience in this kind of litigation, and (4) the arms-length negotiations before an experienced mediator. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 852 (1999) (holding that arms-length negotiations conducted by competent counsel after appropriate discovery are *prima-facie* evidence that the settlement is fair and reasonable); *M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822 (D. Mass. 1987) ("Where, as here, a proposed class settlement has been reached after meaningful discovery, after arm's length negotiation, conducted by capable counsel, it is presumptively fair."). These factors are well satisfied here.

*First*, zero objections were made to the Agreement and the objection period closed December

30, 2022. (Exh. B, Stoops Decl. at ¶ 35).

*Second*, only 1 Class/Collective Member excluded herself from the Agreement. These Class/Collective Member amounts to only 1% of the 100 Class/Collective Members who were provided Notice. (*Id.*). Additionally, the Settlement Administrator received 22 consent to join forms from individuals wishing to join the FLSA collective. (*Id.*).

*Third*, as discussed above, the Parties engaged in substantial discovery and a significant exchange of relevant information and data in advance of the Parties' mediation. As a result of these efforts, Class Counsel had sufficient information to evaluate the strengths and weaknesses of the Class/Collective claims and defenses, whether to pursue litigation or settle, and the appropriate settlement value for the claims at issue.

*Fourth*, Class Counsel are highly experienced in wage and hour class action litigation.

*Finally*, the Settlement was reached only after not one, but two, arms-length, good-faith negotiations under the supervision of an experienced mediator, Gig Kyriacou. The case has been zealously litigated by both sides. There are no indicia of collusion.

For all these reasons, a presumption is appropriate that the class relief in the Agreement is fair.

### 1. Zero Objections and only 1 Request for Exclusion

As of the date the objection period closed, December 30, 2022, zero objections were made despite the notice going to 100 Class/Collective Members. Even in cases where objections are made it is recognized that a small number of objections indicates a favorable class reaction. *See Nat'l Rural Telecomms. Coop v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (holding that "in the absence of a large number of objections to a proposed class action settlement, settlement actions are favorable to the class members."); *see also Mandujano v. Basic Vegetable Prods. Inc.*, 541 F.2d 832, 837 (9th Cir. 1976).

Moreover, only 1 Class/Collective Member – only 1% of the Class/Collective – opted out of the Agreement. This overwhelmingly positive reaction of the Class/Collective strongly supports final approval of the Agreement. *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 850 (N.D. Cal. 2010) (granting final approval where 16 of 329 class members opted out, explaining that where

exclusions and opt-outs are low, there is a presumption of a favorable class reaction).

### 2. The Parties Engaged in Substantial Investigation and Analysis of the Legal Issues.

Class Counsel have engaged in extensive investigation of the claims in this case and the Parties engaged in significant discovery. (Exh. B, Stoops Decl. at ¶¶ 9-28). Class Counsel reviewed hundreds of pages of documents produced by Defendant; interviewed Class/Collective Members and potential opt-in plaintiffs regarding their job duties, hours worked, and other relevant information; and, along with Desmond, Marcello & Amster, P.C., analyzed detailed, individualized class/collective member payroll and time record data to prepare a comprehensive damage analysis. (*Id*.).

Finally, the parties spent countless hours (on both legal research and damage analysis) preparing for and taking part in mediation.

In summary, the Parties engaged in substantial investigation and analysis of the legal issues in reaching a Settlement in this case. *Cf. In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (8th Cir. 2000) (emphasizing that the touch stone of the analysis is whether "the parties have sufficient information to make an informed decision about settlement," including formal and informal discovery).

### 3. The Recommendations of Experienced Counsel Favor Approval of the Agreement.

The judgment of experienced counsel regarding the settlement is entitled to great weight. *Hanlon*, 150 F.3d at 1026; *Boyd*, 485 F. Supp. at 622; *Ellis*, 87 F.R.D. at 18. Reliance on such recommendations is premised on the fact that "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (*quoting In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)).

Here, counsel for both Parties endorse the Agreement as fair, adequate, and reasonable. Plaintiffs' Counsel and Defendant's counsel each have extensive experience in prosecuting and litigating class action wage and hour suits like this one. The fact that qualified and well-informed counsel endorse the Agreement as being fair, reasonable, and adequate heavily favors this Court's approval of the Agreement.

