# EXHIBIT A

## CLASS ACTION SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made between BARBARA KULIK, JAMES ESKRIDGE, and MARY DUNNING GAROFALO (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated (the "Putative Class"), on the one hand, and NORALAHI MEDICAL CLINICS INCORPORATED, erroneously sued as NMCI MEDICAL CLINIC, INC. and each of its past, present and future respective subsidiaries, dba's, affiliates, parents, predecessors, successors, investors, and their current and former employees, managing agents, servants, consultants, staffing agencies, agents, directors, officers, members, independent contractors, representatives, insurers, reinsurers, and attorneys (collectively "Defendant"), on the other hand. Plaintiffs and Defendant will at times be referred to collectively as the "Parties" and may individually be referred to as a "Party."

## RECITALS

WHEREAS, Plaintiffs contend they were employed by Defendant during the alleged "Class Period," defined as between May 10, 2017 through May 10, 2022, during the alleged "FLSA Period," defined as between May 10, 2018 through May 10, 2022, and during the alleged "PAGA Period" defined as between May 10, 2020 through May 10, 2022;

WHEREAS, on May 10, 2021, Plaintiffs filed a Class Action Complaint in the United States District Court for the Northern District of California, Case No. 5:21-cv-03495-SVK, entitled *Barbara Kulik, et al. v. NMCI Medical Clinic, Inc.* (the "Action"), asserting the following causes of action on a class or representative basis against Defendant: (1) Failure to Pay Overtime – FLSA, (2) Failure to Pay Minimum Wages, (3) Failure to Pay Overtime - Labor Code, (4) Failure to Provide Meal Periods and Rest Breaks, (5) Failure to Provide Accurate Wage Statements, (6) Failure to Reimburse Business Expenses, (7) Failure to Pay Wages at Separation, and (8) Unfair Competition;

WHEREAS by letter dated May 10, 2021, Plaintiffs gave notice to the Labor and Workforce Development Agency as a prerequisite to the filing of the Action ("PAGA Notice");

WHEREAS, on July 13, 2021, Plaintiffs filed a First Amended Complaint in the Action, asserting the following additional cause of action on a collective basis against Defendant: (9) Violation of Private Attorneys General Act;

WHEREAS, Defendant denies the validity of Plaintiffs' claims in the Action and PAGA Notice; however, for the purposes of settlement only, the Parties agree that certification of the class is appropriate and the requisites for establishing class certification are met;

WHEREAS, a settlement has been reached as to the Action and PAGA Notice in the total gross amount of Eight Hundred Seventy-Five Thousand Dollars and Zero Cents ($875,000.00);

WHEREAS, the Parties want to resolve and settle the dispute that has arisen between them, as well as any other claims, asserted or not asserted, that either party may have against the other arising out of facts or events, known or unknown, occurring up to and including the Effective Date of this Agreement;

NOW, THEREFORE, in consideration of the promises in this Agreement, the Parties agree as follows:

## AGREEMENT

1.     <u>No Admission of Liability</u>. It is understood and agreed by Plaintiffs that this Agreement represents a compromise and settlement for various matters and that the promises and payments and consideration of this Agreement shall not be construed to be an admission of any liability by any Released Parties. Plaintiffs further agree that this Agreement cannot be used as evidence, nor can it be referred to or relied upon, in any arbitration, administrative, court, or legal proceeding (other than to seek preliminary and final court approval of this Agreement, enforce the terms of this Agreement, or as required by a valid court order). The Released Parties disclaim and deny any liability, obligation, or responsibility to Plaintiffs whatsoever.

2.     <u>Gross Fund Value</u>. In consideration for the releases as described in Paragraph 3(a)-(e) of this Agreement, and subject to court approval of this Agreement, Defendant agrees to pay the gross amount of Eight Hundred Seventy-Five Thousand Dollars and Zero Cents ($875,000.00), exclusive of the Employer's Share of Payroll Taxes (the "Gross Fund Value or "GFV") to Participating Class Members and PAGA Group Members (as defined below) subject to the following terms and conditions:

a.     The Parties agree that of the GFV, Five Thousand Dollars and Zero Cents ($5,000.00) will be designated to each of the named Plaintiffs ("Class Representatives"), without deductions, as an enhancement award in addition to any amount they may be entitled to receive pursuant to the distribution formula as identified in this Paragraph section (e) below, for their time, effort, expense, and risks associated with being a named representative of the Class Members and a general release of their rights. This payment will be reported as 1099 income. Defendant will not oppose any application for such an enhancement award so long as it is consistent with the terms described herein. This amount shall come from, and shall not be in addition to, the GFV. Plaintiffs acknowledge their responsibility for any and all taxes for these sums.  Should the Court approve less than the amount provided for in this paragraph, said reduced approval amount shall not be cause to invalidate the Agreement and any balance will revert to the net GFV for distribution in accordance with this Agreement.   This enhancement award will be paid in addition to any settlement payment to which each Class Representative may otherwise be entitled as a Participating Class Member and/or PAGA Group Member;

b.     The Parties agree that no more than Twenty Thousand Dollars and Zero Cents ($20,000) of the GFV will be for the payment of settlement administration fees of a third-party administrator ("Administrator"), to be mutually agreed upon by the Parties by obtaining at least 3 bids from qualified administrators. The costs of the Administrator shall be paid from, and shall not be in addition to, the GFV.  Should the Court approve less than the amount provided for in this paragraph, said reduced approval amount shall not be cause to invalidate the Agreement and any balance will revert to the net GFV for distribution in accordance with this Agreement;

c.     The Parties agree that Twenty Thousand Dollars and Zero Cents ($20,000) of the GFV will be allocated to resolve the FLSA Collective Members' claims under the Fair Labor Standards Act ("FLSA").  These amounts shall come from, and shall not be in addition to, the GFV.  Should the Court allocate less or more than the amount provided for in this paragraph, said allocations shall not be cause to invalidate the Agreement and any balance will revert to the net GFV for distribution in accordance with this Agreement;

d.    The Parties agree that Twenty Thousand Dollars and Zero Cents ($20,000) of the GFV will be allocated to resolve the Class Members' claims under the Private Attorneys General Act ("PAGA") and will be distributed in accordance with the percentages identified within the Act. Specifically, twenty-five percent (25%) of the PAGA penalty allocation or $5,000.00 will be distributed to the Net GFV for distribution to PAGA Group Members (defined in 10(a) below) on a pro rata basis, and seventy-five percent (75%) of the PAGA penalty allocation (i.e. $15,000.00) will be distributed to the California Labor and Workforce Development Agency ("LWDA"). These amounts shall come from, and shall not be in addition to, the GFV.  Should the Court allocate less or more than the amount provided for in this paragraph, said allocations shall not be cause to invalidate the Agreement and any balance will revert to the net GFV for distribution in accordance with this Agreement;

e.    The Parties agree that up to one third of the GFV or Two Hundred Sixty Two Thousand Five Hundred Dollars and Zero Cents ($262,500) will be allocated to the payment of attorneys' fees ("Attorneys' Fees") and no more than Twenty Thousand Dollars and Zero Cents ($20,000) will be allocated as costs ("Costs") incurred by Plaintiffs in relation to the Action and PAGA Notice. These amounts shall come from, and shall not be in addition to, the GFV.  The amount of Attorneys' Fees and Costs shall include all past and future attorneys' fees and costs to Class Counsel—including, without limitations, all time and costs expended by Class Counsel in obtaining the Settlement memorialized by this Agreement and securing final approval of this Agreement (including any appeals).  Should the court approve less than the amount provided for in this paragraph, said reduced approval amount shall not be cause to invalidate the Agreement any balance will revert to the net GFV for distribution in accordance with this Agreement;

f.    There shall be a Net GFV that is distributed to the Participating Class Members, FLSA Collective Members, and PAGA Group Members in accordance with the allocations set forth herein.

i.    The Net GFV shall consist of the GFV less the amounts identified in Paragraph 2.a. through 2.e., above (attorneys' fees and costs, costs of administration, FLSA allocation, PAGA allocation, representative enhancement awards).

ii.    Class Payment.  All Participating Class Members will receive a portion of the Net GFV on a pro rata basis based on the number of workweeks they worked during the Class Period with an adjustment to be made based on each Participating Class Member's position and rate of pay ("Class Payment").  First, the Administrator will calculate the total number of workweeks worked by each Class Member and multiply that number by their base hourly rate of pay for the last pay period that they worked for Defendant during the Class Period to determine their "Individual Qualifying Wages." Second, the Administrator will add together the Individual Qualifying Wages for all of the Participating Class Members to determine the "Aggregate Qualifying Wages." Third, the Administrator will divide each Participating Class Member's Individual Qualifying Wages by the Aggregate Qualifying Wages to determine that Participating Class Member's "Qualifying Wages Ratio." Finally, the Administrator will multiply each Participating Class Member's Qualifying Wages Ratio by the Net GFV to determine their "Class Payment."

       iii.      PAGA Payment. The Administrator will also calculate the total number of PAGA Workweeks worked by each PAGA Group Member during the PAGA Period and the aggregate total number of PAGA Workweeks worked by all PAGA Group Members during the PAGA Period. The Administrator will then use the following formula to calculate each PAGA Group Member's "PAGA Payment": After deducting $5,000, or any other amount approved by the Court that is 25% of the PAGA Penalties, the Net PAGA allocation will be divided by the aggregate total number of PAGA Workweeks, resulting in the "Workweek Value." Each PAGA Group Member's PAGA Payment will be calculated by multiplying their number of PAGA Workweeks worked by the Workweek Value.

       iv.      FLSA Penalty Payment. The Administrator will also calculate the total number of FLSA Workweeks worked by each Participating FLSA Collective Member during the FLSA Period and the aggregate total number of FLSA Workweeks worked by all Participating FLSA Collective Members during the FLSA Period. The Administrator will then use the following formula to calculate each Participating FLSA Collective Member's "FLSA Payment": the $20,000 FLSA allocation will be divided by the aggregate total number of FLSA Workweeks, resulting in the "Workweek Value." Each Participating FLSA Collective Member's FLSA Payment will be calculated by multiplying their number of FLSA Workweeks worked by the Workweek Value.

       v.      For purposes of payment, workweeks worked shall be defined as any regular workweek in which the Participating Class Member, PAGA Group Member, or Participating FLSA Collective Member actually worked at least one shift.

       vi.      Each Employee's "Individual Total Settlement Payment" shall be calculated by adding their Class Payment (if applicable), PAGA Payment, and FLSA Payment (if applicable).

       vii.      The Individual Settlement Payment will be reduced by the Employee's Share of Payroll Taxes with respect to the wage portion of the Individual Settlement Payment.

       g.      This Agreement becomes Effective (the "Effective Date") on the latest of the following dates: (i) if no Class Member files an objection to the Settlement, then the date the Court enters the Final Approval Order and Final Judgment; (ii) if a Class Member files an objection to the Settlement that is not later withdrawn, then one business day after the last date for seeking appellate review of the Court's Final Approval Order has passed, assuming no appeal or request for review is filed; and (iii) if a timely appeal is filed, the final resolution of that appeal (including any requests for rehearing and/or petitions for writ of certiorari) resulting in the final judicial approval of the Settlement. Notwithstanding the foregoing, any proceeding, order, or appeal pertaining solely to the award of Class Counsel's Attorneys' Fees and Costs, or the Class Representative Service Award shall not by itself in any way delay or preclude the Judgment from becoming a Final Judgment or the Settlement from becoming "Effective."

       h.      Within twenty-one (21) calendar days from the Effective Date, Defendant shall deposit the GFV of Eight Hundred Seventy-Five Thousand Dollars and Zero Cents ($875,000.00) in a

QSF account established by the Administrator as well as Defendant's share of taxes owed on the wages portion of the settlement which shall be determined by the Administrator. The Administrator is to provide Defendant advanced notice within seven (7) calendar days after the Effective Date regarding the total monies Defendant must deposit.