1

2          **4.      The Parties Participated in Arms-Length Negotiations Before an Experienced Neutral Mediator.**

3          As set forth above, a settlement is presumed fair if it was negotiated at arm's length by

4   experienced, competent counsel equipped with enough information to act intelligently. *See Tijero v.*

5   *Aaron Bros., Inc.*, 2013 WL 6700102, at *7 (N.D. Cal. Dec. 19, 2013) (where settlement reached after

6   parties participated in private mediation, settlement was appropriate for final approval); *Hughes v.*

7   *Microsoft Corp.*, No. 98 Civ. 1646, 2001 U.S. Dist. LEXIS 5976, at *20 (W.D. Wash. Mar. 26, 2001)

8   ("A presumption of correctness is said to attach to a class settlement reached in arms-length

9   negotiations between experienced capable counsel after meaningful discovery.") (citing *Manual for*

10  *Complex Litigation (Third)* § 30.42 (1995)).

11         The parties engaged in two lengthy day-long mediations followed by several weeks of direct

12  negotiations. Before the mediations, the Parties submitted extensive mediation briefing, including

13  detailed data analyses and assessments, and substantial evidence.

14         **D.      The Agreement Provides Substantial, Certain Benefits and Avoids the Risk, Cost, Delay, and Burden of Further Litigation.**

15

16         **1.      The Value of the Agreement Favors Final Approval.**

17         The value of the Agreement – $875,000 – is an excellent result, and the Agreement compares

18  favorably to other similar class-action settlements. This is especially true in light of the defenses raised

19  by Defendant including defenses relating to: compensability of the alleged off-the-clock time; amount of

20  off-the-clock time worked; failure to state valid meal period and rest break claims; and the propriety of

21  class and collective certification. (Exh. B, Stoops Decl. at ¶¶ 12, 22). Plaintiffs faced the very real

22  possibility that if they proceeded to trial, they might obtain little if any recovery for the Class.

23         The Agreement is substantial, especially as its adequacy must be judged as "a yielding of

24  absolutes and an abandoning of highest hopes [. . .] Naturally, the agreement reached normally embodies

25  a compromise; in exchange for the saving of cost and elimination of risk, the Parties each give up

26  something they might have won had they proceeded with litigation[.]" *Officers for Justice*, 688 F.2d at

27  624 (citation omitted). Accordingly, the Settlement is not to be judged against a speculative measure of

28  what might have been achieved. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242

(9th Cir. 1998). In the end, "[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027. In addition, the Court should consider that the Settlement provides for payment to the Class now, rather than a speculative payment many years down the road. *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).

Based on the damage analysis conducted by Class Counsel and the expert economist, and in light of the factual and legal defenses identified above, the $875,000 settlement equates to approximately 52% of Defendant's $1,666,170.15 total exposure. (Exh. B, Stoops Decl. at ¶¶ 20, 23).

Finally, the average estimated payment to the Class/Collective Members is **$5,636.41** and the highest estimated payment is **$43,742.17.** (Exh. C, Kline Decl. at ¶ 17).

Certainly, there can be no question that the Agreement is substantial and provides a significant benefit to Class/Collective Members.

### 2. Further Litigation Would Involve Risk, Expense, Delay, and Burden on Class/Collective Members.

When a party continues to deny liability, there is an inherent risk in continuing litigation. In *Thieriot v. Celtic Ins. Co.*, 2011 WL 1522385 at *5 (N.D. Cal. April 21, 2011), the district court approved a settlement agreement in which the defendant specifically denied liability, noting that such denial of liability illustrated the risk to continued litigation. *See also Mora v. Harley-Davidson Credit Corp.*, 2014 WL 29743 at *4 (E.D. Cal. Jan. 3, 2014) (granting final approval to settlement agreement where defendant denied any liability); *Cf. Greko v. Diesel U.S.A., Inc.*, 2013 WL 1789602 at *4 (N.D. Cal. Apr. 26, 2013) ("[E]ven with a strong case, litigation entails expense.").

Similarly here, Defendant continues to contest liability and the propriety of collective and class certification. Defendant's absolute denial of liability, paired with its diligent efforts to prevent collective and class treatment, spotlight the risks of continued litigation and favor granting final approval to the proposed Agreement.

Moreover, this Rule 23 Class and FLSA Collective involves intricate legal and factual questions under federal and state law. Litigating these complex claims would require substantial additional discovery and further pre-trial motions (including motions for certification and

decertification), as well as the consideration, preparation, and presentation of voluminous documentary and testimonial evidence. Trial itself would require the use of expert witnesses at the damages phase, and would involve numerous complex legal and factual issues. Once liability had been established on a class-wide basis, Class/Collective Members might be required to testify at individual damages mini-trials. As is typical with any case, but especially so with class actions, appeals would probably follow, with the result that payments to Class/Collective Members, if any, would likely occur only after several years of delay. In contrast, the Agreement will yield a prompt, certain, and substantial recovery for the Class/Collective Members. Such a result benefits the Parties and the court system.