      3.    <u>Release</u>. In exchange for the mutual promises and consideration set forth in this Agreement, the sufficiency of which is hereby acknowledged by the Parties, a release of liability is understood and agreed to as follows:

      a.  "Released Parties" as referenced herein and as released in the Agreement shall collectively mean Defendant and all of its past, present, and future respective subsidiaries, dba's, affiliates, PEOs, staffing agencies, parents, predecessors, successors, divisions, joint ventures, investors, and assigns and their respective current and former employees, managing agents, partners, owners, servants, consultants, agents, directors, officers, members, investors principals, independent contractors, representatives, insurers, co-insurers, reinsurers, attorneys and personal or legal representatives and successors and assigns of any of the foregoing.

      b.  Upon the Effective Date and payment by Defendant of the GFV and Employers' Taxes necessary to effectuate the Settlement, Plaintiffs Barbara Kulik, James Eskridge, and Mary Dunning Garofalo (the "Representative Plaintiffs") and all Participating Class Members on behalf of themselves and their respective heirs, successors, assigns, attorneys and agents, hereby waive, release, and forever discharge, Released Parties from any and all claims, demands, debts, duties, obligations, promises, liabilities, damages, accounts, payments, liens acts, costs, expenses, sums of money, suits, dues, actions or causes of action, both in law and in equity, whether known or unknown, matured or unmatured, suspected or unsuspected, against any of the Released Parties which were alleged in the Action or which could have been alleged based on the facts alleged in the Action and which occurred during the Class Period (including, but not limited to, claims for failure to pay overtime wages; failure to pay minimum wages; failure to provide meal periods or compensation in lieu thereof; failure to provide rest periods or compensation in lieu thereof; waiting time penalties; wage statement violations; unfair competition in connection with the allegations brought in the Action; and any violations of Labor Code sections 201, 202, 203, 226, 226(c), 226.7, 227.3, 510, 512, 558.1, 1194, 1194.2, 1197, 1198.5, and 2802).

      c.  Upon the Effective Date and payment by Defendant of the GFV and Employers' Taxes necessary to effectuate the Settlement, Plaintiffs Barbara Kulik, James Eskridge, and Mary Dunning Garofalo (the "Representative Plaintiffs") and all FLSA Collective Members on behalf of themselves and their respective heirs, successors, assigns, attorneys and agents, hereby waive, release, and forever discharge, Released Parties from any and all claims, demands, debts, duties, obligations, promises, liabilities, damages, accounts, payments, liens acts, costs, expenses, sums of money, suits, dues, actions or causes of action, both in law and in equity, whether known or unknown, matured or unmatured, suspected or unsuspected, against any of the Released Parties, for any and all types of relief under the Fair Labor Standards Act, U.S.C. § 201, et seq., including without limitation claims for failure to pay minimum wage, overtime, and for all hours worked, and any and all claims for recovery of compensation, overtime pay, minimum wage, liquidated damages, interest, and/or penalties tied to such claims, that arose or accrued at any time during the FLSA Period.

d.   For Class Members employed during the PAGA Period, the release includes, for the duration of the PAGA Period, all claims asserted in the letter submitted to the LWDA dated May 10, 2021 and all claims for civil penalties pursuant to Labor Code sections 210, 226.3, 558, 1197.1, and 2699 in connection with violations of Labor Code sections 201, 202, 203, 204, 226, 226.7, 227.3, 246, 432, 510, 512, 558.1, 1174, 1194, 1194.2, 1197, 1197.1, 1198.5, 2802, and 2810.5.  The release also includes a release from the State of California (to the extent Plaintiffs are permitted to provide such a release for the State of California for the PAGA period) of all PAGA claims alleged in the Action and the LWDA letter which occurred during the PAGA Period.  The release expressly excludes all other claims, including claims for vested benefits, wrongful termination, unemployment insurance, disability, social security, workers' compensation, and class claims outside of the Class Period, and PAGA claims outside of the PAGA period.

e.   Upon the Effective Date and payment by Defendant of the GFV and Employers' Taxes necessary to effectuate this Agreement, and in exchange for the consideration set forth in this Agreement, each Representative Plaintiff does hereby waive, release, acquit and forever discharge the Released Parties, from any and all claims, actions, charges, complaints, grievances and causes of action, of whatever nature, whether known or unknown, which they possess or may possess as of the Effective Date against any of the Released Parties including, but not limited to, any and all tort claims, contract claims, wage claims, wrongful termination claims, disability claims, benefit claims, public policy claims, retaliation claims, statutory claims, personal injury claims, emotional distress claims, invasion of privacy claims, defamation claims, fraud claims, *quantum meruit* claims, and any and all claims arising under any federal, state or other governmental statute, law, regulation or ordinance, including, but not limited to, claims for violation the California Labor Code, the Fair Labor Standards Act, the Wage Orders of California's Industrial Welfare Commission, the Americans with Disabilities Act, the Employee Retirement Income Security Act, Title VII of the Civil Rights Act of 1964, the California Fair Employment and Housing Act, the California Family Rights Act, the Family Medical Leave Act, California's Whistleblower Protection Act, California Business & Professions Code Section 17200, *et seq*., and any and all claims arising under any federal, state or other governmental statute, law, regulation or ordinance. The release by each Representative Plaintiff is not intended to release any claims that cannot be waived or released as a matter of law.

f.   Upon the Effective Final Settlement Date and payment by Defendant of the GFV and Employers' Taxes necessary to effectuate the Settlement in exchange for the consideration set forth in this Agreement, each Representative Plaintiff hereby agrees that all of their respective rights under section 1542 of the Civil Code of the State of California are hereby waived as to any claims they may have against Defendant. Section 1542 has been explained to Plaintiffs by their counsel and provides as follows:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY**

Each Representative Plaintiff's general release and waiver of California Civil Code Section 1542 shall cover the time period from the start of their respective employment with Defendant up to the Effective Date of this Agreement.

FP 43695540.1

g. As a condition of participating in this class action settlement, Participating Class Members, Participating FLSA Collective Members, and individuals who are within the scope of the class or FLSA collective definitions but fail to timely submit a request to be excluded from the proposed settlement, hereby release and forever discharge the Released Parties from any and all Released Claims as defined above.

4. <u>Conditional Certification of Settlement Class.</u> For purposes of this Agreement and Settlement of the Action only, the Parties stipulate to the conditional certification of the Settlement Class, to the appointment of Class Counsel, and to the approval of Plaintiffs as suitable Class Representatives. If the Court fails to approve this Settlement Agreement, or if this Settlement Agreement is terminated, cancelled, or fails to become effective for any reason, the Parties' stipulations in this paragraph will be void, and the litigation of the Action shall revert to its status with respect to class certification and otherwise as it existed prior to the date of this Agreement.

5. <u>Motion for Preliminary Approval of Class Action Settlement.</u> Plaintiffs and Plaintiffs' counsel shall make their best efforts to file a Motion for Preliminary Approval of this Agreement concurrent with seeking the Court's conditional certification of the class for settlement purposes only as soon as reasonably possible after this Agreement is executed by the Parties. Defendant agrees to cooperate with Plaintiffs in these efforts so that the Motion for Preliminary Approval and concurrent certification of the class for settlement purposes is filed in a timely manner. The Motion for Preliminary Approval of Class Action Settlement shall seek entry of the Proposed Preliminary Approval Order to be submitted by Plaintiffs' Counsel unless the Court's orders during the approval process require revisions to be made. Class Counsel will provide an opportunity for Defendants' Counsel to review the Motion for Preliminary Approval of the Class Action Settlement and Proposed Order prior to filing. The Parties and their counsel will cooperate with each other and use their best efforts to obtain the Court's preliminary approval of the Settlement.

6. <u>LWDA Notice</u>. Pursuant to California Labor Code § 2699(l)(2), Class Counsel shall file this Agreement online with the LWDA using the authorized California Department of Industrial Relation's website on the same day that Class Counsel files the Motion for Preliminary Approval of Class Action Settlement.

7. <u>Administrator Selection</u>. The Parties agree that Plaintiffs' and Defendant's counsel will select the Administrator to process and distribute the GFV in accordance with the Agreement. The Parties will agree upon an Administrator as soon as reasonably possible after this Agreement is executed by the Parties and prior to Plaintiffs' counsel filing a Motion for Preliminary Approval of this Agreement.

8. <u>Final Approval Motion</u>. Plaintiffs shall file with the Court a Motion for Final Approval of Class Action Settlement and any other documents required to effectuate this Agreement including, but not limited to, any additional proposed orders requested by the Court. Class Counsel will be responsible for drafting all documents necessary to obtain final approval. Class Counsel will also be responsible for drafting the attorneys' fees, class representative service awards and costs application to be heard at the final approval hearing. Class Counsel will provide an opportunity for Defendant's Counsel to review the Motion for Final Approval and supporting papers prior to filing with the Court. The Parties and their

counsel will cooperate with each other in good faith and use their best efforts to effect the Court's final approval of the Settlement and entry of Judgment.

9. <u>Final Approval Hearing</u>. After the Response Deadline as defined below in Paragraph 10 (i), and with the Court's permission, a Final Approval Hearing will be conducted to determine the final approval of this Agreement along with the amounts payable for: (a) Attorneys' Fees and Costs; (b) Claims Administration Costs; (c) the Class Representative Enhancement Awards; and (d) the Payment of PAGA Penalties to LWDA. The Final Approval Hearing will not be held earlier than forty-five (45) calendar days after the Response Deadline.