**E.      The Court Should Grant Final Class Certification and Collective Action Designation.**

The Court previously certified the Class and Collective for settlement purposes only pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure and as a FLSA collective action. [ECF No. 55]. The Court ruled that, for purposes of the settlement, the Class meets the Rule 23 requirements as well as the FLSA collective action requirements. (*Id.*). The Court also appointed the named Plaintiffs as Class Representatives and Plaintiffs' counsel as Class Counsel. (*Id.*). For these reasons, and the reasons set forth in the Motion for Preliminary Approval, Plaintiffs respectfully submit that the Court should grant final certification and collective action designation for purposes of settlement of this matter and should confirm the appointment of the class representatives and class counsel.

## IV. CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request entry of an order (1) certifying a class for settlement purposes under the Federal Rules of Civil Procedure, Rule 23 (e.g., "Rule 23") and certifying a FLSA collective for settlement purposes under 29 U.S.C. § 201, *et seq.* (as defined in the Parties' Stipulation of Settlement); (2) finally approving the Parties' Settlement; (3) appointing Plaintiffs Barbara Kulik, James Eskridge, and Mary Dunning Garofalo, as well as Opt-in Plaintiff Yadira Gomez, as Class Representatives for the Class/Collective and Plaintiffs' counsel as Class Counsel; and (4) awarding fees to the third-party Settlement Administrator Simpluris, Inc.

1

2                                        Respectfully Submitted,

3                                        SOMMERS SCHWARTZ, P.C.

4
      DATED: February 16, 2023           By: /s/ Kevin J. Stoops_____
5                                        Kevin J Stoops (SBN 332200)
                                         kstoops@sommerspc.com
6                                        SOMMERS SCHWARTZ, P.C.
                                         One Towne Square Ste. 1700
7                                        Southfield, MI. 48076
                                         Telephone: (248) 355-0300
8
9                                        *Attorneys for Plaintiff and Proposed Collective and
                                         Class members*
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERITIFICATE OF SERVICE**
*Kulik, et al. v. NMCI Medical Clinic, Inc.*
**CASE NO.: 5:21-cv-03495-BLF**

**State of California, County of San Diego**

At the time of service, I was over the age of 18 years and not a party to this action. My business address is One Towne Square, Suite 1700, Southfield, Michigan, 48076. I am employed in the office of a member of the bar of this Court at whose direction the service was made:

On February 16, 2023, I served the following documents:

1. **PLAINTIFFS' NOTICE OF UNOPPOSED MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS/COLLECTIVE ACTION SETTLEMENT**
2. **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS/COLLECTIVE ACTION SETTLEMENT**
3. **CLASS ACTION SETTLEMENT AGREEMENT**
4. **DECLARATION OF KEVIN J STOOPS IN SUPPORT OF FINAL APPROVAL OF CLASS/COLLECTIVE SETTLEMENT**
5. **DECLARATION OF LINDSAY KLINE REGARDING NOTICE AND SETTLEMENT ADMINISTRATION**
6. **[PROPOSED] ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS/COLLECTIVE ACTION SETTLEMENT AND ENTERING FINAL JUDGMENT**

I served the documents on the following persons at the following addresses (including fax numbers and e-mail addresses, if applicable):

Christine D. Baran, Esq.
Email: cbaran@fisherphillips.com
FISHER & PHILLIPS LLP
2050 Main Street, Ste. 1000
Irvine, CA 92614
Tel: 949-851-2424
Fax: 949-851-0152

William R.H. Mosher, Esq.
Email: wmosher@fisherphillips.com
FISHER & PHILLIPS LLP
621 Capitol Mall, Ste. 1400
Sacramento, CA 95814
Tel: 916-210-0400
Fax: 916-210-0401

Attorneys for Defendant NMCI Medical Clinic, Inc.

The documents were served by the following means:

*[X]    (BY NOTICE OF ELECTRONIC FILING)* The above-listed counsel have consented to electronic service and have been automatically served by the Notice of Electronic Filing, which is automatically generated by CM/ECF at the time said document was filed, and which constitutes service pursuant to FRCP 5(b)(2)(D).

-1-
_____
**PROOF OF SERVICE**

**[X]** **(FEDERAL)** I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct, and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on February 16, 2023, at San Diego, California.

_____
Monique A Cushingberry

**PROOF OF SERVICE**