10. Administrator Duties and Distribution Method. In addition, subject to court approval, timelines, the duties of the Administrator and methods related to the administration of this Agreement shall be as follows:

a. For purposes of this Agreement, "Class Member" means any person who is a member of the Class, or if such person is incompetent or deceased, the person's legal guardian, executor, heir or successor-in-interest. "Participating Class Members" are defined as: "all of Defendant's current and former hourly employees in California holding the positions of Medical Assistants, Physician Assistants, and Nurse Practitioners during the Class Period (between May 10, 2017 through May 10, 2022) and who did not submit a valid and timely Request for Exclusion (or opt-out) from the Class. "Participating FLSA Collective Members" are defined as: "all of Defendant's current and former hourly employees in California holding the positions of Medical Assistants, Physician Assistants, and Nurse Practitioners during the FLSA Period (between May 10, 2018 through May 10, 2022) and who submit a valid opt-in form. "PAGA Group Members" means "all of Defendant's current and former hourly employees in California holding the positions of Medical Assistants, Physician Assistants and Nurse Practitioners during the PAGA Period (May 10, 2020 through May 10, 2022). A PAGA Group Member may not request exclusion from the PAGA portion of the Settlement and will have released all PAGA Claims as set forth in Paragraph 3b above as of the Effective Date of this Agreement.

b. All Participating Class Members will receive a portion of the Net GFV on a pro rata basis based on a reasonable estimate of the total number of workweeks worked by all members of the Settlement Class during the applicable period as set forth in Paragraph 2(e) above. The Administrator shall mail and distribute to all Class Members a notice of this settlement in English informing them of the basic information regarding its terms, how to submit objections, how to exclude themselves from this proposed settlement, their estimated shares of the Net GVF, how to dispute the allocated number of workweeks, and the date for a final fairness hearing (the "Class Notice," in a form substantially similar to that attached hereto as **Exhibit A**) and the FLSA Opt-in Form (in a form substantially similar to that attached hereto as **Exhibit B**). Any monies allocated to Class Members who do not participate in this settlement because they opted out will be redistributed to the Net GVF for distribution in accordance with this Agreement. The redistribution will take place by eliminating the non-participating class members' Individual Qualifying Wages from the Aggregate Qualifying Wages used to calculate the Total Value per Workweek. The Total Value per Workweek will then be recalculated and applied to Participating Class Members' workweeks to determine their respective share of the Net GFV.

c. Eighty Percent (80%) of the payment of the Net GFV to Participating Class Members will consist of 1099 income representing payment for statutory penalties, interest and expense

reimbursement and the remaining Twenty Percent (20%) will be considered wages subject to deductions and withholdings for the Employee's Taxes and Required Withholding and a Form W-2. The PAGA Penalty Payments and FLSA Penalty Payments will be allocated 100% to penalties and interest that will not be subject to deductions and withholdings. The Administrator will issue each Participating Class Member an IRS Form W-2 with respect to the portion of the Individual Settlement Payment allocated to wages, if applicable. The Administrator will issue each Participating Class Member and PAGA Group Member an IRS Form-1099 with respect to the portion of the Individual Total Settlement Payment allocated to penalties and interest. The Parties and Parties' Counsel make no representations and do not offer any tax advice to each other, to Class Members, or to any other person concerning the taxability, tax treatment or legal effect of any tax laws on the payments made pursuant to this Agreement. Plaintiff and Class Counsel understand and agree that they, along with Participating Class Members and/or PAGA Group Members, shall be individually responsible for the payment of all applicable taxes on the payments they respectively receive under the terms of this Agreement. The Class Notice shall inform Class Members that the Parties and Parties' Counsel cannot make any representations or offer any advice concerning the tax consequences of any payment made under this Agreement. The Class Notice shall further state that Class Members should consult with their own tax advisors concerning the tax consequences of any Settlement payment they receive.

d.    The Individual Settlement Payments made to Class Members under this Agreement, as well as any other payments made pursuant to this Agreement, will not be utilized to calculate any additional benefits under any benefit plans to which any Class Members may be eligible, including, but not limited to profit-sharing plans, bonus plans, 401(k) plans, stock purchase plans, vacation plans, sick leave plans, PTO plans, and any other benefit plan. Rather, it is the Parties' intention that this Agreement will not affect any rights, contributions, or amounts to which any Class Members may be entitled under any benefit plans.

e.    Within ten (10) calendar days after the date that the Court grants preliminary approval of this Agreement, Defendant shall provide to the Administrator a list of all Class Members ("Class List") and all information necessary to locate Class Members, process payments, and process claims for payments, including, but not limited to, Class Member workweeks or dates of employment, last known addresses, last known email addresses,  social security numbers, and any other information required to effectuate the Agreement.

f.    The Class List, and any other data provided by Defendant to the Administrator, shall be treated as confidential and not subject to disclosure by the Administrator except (a) relevant information may be provided to Class Counsel to the extent necessary to address a disputed claim or to respond to a specific inquiry from a class member, or to any third party; (b) to allow Defendant and Plaintiffs' counsel to review and confirm the calculation of Class Members' estimated share of the settlement is accurate and based on the correct information; and (c) as is otherwise necessary for the Administrator to perform its obligations described in this Agreement. Further, the Administrator and Plaintiffs' counsel shall use commercially reasonable efforts to secure the data provided by Defendant at all times so as to avoid inadvertent or unauthorized disclosure or use of such data other than as permitted by this Agreement, and shall destroy the data (and all copies of it) in a complete and secure manner when such data is no longer required for purposes of this Agreement. The Administrator shall ensure that the Notice and any other communications to class members shall not include the Class Members' Social Security Number, except for the last four digits.

g.      Request for Exclusion Procedure or Any Class Member wishing to opt-out from the non-PAGA portion of the Settlement must mail a written Request for Exclusion to the Settlement Administrator by the Response Deadline set forth in Paragraph 10(i) below. The Request for Exclusion must: (i) set forth the full name, address, telephone number, and last four digits of the Social Security number of the Class Member requesting exclusion; (ii) be signed by the Class Member; (iii) set forth the case name and number; (iv) be returned to the Administrator; (v) include the a clear statement that the Class Member wishes to opt out of, or be excluded from the non-PAGA Claims portion of the Settlement; and (vi) be postmarked on or before the Response Deadline. The postmark date will be the exclusive means to determine whether a Request for Exclusion has been timely submitted. However, Class Members shall have no right to opt-out of the PAGA component of the Settlement.

h.      Objection Procedure.  To object to the Settlement Agreement, a Class Member must either mail a valid written Notice of Objection to the Administrator by the Response Deadline set forth in Paragraph 10(i) below or appear at the Final Approval Hearing to discuss the Class Member's objection with the Court and the Parties at the Class Member's own expense. For a written Notice of Objection to be valid and timely, it must include: (i) the objector's full name, signature, address, telephone number, the approximate dates of employment at Defendant in California, and last four digits of Class Member's Social Security number; (ii) the case name and number; (iii) a written statement of all grounds for the objection accompanied by any legal support for such objection; (iv) copies of any papers, briefs, or other documents upon which the objection is based, if any; (v) a statement describing whether the objector intends to appear at the Final Approval Hearing, either in person or through counsel at the Class Member's expense; and (vi) be postmarked on or before the Response Deadline. The date of the postmark of the Notice of Objection will be deemed the exclusive means for determining that the Notice of Objection is timely. The Administrator shall promptly provide copies of any Notices of Objection to Class Counsel and Defendants' Counsel, including the postmark dates of each such objection. Only Class Members who do not submit valid Requests for Exclusion may object, either in writing or in person at the Final Approval Hearing. To the extent a timely written Notice of Objection is withdrawn before the Final Approval Hearing, such a Notice of Objection shall be treated as though no objection has been made. At no time will any of the Parties or their counsel seek to solicit or otherwise encourage Class Members to submit written objections to the Settlement Agreement or to appeal from the Judgment. Class Counsel and Defendant's Counsel shall file any responses to any written Notices of Objection at least ten (10) calendar days before the Fairness Approval Hearing.

i.      FLSA Opt-in Procedure.  To opt in to the FLSA Collective, a FLSA Collective Member must either mail a valid written FLSA Opt-in Form (similar to the one attached hereto as **Exhibit B**) to the Administrator by the Response Deadline set forth in Paragraph 10(i) below. For a FLSA Opt-in Form to be valid and timely, it must be signed by the FLSA Collective Member. The date of the postmark of the FLSA Opt-in Form will be deemed the exclusive means for determining that the FLSA Opt-in Form is timely. The Administrator shall promptly provide copies of any FLSA Opt-in Form to Class Counsel and Defendants' Counsel, including the postmark dates of each such objection.

j.      Response Deadline for purposes of a Class Member's Request for Exclusion, FLSA Opt-in Form, or Notices of Objection to the Administrator shall be forty-five (45) calendar days from the initial mailing of the Class Notice by the Administrator, unless the forty-fifth (45th) calendar day falls on a Sunday or Federal holiday, in which case the Response Deadline will be extended to the next day on

which the U.S. Postal Service is open. The Response Deadline for Requests for Exclusion, FLSA Opt-in Form, and Notices of Objection will be extended by fourteen (14) calendar days for any Class Member who is re-mailed a Class Notice by the Administrator, unless the fourteenth (14th) calendar day falls on a Sunday or Federal holiday, in which case the Response Deadline will be extended to the next day on which the U.S. Postal Service is open. The Response Deadline may also be extended by express written agreement between Class Counsel and Defendants. Under no circumstances, however, will the Administrator have the authority to unilaterally extend the deadline for Class Members to submit a Request for Exclusion, FLSA Opt-in Form, or Notice of Objection.

k.      Within ten (10) calendar days after receiving the Class List, the Administrator shall determine the number of Workweeks for each Class Member, shall perform an NCOA check for Class Members' most current addresses based on the information provided by Defendant and will mail the Court approved Class Notice (similar to the one attached hereto as **Exhibit A**), a FLSA Opt-in Form (if the Class Member is a FLSA Collective Member) (similar to the one attached hereto as **Exhibit B**), and disbursement forms to the Class Members via first-class Mail. The Class Members will have forty-five (45) days from the date of mailing the notices and disbursement forms in which to postmark returned information either contesting the number of workweeks allocated to them, requesting to opt out of the class action settlement in a fashion set forth in Paragraph 10 (g) and (i) above, or objecting to the proposed settlement in a fashion set forth in Paragraph 6 (h) & (i) above. For any notices and claim forms returned as undeliverable or notifying the Administrator that the class member is no longer at the address, the Administrator shall perform a skip-trace on that individual and re-mail the notice and claim form within three (3) business days of receiving information that the mailing was undeliverable or the class member was no longer at the address to the new address found in under the skip-trace. Individuals who have notices or claim forms re-mailed to them shall have an additional fourteen (14) calendar days to contest the number of workweeks allocated to them, request to opt out of the class action settlement, or object to the proposed settlement.

l.      The Administrator will investigate and will have the final decision on disputes as to the class members' information (*e.g.* workweeks). Any dispute as to the number of workweeks, request to opt-out, or objection submitted beyond the times authorized under Paragraphs 6 (g), (h) and (i) will be approved only with the mutual approval of the Parties. The Administrator shall provide weekly reports to the Parties regarding the administration status, *i.e.* number of opt-outs, objections, and disputes submitted and the current status of any opt-outs, objections, or disputes received. The Administrator shall also provide the identities of any Class Members who submit timely and valid Requests for Exclusion to Class Counsel and Defendant's Counsel no later than thirty (30) calendar days before of the Final Approval Hearing.

m.      Within seven (7) calendar days after the last day for class members to object to the proposed settlement, dispute their information, or request to be excluded from the settlement, the Administrator shall provide a declaration to be submitted to Court detailing the administration process thus far, the number of objections received, the number of opt-out requests received, the number of disputes submitted, and the final status of all such items.

n.      Within two (2) business days of final approval by the Court of the Settlement provided for in this Agreement, Class Counsel shall provide the Settlement Administrator with a copy of the Final Approval Order and Final Judgment.

o.      Not later than seven (7) calendar days after the Effective Date, the Administrator shall calculate the Employers' Share of Payroll Taxes and notify Class Counsel and Defendant's Counsel of the total amount of the Employers' Share of Payroll Taxes that Defendant shall pay to the Administrator in addition to the GFV.

p.      Not later than twenty-one (21) calendar days after the Effective Date, Defendant shall transfer the GFV to the Administrator via check or a wire transfer of that amount to an account established by the Administrator. Additionally, not later than twenty-one (21) calendar days after the Effective Date (provided the Administrator has provided calculations) Defendant shall transfer the total amount of the Employer's Share of the Payroll Taxes via check or a wire transfer of that amount to an account established by the Administrator. The administrator will maintain the GFV and the total amount of the Employer's Share of the Payroll Taxes in a Qualified Settlement Fund until disbursement to the Participating Class Members and PAGA Group Members. The Administrator will retain authority over the deposited funds, which are to be used in accordance with this Agreement and any orders of the Court. Defendant shall have no further obligations over the distribution of the GFV.

q.      Within seven (7) calendar days after the Administrator receives payment of the GFV and Employer's Share of the Payroll Taxes, the Administrator shall provide the Parties the final calculations of settlement payments to Participating Class Members and PAGA Group Members.   The Administrator may redact any identifying information and instead assign an employee value, except leaving the identifying information for the named Plaintiffs, such that the Parties can review and approve the final distribution amounts to Participating Class Members and PAGA Group Members. Within seven (7) calendar days after the final calculations are distributed by the Administrator, the Administrator, only upon approval by the Parties of the final distribution amounts, will mail to Participating Class Members and PAGA Group Members their pro-rata share of the Net GFV.  Participating Class Members and PAGA Group Members shall have one hundred eighty (180) days to cash their respective settlement checks under this Agreement. Any checks not negotiated within the one hundred and twenty (180) days will be voided and will not be reissued.   In addition, within seven (7) calendar days after the final calculations are distributed by the Administrator, the Administrator shall pay the applicable taxes and required withholdings, if any, associated with each Participating Class Member's Individual Settlement Payment.

r.      Within seven (7) calendar days after the Administrator distributes final calculations and obtains approval by the Parties thereto, the Administrator shall distribute to Class Counsel attorneys' fees and costs in the amounts approved by the Court.  The Administrator shall issue an IRS Form 1099-MISC to Class Counsel for payments made pursuant to this Paragraph.

s.      Within seven (7) calendar days after the Administrator distributes final calculations and obtains approval by the Parties thereto, the Administrator shall distribute to the Class Representatives the Court approved enhancement awards.   The Settlement Administrator shall issue an IRS Form 1099-MISC to the Class Representatives for the payment made pursuant to this Paragraph

t.      Within seven (7) calendar days after the Administrator distributes final calculations and obtains approval by the Parties thereto, the Administrator shall pay PAGA Penalties to the LWDA approved by the Court.

u.    Within one hundred eighty (180) calendar days after the Administrator mails Class Members their pro-rata share of the Net GFV, any unclaimed funds, including funds from uncashed settlement checks will escheat to the State of California Unclaimed Property Fund, in the name of the Class Member, in accordance with the California Unclaimed Property Law, California Code of Civil Procedure, section 1300 *et seq*. No amount of the GFV will revert to Defendant for any reason.

v.    Within ten (10) calendar days after the Administrator distributes the unclaimed funds in accordance with Paragraph 10(t), the Administrator shall provide the Parties with a declaration outlining the settlement administration process and completion of payments to those specified in Paragraph 6.k.

w.    The Parties agree the Class Members' contact information and social security numbers will be used only by the Administrator and counsel for the sole purpose of effectuating the Agreement.

11.    <u>Non-Approval of this Agreement</u>.  In the event that this Settlement is not preliminarily or finally approved by the Court, fails to become Effective, or is reversed or withdrawn by the Court: (a) this Settlement shall be void *ab initio* and of no force or effect, and shall not be admissible in any judicial, administrative, or arbitral proceeding for any purpose or with respect to any issue, substantive or procedural; (b) the conditional class certification shall be void *ab initio* and of no force or effect, and shall not be admissible in any judicial, administrative, or arbitral proceeding for any purpose or with respect to any issue, substantive or procedural; and (c) none of the Parties to this Settlement will be deemed to have waived any claims, objections, defenses, or arguments in the Action, including with respect to the issue of class certification.

12.    <u>Option to Rescind the Settlement</u>. Defendant may elect to rescind the Settlement if Class Members representing more than an aggregate total of ten percent (10%) of the verified workweeks opt out of the Settlement with timely Requests for Exclusion and do not rescind them by the Response Deadline. If Defendant wishes to exercise their conditional right to rescind, Defendant shall: (a) provide written notice to Class Counsel within seven (7) calendar days after the Response Deadline and (b) pay all Administration Costs incurred to the date of rescission, and the Parties shall proceed in all respects as if this Agreement had not been executed.

13.    <u>Escalation Provision.</u>  As of the time of mediation, Defendant estimated that the Class consists of approximately 6,500 workweeks.  In the event the number of workweeks worked increases by more than 10% or 650 workweeks through the end of the Class Period (May 10, 2022), then Defendant shall, at its option, either (a) increase the GFV proportionally by the workweeks in excess of 7,150 multiplied by the workweek value; or (b) cap the Release Period as of the date that 10% of workweeks is exceeded.  In the event Defendant chooses option (a) to increase the GFV, the workweek value shall be calculated by dividing the GFV by 6,500.  The Parties agree that the workweek value amounts to and the settlement amounts to $134.62 per workweek.

14.    <u>Class Counsel</u>. For purposes of settlement only, the Parties agree to the designation of Sommers Schwartz, P.C. as adequate class counsel.

15.    <u>Class Representative</u>. For purposes of settlement only, the Parties agree to the designation of Plaintiffs Barbara Kulik, James Eskridge, and Mary Dunning Garofalo as adequate class representatives.

16.    <u>Attorneys' Fees and Costs</u>. Except as otherwise set forth in this Agreement, the Parties agree that each shall bear their own respective attorneys' fees and costs incurred in this Action, with the exception of any dispute regarding the payment of the GFV. In the case of a dispute regarding the payment of the GFV, the prevailing party shall be entitled to recover their attorneys' fees and costs.

17.    <u>Mutual Cooperation</u>. The Parties and their counsel will cooperate with each other and use their best efforts to effect the implementation of the Settlement. Such cooperation shall include, but not be limited to, execution of such other documents and the taking of such other actions as may reasonably be necessary to fulfill the terms of this Settlement. The Parties shall use their best efforts, including all efforts contemplated by this Agreement and any other efforts that may become necessary by Court Order, or otherwise, to effectuate this Agreement and the terms set forth herein.

18.    <u>Acknowledgement that the Settlement is Fair, Adequate and Reasonable</u>. The Parties and their respective counsel believe that this Settlement is a fair, adequate, and reasonable settlement of the Action, and they have arrived at this Settlement through arm's length negotiations, taking into account all relevant factors, present and potential.

19.    <u>Enforcement</u>. This Agreement is made and is enforceable in accordance with the provisions of California Code of Civil Procedure §664.6, Federal Rule of Civil Procedure 41, and other related Federal Rules of Civil Procedure, and that Parties agree that the Court shall retain jurisdiction for that purpose to effectuate the terms of this Agreement and after entry of judgment in the Action. This Agreement shall be incorporated by reference into any Court order granting approval thereof such that the Court shall thereafter retain the jurisdiction to enforce its terms.

20.    <u>Counterparts</u>. This Agreement may be executed in one or more counterparts and each counterpart, when executed, shall have the efficacy of an original. Photographic or facsimile copies of any such signed counterparts may be used in lieu of the original for any said purpose.

21.    <u>Publicity</u>. Parties agree that they will not initiate any publicity of the Settlement (including press releases, statements to any media or publication entities, and online posts or publications) except that, after the judgment becomes final, on the Effective Date defined above, Class Counsel may post the settlement on their law firm's website, but all descriptions of the case and settlement must be accurate. Plaintiffs and Class Counsel, in responding to inquiries about the Litigation, shall not disparage Defendant, and shall provide only accurate factual information about the Settlement.  This clause does not prevent Class Counsel from citing to this Settlement in future cases.  Amendment or Modification.

22.    <u>Labor Code § 206.5 Inapplicable</u>. The Parties agree that California Labor Code § 206.5 does not invalidate any provisions of this Agreement, because, among other things, the Released Non-PAGA Class Claims and Released PAGA Claim were contested and the Settlement was bargained-for at arm's length and shall be approved by the Court.

23.    <u>Mutual Drafting of Agreement</u>. The Parties agree that the terms of this Agreement and the accompanying exhibits are the result of lengthy, arm's length negotiations, and that this Agreement shall

not be construed in favor of or against any of the Parties by reason of the extent to which any of the Parties or their respective counsel participated in the drafting of this Agreement.

24. <u>Binding on Successors and Assigns</u>. This Agreement is binding upon, and inures to the benefit of, the Parties' successors and assigns.

25. <u>Governing Law</u>. This Agreement shall be governed by and interpreted according to the laws of the State of California.

26. <u>Exhibits Incorporated by Reference.</u> The terms of this Agreement include the terms set forth in any attached Exhibit, subject to modification by the Court and/or agreement of Plaintiffs and Defendant, which are incorporated by this reference as though fully set forth herein. Any Exhibit to this Agreement is an integral part of the Settlement.

27. <u>Invalidity of Any Provision</u>. Before declaring any provision of this Agreement invalid, the Court shall first attempt to construe the provisions valid to the fullest extent possible consistent with applicable precedents so as to define all provisions of this Agreement valid and enforceable.

28. <u>Notices</u>. Whenever this Agreement requires or contemplates that one of the Parties shall or may give notice to the other, notice shall be provided by e-mail and/or next-day (excluding Saturdays, Sundays and Legal Holidays) express delivery service addressed to the address of the Party's counsel appearing in this Agreement.

29. <u>Attorney Liens</u>. Plaintiffs represent and warrant that all legal expenses, bills, costs or contingency fee agreements resulting from or arising out of their representation related to the Action or PAGA Notice are their responsibility to pay, and that any liens based on any legal expenses, bills, costs or contingency fee agreements incurred as a result of the Action will be satisfied by the incurring party. Plaintiffs will indemnify, defend and hold Released Parties harmless from any such claims.

30. <u>No Additional Recovery</u>. It is the intent of this Agreement that Plaintiffs, lienholders, and any other individual or entity with an interest in Plaintiffs' claims with respect to payment of the GFV shall not recover, directly or indirectly, any sums from the Released Parties other than the funds received pursuant to this Agreement. If, despite the provisions of this Agreement, any Released Party receives any claims, including a claim for contribution, any indemnity arising out of a claim with respect to payment of the Settlement brought against another person in an interest in the claims of Plaintiffs, such party shall indemnify, provide a full defense for and hold harmless the Released Parties for such amount. In the event a trier of fact determines (and all appeals are exhausted or the time for such appeals have expired) that any Released Party is or would be liable for indemnity under any theory of law or equity, this Agreement shall act as a general release, releasing not only the Released Party but every other individual, trustee, firm, trust, corporation, or entity of any kind, who is or would be entitled to a defense and indemnity from the Released Parties with respect to any liability that person, firm, or corporation may have to Plaintiffs.

31. <u>Binding Agreement</u>. The Parties intend that this Agreement shall be fully enforceable and binding on all Parties, and that it shall be admissible and subject to disclosure in any proceeding to enforce its terms, notwithstanding any mediation confidentiality provisions that otherwise might apply under federal or state law. This Agreement is also binding upon, and inures to the benefit of, the Parties' successors and assigns.

32.    <u>Entire Agreement</u>. This Agreement and any attached Exhibit sets forth the entire understanding between the Parties and supersedes any and all prior agreements, oral or written, pertaining to the Action. This Agreement may not be modified or amended except in writing, signed by all Parties. Each party acknowledges that there is no representation, inducement, promise or agreement which has been made, orally or otherwise, by the other party, concerning the terms or conditions of this Agreement, which is not expressly embodied in this Agreement. In entering into this Agreement, the Parties represent that the terms of this Agreement are fully understood and voluntarily accepted by the Parties.

33.    <u>Conditional Nature</u>. This Agreement and all associated exhibits or attachments are made for the sole purpose of settling the Action. This Agreement and the settlement it evidences are made in compromise of disputed claims. Because the Action was pled as a class/PAGA action, this Agreement must receive preliminary and final approval by the Court. Accordingly, the Parties enter into this Agreement and associated settlement on a conditional basis. If the Court does not enter an order granting final approval of the Agreement, this Agreement shall be deemed null and void; it shall be of no force or effect whatsoever; it shall not be referred to or utilized for any purpose whatsoever; and the negotiation, terms and entry of the Agreement shall remain subject to the provisions of California Evidence Code Sections 1119 and 1152, Federal Rule of Evidence 408, and any other analogous rules of evidence that may be applicable.

34.    <u>Counterparts</u>. This Agreement may be executed in one or more counterparts. All executed counterparts and each of them, including facsimile and scanned copies of the signature page, will be deemed to be one and the same instrument provided that counsel for the Parties to this Agreement exchange among themselves copies or originals of the signed counterparts.

35.    <u>Parties' Authority</u>. The signatories to this Agreement, including any person executing this Agreement on behalf of a corporate signatory, warrant and represent that they are fully authorized to enter into this Agreement and to bind the Parties hereto to the terms and conditions of this Agreement.

The Parties, with the benefit of representation and advice of counsel, have read this Agreement and fully understand each and every provision contained in it.

Dated: _____April 28_____, 2022    _____
                                     BARBARA KULIK

Dated: _____April 28_____, 2022    _____
                                     JAMES ESKRIDGE

Dated: _____, 2022    _____
                                     MARY DUNNING GAROFALO

32.    Entire Agreement. This Agreement and any attached Exhibit sets forth the entire understanding between the Parties and supersedes any and all prior agreements, oral or written, pertaining to the Action. This Agreement may not be modified or amended except in writing, signed by all Parties. Each party acknowledges that there is no representation, inducement, promise or agreement which has been made, orally or otherwise, by the other party, concerning the terms or conditions of this Agreement, which is not expressly embodied in this Agreement. In entering into this Agreement, the Parties represent that the terms of this Agreement are fully understood and voluntarily accepted by the Parties.

33.    Conditional Nature. This Agreement and all associated exhibits or attachments are made for the sole purpose of settling the Action. This Agreement and the settlement it evidences are made in compromise of disputed claims. Because the Action was pled as a class/PAGA action, this Agreement must receive preliminary and final approval by the Court. Accordingly, the Parties enter into this Agreement and associated settlement on a conditional basis. If the Court does not enter an order granting final approval of the Agreement, this Agreement shall be deemed null and void; it shall be of no force or effect whatsoever; it shall not be referred to or utilized for any purpose whatsoever; and the negotiation, terms and entry of the Agreement shall remain subject to the provisions of California Evidence Code Sections 1119 and 1152, Federal Rule of Evidence 408, and any other analogous rules of evidence that may be applicable.

34.    Counterparts. This Agreement may be executed in one or more counterparts. All executed counterparts and each of them, including facsimile and scanned copies of the signature page, will be deemed to be one and the same instrument provided that counsel for the Parties to this Agreement exchange among themselves copies or originals of the signed counterparts.

35.    Parties' Authority. The signatories to this Agreement, including any person executing this Agreement on behalf of a corporate signatory, warrant and represent that they are fully authorized to enter into this Agreement and to bind the Parties hereto to the terms and conditions of this Agreement.

The Parties, with the benefit of representation and advice of counsel, have read this Agreement and fully understand each and every provision contained in it.


Dated: _____, 2022          _____
                                          BARBARA KULIK



Dated: _____, 2022          _____
                                          JAMES ESKRIDGE



Dated: __4/28/2022__, 2022          *Mary Dunning Garofalo*
                                          MARY DUNNING GAROFALO

Dated: 05/11/22 _____, 2022

NORALAHI MEDICAL CLINICS INCORPORATED

By: _____

Print Name: ___ Hessam Noralahi ___

Title: _____ CEO _____

Approved as to form:

SOMMERS SCHWARTZ, P.C.

_____

Dated: ___ May 10 ___, 2022

Trenton R. Kashima
Kevin J. Stoops
Counsel for Plaintiffs

FISHER & PHILLIPS, LLP

_____

Dated: ___ May 11 ___, 2022

Christine A. Baran
Counsel for Defendant

FP 43695540.1

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BARBARA KULIK, JAMES ESKRIDGE, and MARY DUNNING GAROFALO, individually and on behalf of all others similarly situated, | CASE NO. 5:21-cv-03495-SVK |
| Plaintiffs, | **NOTICE OF CLASS ACTION AND PROPOSED SETTLEMENT** |
| vs. | |
| NMCI MEDICAL CLINIC, INC., a corporation, | |
| Defendant. | |

**TO:** All of Noralahi Medical Clinics Incorporated's current and former hourly employees in California holding the positions of Medical Assistants, Physician Assistants, and Nurse Practitioners between May 10, 2020 through May 10, 2022. (the "Class Members").

IF YOU ARE A MEMBER OF THIS CLASS OF PERSONS, YOU SHOULD READ THIS NOTICE CAREFULLY BECAUSE IT WILL AFFECT YOUR LEGAL RIGHTS AND OBLIGATIONS

A settlement (the "Settlement") has been proposed in the lawsuit referenced above, pending in United States District Court for the Northern District of California (the "Court"), titled *Barbara Kulik, et al. v. NMCI Medical Clinic, Inc.,* Case No. 5:21-cv-03495-SVK (the "Case"). If the Court gives final approval to the Settlement, Defendant Noralahi Medical Clinics Incorporated, erroneously sued as NMCI Medical Clinic, Inc. ("Defendant"), will provide each Class Member with a payment based on the number of weeks that they worked for the company as described in this notice.

Here is a summary of your rights and options, which are described in more detail later in this document. If you have any questions, please contact the Settlement Administrator, NAME, [ADDRESS].

1.  GENERAL INFORMATION
    The United States District Court for the Northern District of California preliminarily approved a settlement of the class action claims asserted by Plaintiffs Barbara Kulik, James Eskridge, and Mary Dunning Garofalo (collectively, "Plaintiffs") in the Case. If you are or were an hourly employee of Defendant in California holding the positions of Medical Assistants, Physician Assistants, and Nurse Practitioners between May 10, 2017 and May 10, 2022, you are eligible to receive payment from the Settlement.

2.  YOUR ESTIMATED PAYMENT INFORMATION
    According to Defendant's payroll records, you are a Class Member who worked approximately ____ Workweeks as an employee in California during the Class Period. Only weeks worked by you during the Class Period as an employee of Defendant may be considered compensable Workweeks under the Settlement. The Class Period is May 10, 2017 through May 10, 2022. Based on information currently available we estimate your total share of the Settlement will be approximately $_____. This is only an estimate. The amount you ultimately receive as part of the Settlement may increase or decrease in accordance with the terms of the Settlement and the Court's orders.

    ***Defendant respects your right to participate in this Settlement and will take no adverse action against you should you accept payment under the Settlement***

FP 43695540.1

| SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | | |
|---|---|---|
| **GET A PAYMENT** | If you do nothing, you will automatically receive a payment if the Settlement is finally approved by Court.  However, you may have to fill out a FLSA opt in form to receive additionally payments related to any claims asserted under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* | N/A |
| **EXCLUDE YOURSELF** | If you wish to exclude yourself from the Settlement, you must submit to the Settlement Administrator a valid Request for Exclusion. If you exclude yourself from the Settlement, you will not receive a payment under the Settlement. Excluding yourself is the only option that allows you to bring or maintain your own lawsuit against Defendant regarding the allegations in the Case. Detailed instructions for this option are set forth in Section 17 below. | Deadline: [45 days from mailing of notice] |
| **OBJECT** | If you wish to object to the Settlement, you must submit your objections (i.e., why you do not believe the Settlement is fair or adequate) to the United States District Court for the Northern District of California and copies must be served on the Settlement Administrator, Plaintiffs' counsel, and Defendant's counsel. Submitting an objection does not exclude you from the Settlement. Detailed instructions for this option are set forth in Section 18 below. | Deadline: [45 days from mailing of notice] |
| **GO TO THE "FAIRNESS HEARING"** | The Court will hold a "Fairness Hearing" to consider the Settlement, the request for attorneys' fees and costs by the attorneys representing the Class in the Case, and the Representative Plaintiffs' request for an enhancement award for bringing and maintaining this action.<br><br>You may, but are not required to, speak at the Fairness Hearing about any objection to the Settlement that you submitted. If you intend to speak at the Fairness Hearing, you must also provide a "Notice of Intention to Appear," indicating your intention to do so. | Hearing Date: [TBD] |

The Court in charge of this Case has preliminarily approved the Settlement and must decide whether to give final approval to the Settlement. The relief provided to Class Members will only be provided if the Court gives final approval to the Settlement, and if there are any appeals, after the appeals are resolved in favor of the Settlement. ***Please be patient.***

**WHAT THIS NOTICE CONTAINS**

BACKGROUND INFORMATION…………………………………………………………………..…………..X
    1.  Why did I get this notice?
    2.  What is this lawsuit about?
    3.  Why is this a class action?
    4.  Why is there a settlement?
    5.  How do I know if I am part of the Settlement?
    6.  I'm still not sure if I am included.
THE PROPOSED SETTLEMENT…………………………………………………………………….…………...X
    7.  What relief does the Settlement provide to the Class Members?
PAYMENT TO THE CLASS……………………………………………………………………………………X
    8.  How can I get a payment?
    9.  When will I get a payment?
    10.  What if I disagree with the calculation regarding my estimated settlement payment?
    11.  If I receive a settlement payment will I have to pay taxes on it?
    12.  No retaliation or discrimination
THE LAWYERS IN THIS CASE AND THE REPRESENTATIVE PLAINTIFF………………….……………….X
    13.  Do I have a lawyer in this case?
    14.  How will the lawyers be paid?
    15.  Will the Representative Plaintiffs receive any compensation for their efforts in bringing and
        maintaining this Case?
RELEASE OF ALL CLAIMS…………………………………………………………………………………...X
    16.  What am I giving up to obtain relief under the Settlement?
HOW TO EXCLUDE YOURSELF FROM THE SETTLEMENT…………………………...…………………X
    17.  How do I exclude myself from the Settlement?
HOW TO OBJECT TO THE SETTLEMENT……………………………………………………………………X
    18.  How do I tell the Court that I do not like the Settlement?
    19.  What is the difference between excluding myself and objecting to the Settlement?
FAIRNESS HEARING…………………………………………………………………….…….......………..X
    20.  What is the Fairness Hearing?
    21.  When and where is the Fairness Hearing?
    22.  May I speak at the Fairness Hearing?
ADDITIONAL INFORMATION…………………………………………………………...………….X
    23.  How do I get more information?
    24.  What if my address or other information has changed?

FP 43695540.1

## BACKGROUND INFORMATION

### 1.   Why did I receive this notice?

You received this Notice because a Settlement has been reached in this Case. According to Defendant's available records you are a member of the Settlement Class and may be eligible for the relief below.

This Notice explains the nature of the Case, the general terms of the proposed Settlement, and your legal rights and obligations. To obtain more information about the Settlement, including information about how you can see a copy of the Settlement Agreement, see Section 23 below.

### 2.   What is this lawsuit about?

The Case alleges that Defendant failed to pay overtime, failed to pay minimum wages, failed to provide meal periods, failed to provide rest breaks, failed to provide accurate wage statements, failed to reimburse business expenses, failed to pay wages at separation, committed acts of unfair competition, and violated the Private Attorneys General Act, and is thus subject to damages under state and federal law.

Defendant denies Plaintiffs' allegations in their entirety. Defendant contends that it paid all overtime wages owed, paid all minimum wages owed, provided all meal periods required, provided all rest breaks required, provided accurate wage statements, reimbursed all required business expenses, paid all wages at separation, did not commit any acts of unfair competition, complied with the Private Attorneys General Act, and complied with all other requirements of state and federal law. Defendant contends that its affirmative defenses to this action may otherwise prevent or limit Plaintiffs' class claims.

**The issuance of this Notice is not an expression of the Court's opinion on the merits or the lack of merits of the Representative Plaintiffs' claims in the Case.**

For information about how to learn about what has happened in this Case to date, please see Section 23 below.

### 3.   Why is this a class action?

In a class action lawsuit, "Representative Plaintiffs" (in this case, Barbara Kulik, James Eskridge, and Mary Dunning Garofalo) sue on behalf of other people who allegedly have similar claims. For purposes of this proposed Settlement, one court will resolve the issues for all Class Members. The company sued in this case, Noralahi Medical Clinics Incorporated, erroneously sued as NMCI Medical Clinic, Inc., is called the Defendant.

### 4.   Why is there a settlement?

The Representative Plaintiffs made claims against Defendant. Defendant denies that it has done anything wrong or illegal, and admits no liability. **The Court has not decided whether the Representative Plaintiffs or the Defendant should win in this Case. Instead, both sides have agreed to a Settlement.** That way, both sides avoid the cost of a trial, and the Class Members will receive payment now rather than years from now, if at all.

### 5.   How do I know if I am part of the Settlement?

The Court has decided that everyone who fits the following description is a Class Member for purposes of the proposed Settlement: ""all of Defendant's current and former hourly employees in California holding the positions of Medical Assistants, Physician Assistants, and Nurse Practitioners between with Defendant between May 10, 2017 and May 10, 2022."

### 6.   I'm still not sure if I am included.

If you are still not sure whether you are included, you can write to the Settlement Administrator for help. The address for the Settlement Administrator is [NAME AND ADDRESS]

## THE PROPOSED SETTLEMENT

### 7.   What relief does the Settlement provide to the Class Members?

Defendant has agreed to fund a settlement with a maximum value of $875,000. This settlement amount will be used to pay the claims of the Class Members, and the following amounts requested by Plaintiffs and subject to Court approval: the cost of providing notice to the Class and administering the Settlement (up to $20,000); to pay any awards by the Court for attorneys' fees (up to $262,500.00) and costs (up to $20,000.00) to Plaintiffs' counsel; to pay the California Labor and Workforce Development Agency its share of the Settlement (up to $15,000.00); and any enhancement award the Court awards to the Representative Plaintiffs (up to $5,000.00 each). The estimated Net Settlement Amount to be used to pay the claims of Class Members is approximately $_____.

**Your estimated Settlement Payment is stated on the Workweek Dispute Form included with this Notice.** Your estimated payment was calculated using Defendant's payroll and employee records. Individual Settlement Payments will be calculated and apportioned as follows:

    (a)   The "Net Settlement Amount" shall be calculated by subtracting the payments to Class Counsel, the Representative Plaintiffs, the Settlement Administrator, and payment of $15,000 to the California Labor and Workforce Development Agency for penalties under PAGA from the Maximum Settlement Amount.

    (b)   The Net Settlement Amount will be divided up and paid to Participating Class Members on a pro-rata basis based on each Participating Class Member's total number of "Individual Workweeks" divided by the aggregate Individual Workweeks of all Participating Class Members according to the following formula:

        1.   For each Participating Class Member, Defendant will calculate the total number of weeks that the individual worked for Defendant during the Class Period.

        2.   The "Individual Settlement Payment" for each Participating Class Member will equal the individual's Individual Workweeks, multiplied by their normal hourly rate of pay for their last payperiod, (the "Individual Qualifying Wages") divided by the aggregate Individual Qualifying Wages for all Participating Class Members multiplied by the Net Settlement Amount.

    (c)   For tax purposes, eighty percent (80%) of each Participating Class Member's Individual Settlement Payment shall be treated as civil and/or statutory penalties and shall be reported on an IRS Form 1099 and twenty (20%) as wages subject to deductions and withholdings to be reported on an IRS Form W2.

Additionally, a portion of the Settlement will be allocated to resolve claims related to violations related to violations of the Private Attorneys General Act and the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*.  Payment under these claims is dependent on the time period during which you worked for Defendant.

• Class Members who worked for Defendant from May 10, 2020 through May 10, 2022 (the "PAGA Period") are also members of the "PAGA Group."  For each PAGA Group Member, Defendant will calculate the total number of workweeks worked by each PAGA Group Member during the PAGA Period and the aggregate total number of PAGA workweeks worked by all PAGA Group Members during the PAGA Period.  The Net PAGA allocation approved by the Court will be divided by the aggregate total number of PAGA Workweeks, resulting in the "Workweek Value." Each PAGA Group Member's PAGA Payment will be calculated by multiplying their number of PAGA Workweeks worked by the Workweek Value.  A PAGA Group Member may not request exclusion from the PAGA portion of the Settlement.

• Class Members who worked for Defendant from May 10, 2018 through May 10, 2022 (the "FLSA Period") and who submit a valid FLSA opt-in form are also members of the "FLSA Collective."  For each PAGA

Group Member, Defendant will calculate the total number of workweeks worked by each Participating FLSA Collective Members during the FLSA Period and the aggregate total number of FLSA workweeks worked by all Participating FLSA Collective Members during the FLSA Period.  The FLSA Payment of $20,000 will be divided by the aggregate total number of PAGA Workweeks, resulting in the "Workweek Value." Each Participating FLSA Collective Member's FLSA Payment will be calculated by multiplying their number of FLSA Workweeks worked by the Workweek Value.  A Participating FLSA Collective Members will only receive this portion of the Settlement if they complete a valid opt-in form

## PAYMENT TO THE CLASS

### 8.  How can I get a payment?

If you wish to remain a Class Member and obtain any share of the Settlement to which you may be entitled, then you do not have to do anything and you will automatically receive a settlement payment in the mail if the Court approves the proposed Settlement.  However, Participating FLSA Collective Members will only receive a FLSA Payment if they complete a valid opt-in form.  You are not required to go to court or pay anything to the lawyers in this case. The Settlement Payment you will receive will be a full and final settlement of your Released Claims described below.

### 9.  When will I get a payment?

As described in Sections 20 and 21, the Court will hold a hearing on [DATE FOR FAIRNESS HEARING] to decide whether to approve the Settlement. If the Court approves the Settlement, after that, there may be appeals. It is always uncertain whether these appeals can be resolved, and resolving them can take time, perhaps more than a year. *Please be patient.*

### 10.  What if I disagree with Defendant's calculation regarding my estimated settlement payment?

If you believe that the number of Workweeks with which you have been credited is incorrect, you may produce evidence to the Settlement Administrator by [TBD] showing that such information is inaccurate. The Settlement Administrator shall then decide the dispute between your calculation and that of Defendant. Defendant's records will be presumed to be correct, but the Settlement Administrator will evaluate the evidence submitted by you and will make the final decision as to the merits of the dispute. You can submit the Workweek Dispute Form by mail to the Settlement Administrator at: NMCI Medical Clinic Settlement Administration, c/o NAME AND ADDRESS]. Alternatively, you may submit your dispute form via facsimile to _____, or you can submit your dispute to the Settlement Administrator via e-mail to the following e-mail address: _____.

### 11.  If I receive a settlement payment will I have to pay taxes on it?

Eighty Percent (80%) of your Individual Settlement Payment (as well as any PAGA or FLSA related payments) will be reported on IRS Form 1099. You should consult with a tax professional for more information about your own specific situation.

### 12.  No retaliation or discrimination.

Defendant respects your right to participate in this lawsuit and will take no adverse action against you should you accept payment under the Settlement.

## THE LAWYERS IN THIS CASE AND THE REPRESENTATIVE PLAINTIFF

### 13.  Do I have a lawyer in this case?

The Court has preliminarily approved Sommers Schwartz, P.C. ("Class Counsel") to represent the interests of all Class Members. You will not be separately charged for these lawyers. If you have a question about the settlement, you may contact Class Counsel by writing to them at Kevin J, Stoops, Sommers Schwartz, P.C., 402 West

Broadway, Suite 1760, San Diego, CA 92101, by emailing them at kstoops@sommerspc.com, or by calling them at (248) 355-0300.  Alternatively, if you want to be represented by your own lawyer, you may hire one at your own expense.

| **14.  How will the lawyers be paid?** |
| --- |

Defendant has agreed to pay Class Counsel's attorney's fees up to $262,500 and costs of up to $20,000 for their services in litigating the Case, subject to approval by the Court. You will not be required to pay any attorneys' fees or costs.

| **15.  Will the Representative Plaintiffs receive any compensation for their efforts in bringing and maintaining this Case?** |
| --- |

The Representative Plaintiffs will request an enhancement award of up to $5,000.00 each for their services as class representatives and their efforts in bringing and maintaining this action. The Court will make the final decision as to the amount to be paid to the Representative Plaintiffs.

| **RELEASE OF ALL CLAIMS** |
| --- |

| **16.  What am I giving up to obtain relief under the Settlement?** |
| --- |

If the Court approves the proposed Settlement, unless you exclude yourself from the Settlement, you will be releasing your claims against Defendant. Specifically, you will release the Released Parties from any and all class action and representative claims asserted in Plaintiffs' First Amended Complaint in this Case including, but not limited to: (1) Failure to Pay Minimum Wages, (2) Failure to Pay Overtime - Labor Code, (3) Failure to Provide Meal Periods and Rest Breaks, (4) Failure to Provide Accurate Wage Statements, (5) Failure to Reimburse Business Expenses, (6) Failure to Pay Wages at Separation, and (7) Unfair Competition, (hereinafter the "Released Claims"). The release shall not extend to any claims outside of the Class Period of May 10, 2017, to May 22, 2022.

Additionally, Class Members who worked for Defendant from May 10, 2018 through May 10, 2022 and who submit a valid FLSA opt-in form will be releasing your claims against Defendant for violations of FLSA. Specifically, you will release the Released Parties from any and all collective claims asserted in Plaintiffs' First Amended Complaint in this Case including, but not limited to: (1) Failure to Pay Minimum Wages and (2) Failure to Pay Overtime – FLSA.

The Released Parties include Defendant and each of Defendant's respective all of its past, present, and future respective subsidiaries, dba's, affiliates, PEOs, staffing agencies, parents, predecessors, successors, divisions, joint ventures, investors, and assigns and their respective current and former employees, managing agents, partners, owners, servants, consultants, agents, directors, officers, members, investors principals, independent contractors, representatives, insurers, co-insurers, reinsurers, attorneys and personal or legal representatives and successors and assigns of any of the foregoing responsible or potentially responsible for the claims made in the Case.

| **HOW TO EXCLUDE YOURSELF FROM THE SETTLEMENT** |
| --- |

| **17.  How do I exclude myself from the Settlement?** |
| --- |

You may exclude yourself from the Class and the Settlement (*i.e.* "opt out"). If you want to be excluded, you must send a written request via U.S. Mail or other delivery service to the Settlement Administrator that states: (a) the case name and number of the Case "*Barbara Kulik, et al. v. NMCI Medical Clinic, Inc.*, Case No. 5:21-cv-03495-SVK"; (b) your full name, address, telephone number and last four digits of your Social Security number; and (c) a statement that you have received notice of the Settlement and have decided that you do not wish to participate in the Settlement. You must sign the written request for it to be valid. The written request must be sent (i.e., postmarked or delivery date stamped) no later than _____, and sent to the Settlement Administrator at: NAME [ADDRESS]. You may also fax the letter or postcard to the Settlement Administrator at _____, or submit it to the Settlement Administrator via e-mail to _____.

If you timely request exclusion from the Class, you will be excluded from the Class, you will not be bound by the judgment entered in the Case, and you will not be precluded from prosecuting any timely individual claim against Defendant based on the conduct complained of in the Case.

## HOW TO OBJECT TO THE SETTLEMENT

### 18. How do I tell the Court that I do not like the Settlement?

If you do not exclude yourself from the Settlement, you can object to the terms of the Settlement before the Court grants final approval. You can ask the Court to deny approval by filing an objection. You **cannot** ask the Court to order a larger settlement; the Court can only approve or deny the settlement.

You may object to the Settlement in writing. You may also appear at the Fairness Hearing at the date, time and location stated in Section 21 below.

To be valid, any objection must: (a) state the case name and number of the Case "*Barbara Kulik, et al. v. NMCI Medical Clinic, Inc.*, Case No. 5:21-cv-03495-SVK"; (b) state your full name, address, telephone number, last four digits of your Social Security number and dates of employment with Defendant; (c) state your objection to the settlement and the legal and/or factual arguments supporting the objection; (d) be filed with the United States District Court for the Northern District of California on or before ▆▆▆▆▆▆; and (e) copies of the objection must be served on the Settlement Administrator, Plaintiffs' counsel, and Defendant's counsel via U.S. Mail or other delivery service with proof of submission date (such as a U.S. Postal Service postmark or other delivery service date state stamp no later than ▆▆▆▆▆▆. You may, but need not, submit your objection through counsel of your choice. If you make your objection through counsel, you will be responsible for your attorneys' fees and costs.

If you make an objection and the Court disagrees with your objection and grants final approval of the Settlement, you will have released all Released Claims against Released Parties as described in Section 16 above and will receive your Individual Settlement Payment.

**IF YOU DO NOT TIMELY MAKE YOUR OBJECTION, YOU WILL BE DEEMED TO HAVE WAIVED ALL OBJECTIONS.**

### 19. What is the difference between excluding myself and objecting to the Settlement?

Objecting is telling the Court that you don't like something about the Settlement. You can object only if you stay in the Settlement Class. Excluding yourself is telling the Court that you don't want to be part of the Settlement Class. If you exclude yourself, you have no basis to object because the Settlement no longer affects you.

## FAIRNESS HEARING

### 20. What is the Fairness Hearing?

The Court has preliminarily approved the Settlement, meaning only that it concluded that there is sufficient evidence to suggest that the Agreement falls within the range of possible approval as fair, reasonable, and adequate, and that the final determination of these issues will be made at the Fairness Hearing. The purpose of the Fairness Hearing will be for the Court to determine whether the Settlement should be approved as fair, reasonable, and adequate, and in the best interests of the Settlement Class; to consider the award of attorneys' fees and expenses to Class Counsel and to consider the request for an enhancement award for the Representative Plaintiffs.

### 21. When and where is the Fairness Hearing?



On ▆▆▆▆▆▆, at ▆▆▆▆, a hearing will be held on the fairness of the proposed Settlement. At the hearing, the Court will be available to hear any objections and arguments concerning the proposed Settlement's fairness. The hearing will take place before the Honorable ▆▆▆▆ in Department ▆▆ of the United States District Court for the Northern District of California, located at ▆▆▆▆. The hearing may be postponed to a different date, time or location without notice. It is not necessary for you to appear at this hearing unless you want to object to the settlement.

Page 26 of 30

**22.  May I speak at the hearing?**

At the hearing, the Court will be available to hear any objections and arguments concerning the fairness of the Settlement. You may attend, but you do not have to.

## ADDITIONAL INFORMATION

**23.  How do I get more information?**

To see a copy of the Settlement Agreement, the Court's Preliminary Approval Order, and/or the Complaint filed in the Case, please visit the United States District Court for the Northern District of California Court Clerk's Office during regular business hours at _____.

**24.  What if my address or other information has changed?**

It is your responsibility to inform the Settlement Administrator of your updated information. You may make corrections to your address by sending in the Workweek Dispute Form. Alternatively, you may contact the Settlement Administrator at: NAME, [TELEPHONE NUMBER].

**DO NOT ADDRESS ANY QUESTIONS ABOUT THE SETTLEMENT OR THE CLASS LITIGATION TO THE CLERK OF THE COURT OR THE JUDGE.**

FP 43695540.1

# EXHIBIT B

FP 43695540.1

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BARBARA KULIK, JAMES ESKRIDGE, and MARY DUNNING GAROFALO, individually and on behalf of all others similarly situated, | CASE NO. 5:21-cv-03495-SVK |
| Plaintiffs, | **FLSA OPT-IN FORM AND RELEASE OF CLAIMS** |
| vs. | |
| NMCI MEDICAL CLINIC, INC., a corporation, | |
| Defendant. | |

You are receiving this form because you are an individual who worked for Noralahi Medical Clinics Incorporated in California as an hourly employee holding the position of Medical Assistant, Physician Assistant, or Nurse Practitioner between May 10, 2018 and May 10, 2022 (the "FLSA Period"). You must return this form by [INSERT] to receive your share of the FLSA settlement reached as part of the Settlement in the above-entitled action.

Instructions: Please complete this FLSA Opt-In Form and Release of Claims if you would like to claim your share of the settlement monies allocated to claims under the federal Fair Labor Standards Act ("FLSA").

To assist you in getting your claim form postmarked by [INSERT], a pre-printed form has been enclosed for your convenience. Once you have signed and dated this claim form, please mail the form to [INSERT] or email the form to [INSERT].

If you have lost or misplaced the pre-printed, postage paid return envelope, you may mail your signed and dated claim form to the Settlement Administrator via first class mail at the following address: [INSERT]

## CLAIM FORM

Name(s): _____
(Please list all names you use or are known by)

Street Address and Mailing Address if different: _____

City, State & Zip Code (to receive mail): _____

Telephone: _____ Cell Phone: _____

Personal Email Address(es): _____

### FLSA CONSENT TO JOIN / OPT-IN TO THESE CASES.

BY SUBMITTING THIS CLAIM FORM, I CONSENT TO JOIN THE COLLECTIVE IN THE FLSA PORTION OF THE *KULIK, ET AL. V. NMCI MEDICAL CLINIC, INC.* ACTION AND ELECT TO PARTICIPATE IN THE SETTLEMENT AND RELEASE OF THE FLSA CLAIMS.

### RELEASE AND SIGNATURE

I understand that by consenting to join the FLSA claims in *Kulik, et al. v. NMCI Medical Clinic, Inc.*, and participate in the FLSA settlement of these cases, I have agreed to release *NMCI Medical Clinic, Inc.* and its past, present, and future respective subsidiaries, dba's, affiliates, PEOs, staffing agencies, parents, predecessors, successors, divisions, joint ventures, investors, and assigns and their respective current and former employees, managing agents, partners, owners, servants, consultants, agents, directors, officers, members, investors principals, independent contractors, representatives, insurers, co-insurers, reinsurers, attorneys and personal or legal representatives and successors and assigns of any of the foregoing responsible or potentially responsible for all FLSA claims arising from the factual allegations in the Operative Complaint from May 10, 2018 through May 10, 2022.

Signature: _____

Print Name: _____

Date: _____

FP 43695540.1

## ADDENDUM TO CLASS ACTION SETTLEMENT AGREEMENT

This Addendum to Settlement Agreement ("Addendum") is made between BARBARA KULIK, JAMES ESKRIDGE, MARY DUNNING GAROFALO, and YADIRA GOMEZ (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated (the "Putative Class"), on the one hand, and NORALAHI MEDICAL CLINICS INCORPORATED, erroneously sued as NMCI MEDICAL CLINIC, INC. and each of its past, present and future respective subsidiaries, dba's, affiliates, parents, predecessors, successors, investors, and their current and former employees, managing agents, servants, consultants, staffing agencies, agents, directors, officers, members, independent contractors, representatives, insurers, reinsurers, and attorneys (collectively "Defendant"), on the other hand. Plaintiffs and Defendant will at times be referred to collectively as the "Parties" and may individually be referred to as a "Party."

## RECITALS

WHEREAS, on May 10, 2021, Plaintiffs Kulik, Eskridge, and Garofalo filed a Class Action Complaint in the United States District Court for the Northern District of California, Case No. 5:21-cv-03495-SVK, entitled *Barbara Kulik, et al. v. NMCI Medical Clinic, Inc.* (the "Action");

WHEREAS, on July 13, 2021, Plaintiffs Kulik, Eskridge, and Garofalo (the "Representative Plaintiffs") filed a First Amended Class Action Complaint in the Action;

WHEREAS, on February 24, 2022, Plaintiff Gomez filed a Consent to Join Collective Action in the Action, in which she joined the Action as a party plaintiff;

WHEREAS, on or about May 11, 2022, the Parties agreed to a classwide settlement in the Action (the "Agreement");

WHEREAS, Plaintiff Gomez provided services to the Class Members and Class Counsel that enabled the Parties to reach that classwide settlement in the Action;

NOW THEREFORE, the Parties have executed this Addendum for the sole purpose of confirming Plaintiff Gomez's status as a named Class Representative in the Action subject to the terms contained herein.

1.    Agreement Incorporated By Reference.  The Parties incorporate by reference into this Addendum all terms and conditions contained in the Agreement and Plaintiff Gomez agrees to be bound by all of those terms and conditions (including, but not limited to, those applicable to the Representative Plaintiffs).

2.    Enhancement Award.  The Parties agree that of the Gross Fund Value ("GFV") provided for in the Agreement, Five Thousand Dollars and Zero Cents ($5,000.00) will be designated to Plaintiff Gomez as a Class Representative, without deductions, as an enhancement award in addition to any amount she may be entitled to receive pursuant to the distribution formula as identified in Paragraph 2(e) of the Agreement, for her time, effort, expense, and risks associated with being a named representative of the Class Members and a general release of her rights. This payment will be reported as 1099 income. Defendant will not oppose any application for such an

enhancement award so long as it is consistent with the terms described herein. This amount shall come from, and shall not be in addition to, the GFV. Plaintiff Gomez acknowledges her responsibility for any and all taxes for these sums.  Should the Court approve less than the amount provided for in this paragraph or refuse to grant Plaintiff Gomez the status of a Class Representative, said reduced approval amount or rejection of status shall not be cause to invalidate the Agreement and any balance will revert to the net GFV for distribution in accordance with the Agreement and this Addendum.    This enhancement award will be paid in addition to any settlement payment to which each Class Representative may otherwise be entitled as a Participating Class Member and/or PAGA Group Member;

3.    <u>Conditional Approval of Class Representative</u>.  For purposes of this Addendum and the settlement of the Action only, the Parties stipulate to the approval of Plaintiff Gomez as a suitable Class Representative. If the Court fails to approve the Addendum, or if the Addendum is terminated, cancelled, or fails to become effective for any reason (including, but not limited to, because the Court fails to approve the Agreement), the Parties' stipulations in this paragraph will be void, and Plaintiff Gomez's status will revert to how it existed prior to the date of this Addendum.

4.    <u>Release</u>. In exchange for the mutual promises and consideration set forth in this Agreement, the sufficiency of which is hereby acknowledged by the Parties, a release of liability is understood and agreed to as follows:

a.    "Released Parties" as referenced herein and as released in the Agreement shall collectively mean Defendant and all of its past, present, and future  respective subsidiaries, dba's, affiliates, PEOs, staffing agencies, parents, predecessors, successors, divisions, joint ventures, investors, and assigns and their respective current and former employees, managing agents, partners, owners, servants, consultants, agents, directors, officers, members, investors principals, independent contractors, representatives, insurers, co-insurers, reinsurers, attorneys and personal or legal representatives and successors and assigns of any of the foregoing.

b.    Upon the Effective Date and payment by Defendant of the GFV and Employers' Taxes necessary to effectuate the Settlement, Plaintiff Gomez, the other Representative Plaintiffs, and all Participating Class Members on behalf of themselves and their respective heirs, successors, assigns, attorneys and agents, hereby waive, release, and forever discharge, Released Parties from any and all claims, demands, debts, duties, obligations, promises, liabilities, damages, accounts, payments, liens acts, costs, expenses, sums of money, suits, dues, actions or causes of action, both in law and in equity, whether known or unknown, matured or unmatured, suspected or unsuspected, against any of the Released Parties which were alleged in the Action or which could have been alleged based on the facts alleged in the Action and which occurred during the Class Period (including, but not limited to, claims for failure to pay overtime wages; failure to pay minimum wages; failure to provide meal periods or compensation in lieu thereof; failure to provide rest periods or compensation in lieu thereof; waiting time penalties; wage statement violations; unfair competition in connection with the allegations brought in the Action; and any violations of Labor Code sections 201, 202, 203, 226, 226(c), 226.7, 227.3, 510, 512, 558.1, 1194, 1194.2, 1197, 1198.5, and 2802).

c.    Upon the Effective Date and payment by Defendant of the GFV and Employers' Taxes necessary to effectuate the Settlement, Plaintiff Gomez, the other Representative Plaintiffs, and all FLSA Collective Members on behalf of themselves and their respective heirs, successors, assigns, attorneys and agents, hereby waive, release, and forever discharge, Released Parties from any and all claims, demands, debts, duties, obligations, promises, liabilities, damages, accounts, payments, liens acts, costs, expenses, sums of money, suits, dues, actions or causes of action, both in law and in equity, whether known or unknown, matured or unmatured, suspected or unsuspected, against any of the Released Parties, for any and all types of relief under the Fair Labor Standards Act, U.S.C. § 201, et seq., including without limitation claims for failure to pay minimum wage, overtime, and for all hours worked, and any and all claims for recovery of compensation, overtime pay, minimum wage, liquidated damages, interest, and/or penalties tied to such claims, that arose or accrued at any time during the FLSA Period.

d.    For Class Members employed during the PAGA Period, the release includes, for the duration of the PAGA Period, all claims asserted in the letter submitted to the LWDA dated May 10, 2021 and all claims for civil penalties pursuant to Labor Code sections 210, 226.3, 558, 1197.1, and 2699 in connection with violations of Labor Code sections 201, 202, 203, 204, 226, 226.7, 227.3, 246, 432, 510, 512, 558.1, 1174, 1194, 1194.2, 1197, 1197.1, 1198.5, 2802, and 2810.5. The release also includes a release from the State of California (to the extent Plaintiffs are permitted to provide such a release for the State of California for the PAGA period) of all PAGA claims alleged in the Action and the LWDA letter which occurred during the PAGA Period. The release expressly excludes all other claims, including claims for vested benefits, wrongful termination, unemployment insurance, disability, social security, workers' compensation, and class claims outside of the Class Period, and PAGA claims outside of the PAGA period.

e.    Upon the Effective Date and payment by Defendant of the GFV and Employers' Taxes necessary to effectuate this Agreement, and in exchange for the consideration set forth in this Agreement, each Representative Plaintiff, including Plaintiff Gomez, does hereby waive, release, acquit and forever discharge the Released Parties, from any and all claims, actions, charges, complaints, grievances and causes of action, of whatever nature, whether known or unknown, which they possess or may possess as of the Effective Date against any of the Released Parties including, but not limited to, any and all tort claims, contract claims, wage claims, wrongful termination claims, disability claims, benefit claims, public policy claims, retaliation claims, statutory claims, personal injury claims, emotional distress claims, invasion of privacy claims, defamation claims, fraud claims, *quantum meruit* claims, and any and all claims arising under any federal, state or other governmental statute, law, regulation or ordinance, including, but not limited to, claims for violation the California Labor Code, the Fair Labor Standards Act, the Wage Orders of California's Industrial Welfare Commission, the Americans with Disabilities Act, the Employee Retirement Income Security Act, Title VII of the Civil Rights Act of 1964, the California Fair Employment and Housing Act, the California Family Rights Act, the Family Medical Leave Act, California's Whistleblower Protection Act, California Business & Professions Code Section 17200, *et seq.*, and any and all claims arising under any federal, state or other governmental statute, law, regulation or ordinance. The release by each Representative Plaintiff, including Plaintiff Gomez, is not intended to release any claims that cannot be waived or released as a matter of law.

    f.   Upon the Effective Final Settlement Date and payment by Defendant of the GFV and Employers' Taxes necessary to effectuate the Settlement in exchange for the consideration set forth in this Agreement, Plaintiff Gomez hereby agrees that all of her respective rights under section 1542 of the Civil Code of the State of California are hereby waived as to any claims she may have against Defendant. Section 1542 has been explained to Plaintiff Gomez by her counsel and provides as follows:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY**

Plaintiff Gomez's general release and waiver of California Civil Code Section 1542 shall cover the time period from the start of her respective employment with Defendant up to the Effective Date of this Agreement.

    5.   <u>Mutual Drafting of Addendum</u>. The Parties agree that the terms of this Addendum and the accompanying exhibits are the result of lengthy, arm's length negotiations, and that this Addendum shall not be construed in favor of or against any of the Parties by reason of the extent to which any of the Parties or their respective counsel participated in the drafting of this Addendum.

    6.   <u>Enforcement</u>.   This Addendum is made and is enforceable in accordance with the provisions of California Code of Civil Procedure §664.6, Federal Rule of Civil Procedure 41, and other related Federal Rules of Civil Procedure, and the Parties agree that the Court shall retain jurisdiction for that purpose to effectuate the terms of this Addendum after entry of judgment in the Action. This Addendum shall be incorporated by reference into any Court order granting approval thereof such that the Court shall thereafter retain the jurisdiction to enforce its terms.

    7.   <u>Governing Law</u>.   This Agreement shall be governed by and interpreted according to the laws of the State of California.

    The Parties, with the benefit of representation and advice of counsel, have read this Addendum to the Agreement and fully understand each and every provision contained in it.

Dated: ___06/09/2022___, 2022

_____
BARBARA KULIK

Dated: ___06/09/2022___, 2022

_____
JAMES ESKRIDGE

Dated: ___06/09/2022___, 2022

_____
MARY DUNNING GAROFALO

Dated: ___06/09/2022___, 2022          _____
                                       YADIRA GOMEZ


Dated: _____, 2022           NORALAHI MEDICAL CLINICS
                                       INCORPORATED

                                       By: _____

                                       Print Name: _____

                                       Title: _____


Approved as to form:


                                       SOMMERS SCHWARTZ, P.C.

Dated: _____, 2022             _____
                                       Kevin J. Stoops
                                       Counsel for Plaintiffs


                                       FISHER & PHILLIPS, LLP

Dated: _____, 2022             _____
                                       Christine A. Baran
                                       Counsel for Defendant

Dated: _____, 2022

_____
YADIRA GOMEZ

Dated: _____June 9_____, 2022

NORALAHI MEDICAL CLINICS
INCORPORATED

By: _____

Print Name: _____Kitch Jacobs_____

Title: _____Co-Owner_____

Approved as to form:

SOMMERS SCHWARTZ, P.C.

Dated: _____, 2022

_____
Kevin J. Stoops
Counsel for Plaintiffs

FISHER & PHILLIPS, LLP

Dated: _____June 9_____, 2022

_____
Christine A. Baran
William R.H. Mosher
Counsel for Defendant