UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BARBARA KULIK, et al.,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>NMCI MEDICAL CLINIC INC,<br><br>　　　　　Defendant. | Case No. 21-cv-03495-BLF<br><br>**ORDER GRANTING IN PART (1) MOTION FOR FINAL APPROVAL OF CLASS ACTION/COLLECTIVE SETTLEMENT AND (2) MOTION FOR ATTORNEYS' FEES, LITIGATION EXPENSES, AND CLASS REPRESENTATIVE INCENTIVE AWARDS**<br><br>[Re: ECF Nos. 59, 56] |

Before the Court are (1) Plaintiffs' Motion for Final Approval of Class/Collective Action Settlement ("Final Approval Motion") and (2) Plaintiffs' Motion for Attorneys' Fees, Litigation Expenses, and Class Representative Incentive Awards ("Fee Motion"). *See* ECF Nos. 59, 56. One opt-out has been filed and there are no objectors. The Court held a hearing on the motions on March 1, 2023. For the reasons stated on the record and explained below, the Court GRANTS IN PART both motions.

I. **BACKGROUND**

On May 10, 2021, Plaintiffs filed this lawsuit. ECF No. 2. On July 13, 2021, Plaintiffs filed a First Amended Complaint ("FAC"), adding a claim under the California Private Attorneys General Act ("PAGA"). ECF No. 17 ("FAC"). Plaintiffs and Class Members are hourly, non-exempt Medical Assistants, Physician Assistants, and Nurse Practitioners. Final Approval Motion at 2.

In the FAC, Plaintiffs allege off-the-clock work, including time spent completing necessary work-related paperwork, such as medical charting. FAC ¶¶ 15, 18, 20, 25-26. Plaintiffs

were scheduled to see patients every twenty minutes during the workday, but the appointments would often last longer, which left Plaintiffs little time to perform their medical charting duties. *Id.* ¶ 24. Plaintiffs allege that "Defendant would always discourage or outright refuse to allow Plaintiffs and other Class Members to log overtime hours." *Id.* ¶ 27. Further, at the end of 2019, Defendant informed Class Members that they were "exempt" employees under state and federal labor laws, and thus would not receive overtime premium wages. *Id.* The FAC includes nine claims: (1) violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*; (2) violation of the California Labor Code §§ 223, 1194, 1194.2, 1197, 1197.1 and IWC Wage Order 4; (3) violation of the California Labor Code §§ 510, 1194, 1198, and IWC Wage Order 4; (4) violation of the California Labor Code §§226.7 and 512; (5) violation of the California Labor Code §§ 226, 1174; (6) violation of the California Labor Code § 2802; (7) violation of the California Labor Code §§ 201, 202, 203; (8) violation of the California Business and Professions Code § 17200, *et seq.*; and (9) violation of PAGA, Labor Code § 2699, *et seq.* FAC ¶¶ 66-130. Plaintiffs seek to certify a FLSA collective action and Rule 23 class action. *Id.* ¶¶ 45-65.

  The parties stipulated to attending private mediation on September 16, 2021. ECF No. 30. The parties then engaged in informal discovery in preparation for mediation and to assist in preparing mediation briefs. Final Approval Motion, Ex. B ("Stoops App. Decl.") ¶ 14. Defendant produced complete payroll and time data for 21 Class Members. Final Approval Motion at 4. Plaintiffs' counsel enlisted the services of a damages expert and forensic accountant to create a class-wide damages model using this data produced by Defendant. Stoops App. Decl. ¶ 14.

  In January 2022, the parties attended a mediation, but it was unsuccessful. Stoops App. Decl. ¶ 14. On February 10, 2022, Plaintiffs' counsel filed a motion for conditional certification under 29 U.S.C. § 216(b). ECF No. 35. But before any other briefing was filed, the parties agreed to attend a second mediation. Stoops App. Decl. ¶ 15. On March 1, 2022, the parties attended a second mediation with nationally respected wage and hour mediator Gig Kyriacou, and they reached a class-wide settlement of all claims asserted in the FAC. *Id.* ¶ 16. The parties executed a Memorandum of Understanding that day, and they continued to negotiate the terms of the settlement over the next several weeks. *Id.* On April 1, 2022, Plaintiffs filed a Notice of

Settlement and Withdrawal of Pre-Discovery Motion for Conditional Certification. ECF No. 39.

Parties filed their Motion for Preliminary Approval on June 10, 2022. ECF No. 45. The Court held a hearing on the Motion for Preliminary Approval on October 20, 2022. *See* ECF No. 49. It entered an order granting preliminary approval on October 26, 2022. ECF No. 55 ("Preliminary Approval Order"). The Settlement provides for a Rule 23 class, a FLSA collective, and a PAGA class, which are defined as follows:

> <u>Participating Class Members:</u>
>
> All of Defendant's current and former hourly employees in California holding the positions of Medical Assistants, Physician Assistants, and Nurse Practitioners during the Class Period (between May 10, 2017 through May 10, 2022) and who did not submit a valid and timely Request for Exclusion (or opt-out) from the Class.
>
> <u>Participating FLSA Collective Members:</u>
>
> All of Defendant's current and former hourly employees in California holding the positions of Medical Assistants, Physician Assistants, and Nurse Practitioners during the FLSA Period (between May 10, 2018 through May 10, 2022) and who submit a valid opt-in form.
>
> <u>PAGA Group Members:</u>
>
> All of Defendant's current and former hourly employees in California holding the positions of Medical Assistants, Physician Assistants and Nurse Practitioners during the PAGA Period (between May 10, 2020 through May 10, 2022). A PAGA Group Member may not request exclusion from the PAGA portion of the Settlement and will have released all PAGA Claims as set forth in Paragraph 3b above [of the Settlement] as of the Effective Date of [the Settlement].

Final Approval Motion, Ex. A ("Settlement") ¶ 10(a).

The Settlement provides for a non-reversionary Gross Fund Value ("GFV") of $875,000.00. Settlement ¶ 2. The Settlement allocates $20,000 to resolving the FLSA claims. *Id.* ¶ 2(c). And it allocates an additional $20,000 to the PAGA claims. *Id.* ¶ 2(d). Of this amount, 75% ($15,000) will be distributed to the LDWA, and the additional 25% ($5,000) will be distributed to the PAGA Group Members. *Id.*

The Net GFV, which is determined by subtracting out from the GFV the enhancement awards for the class representatives, the settlement administration fees, the FLSA Penalty Payment

3

1  fund, the PAGA Payment fund, attorneys' fees, and litigation expenses, will be distributed to the
2  class members on a pro-rata basis. Final Approval Motion at 5-6. It will be based on the number
3  of workweeks they worked during the Class Period with an adjustment based on the Class
4  Member's position and rate of pay. *Id.* The $20,000 FLSA allocation will be distributed to
5  Participating FLSA Collective Members on a pro-rata basis. *Id.* at 6. And the $20,000 PAGA
6  allocation will be distributed to PAGA Group Members who worked during the PAGA period on a
7  pro-rata basis. *Id.*

8  After preliminary approval, the parties provided Notice of the Settlement in accordance
9  with the Preliminary Approval Order. *See* Final Approval Motion, Ex. C ("Kline Decl.") ¶¶ 5-9.
10 Notice was mailed to 100 Class Members. *Id.* ¶ 8.

11 The deadline to submit a request for exclusion, to object to the Settlement, to submit a
12 FLSA opt-in form, or to dispute workweeks was December 30, 2022. Kline. Decl. ¶ 10. As of
13 February 10, 2023, the Settlement Administrator had received one request for exclusion and zero
14 objections. *Id.* ¶¶ 11-12. It also received 19 valid and timely FLSA opt-in forms and three late
15 FLSA opt-in forms; the parties decided they would accept the late forms. *Id.* ¶ 13. The Settlement
16 Administrator did not receive any disputes regarding workweeks. *Id.* ¶ 14.

17 Plaintiffs moved for final approval on February 16, 2023. *See* Final Approval Motion.
18 Plaintiffs ask the Court to (1) certify a class for settlement purposes under Rule 23 and certify a
19 FLSA collective for settlement purposes under 29 U.S.C. § 201; (2) approve the Parties'
20 Settlement; (3) appoint Plaintiffs Barbara Kulik, James Eskridge, and Mary Dunning Garofalo, as
21 well as Opt-in Plaintiff Yadira Gomez, as Class Representatives for the Class/Collective and
22 Plaintiffs' counsel as Class Counsel; (4) award fees to the third-party Settlement Administrator
23 Simpluris, Inc.; (5) award attorney fees; (6) approve litigation expenses; and (7) approve class
24 representative awards. *See* Final Approval Motion at 1; Fee Motion at 1. The Court heard
25 Plaintiffs' motions on March 1, 2023.

26 **II.    LEGAL STANDARDS**
27     **A.    Rule 23**
28 "The claims, issues, or defenses of a certified class—or a class proposed to be certified for

purposes of settlement—may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). In addition, Rule 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Id.* at 1026. In order to assess a settlement proposal, the district court must balance a number of factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citing *Hanlon*, 150 F.3d at 1026)).

Settlements that occur before formal class certification also require a higher standard of fairness. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). In reviewing such settlements, in addition to considering the above factors, the court also must ensure that "the settlement is 'not the product of collusion among the negotiating parties.'" *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (quoting *In re Mego*, 213 F.3d at 458).

**B.     FLSA**

Court approval also is required for settlement of an FLSA collective action. *See De Leon v. Ricoh USA, Inc.*, No. 18-CV-03725-JSC, 2020 WL 1531331, at *6-7 (N.D. Cal. Mar. 31, 2020). "The Ninth Circuit has not established the criteria that a district court must consider in determining whether an FLSA settlement warrants approval." *Otey v. CrowdFlower, Inc.*, No. 12-CV-05524-JST, 2014 WL 1477630, at *3 (N.D. Cal. Apr. 15, 2014). Most courts in this circuit first determine whether the named plaintiff is "similarly situated" to the individuals in the collective and then determine whether the settlement constitutes "a fair and reasonable resolution of a bona fide dispute." *De Leon*, 2020 WL 1531331, at *7 (quotation marks and citation omitted). "'[T]he factors that courts consider when evaluating a collective action settlement are

5

essentially the same as those that courts consider when evaluating a [class action] settlement' under Rule 23(e)." *Id.* (quoting *Otey*, 2014 WL 1477630, at \*11).

### C. PAGA

Finally, court approval is required for settlement of a PAGA claim. *See Hudson v. Libre Tech. Inc.*, No. 3:18-CV-1371-GPC-KSC, 2020 WL 2467060, at \*8 (S.D. Cal. May 13, 2020). "While PAGA requires a trial court to approve a PAGA settlement, district courts have noted there is no governing standard to review PAGA settlements." *Id.* Some district courts have looked to the factors governing Rule 23 class action settlements for guidance in evaluating PAGA settlements. *See, e.g., Wanderer v. Kiewit Infrastructure W. Co.*, No. 2:18-CV-02898 WBS-DB, 2020 WL 5107618, at \*2 (E.D. Cal. Aug. 31, 2020). This Court does not find that approach to be appropriate given the Ninth Circuit's recent emphasis on the differences between representative actions under PAGA and class actions under Rule 23. *See Canela v. Costco Wholesale Corp.*, 971 F.3d 845, 851 (9th Cir. 2020). In *Canela*, the Ninth Circuit observed that "in a PAGA suit, the court does not inquire into the named plaintiff's and class counsel's ability to fairly and adequately represent unnamed employees—critical requirements in federal class actions." *Id.* (quotation marks and citation omitted). The Ninth Circuit went on to make the point that "unlike Rule 23(a), PAGA contains no requirements of numerosity, commonality, or typicality." *Id.* (citation omitted).

Other district courts have found it appropriate to approve a PAGA settlement where "the settlement terms (1) meet the statutory requirements set forth by PAGA, and (2) are fundamentally fair, reasonable, and adequate in view of PAGA's public policy goals." *Chamberlain v. Baker Hughes, a GE Co., LLC*, No. 1:19-cv-00831-DAD-JLT, 2020 WL 4350207, at \*4 (E.D. Cal. July 29, 2020). The statute requires that 75% of civil penalties recovered be allocated to the California Labor and Workforce Development Agency ("LWDA") and 25% be allocated to aggrieved employees. *See id.* PAGA's goals include "augmenting the state's enforcement capabilities, encouraging compliance with Labor Code provisions, and deterring noncompliance." *Id.* (quoting *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1132-33 (N.D. Cal. 2016)). The Court finds this standard to be a sensible means for evaluating a PAGA settlement and applies it in this case.

6

## III.   ANALYSIS

### A.   Class and Collective Claims

The Court will first address certification of a Rule 23 class and an FLSA collective. It will then turn to the settlement itself.

#### 1. Certification

##### a.   Rule 23(a) and (b) Class Action

A class action is maintainable only if it meets the four Rule 23(a) prerequisites:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). In a settlement-only certification context, the "specifications of the Rule . . . designed to protect absentees by blocking unwarranted or overbroad class definitions . . . demand undiluted, even heightened, attention[.]" *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). "Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id.*

In addition to the Rule 23(a) prerequisites, "parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem Prods., Inc.*, 521 U.S. at 614. Rule 23(b)(3), relevant here, requires that (1) "questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The "pertinent" matters to these findings include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of

the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

*Id.*

First, the Settlement Class comprises approximately 100 employees potentially impacted by the allegations raised in this case, and the individual joinder of that many persons would be impracticable. *See Litty v. Merrill Lynch & Co.*, No. CV 14-0425 PA (PJWx), 2015 WL 4698475, at *3 (C.D. Cal. Apr. 27, 2015) ("[N]umerosity is presumed where the plaintiff class contains forty or more members."). Second, class members share common questions of law and fact pertaining to whether Defendant violated wage and hour laws by, for example, requiring class members to complete medical paperwork outside of work hours. Third, the claims of Kulik, Eskridge, Garafolo, and Gomez as the class representatives are typical of the class, arising from Defendant's alleged actions regarding its policies as to off-the-clock work. The representation is also adequate because there are no known conflicts of interest with proposed class members and Class Counsel is experienced in wage and hour class action lawsuits such as this. Lastly, questions of law and fact common to class members predominate over questions affecting only individuals, and certification of a Rule 23(b)(3) opt-out settlement class action for purposes of settlement is superior to other available means of adjudicating this dispute.

Accordingly, the Court concludes that the requirements of Rule 23 are met and thus that certification of the class for settlement purposes is appropriate.

b. FLSA Collective

Plaintiffs also seek certification of an FLSA collective. As stated above, in deciding to certify an FLSA collective, most courts in this circuit first determine whether the named plaintiff is "similarly situated" to the individuals in the collective. *De Leon*, 2020 WL 1531331, at *7. Here, the Court already preliminarily approved an FLSA collective. *See* Preliminary Approval Order. Since that preliminary approval, the Settlement Administrator sent out notice regarding the FLSA collective. Kline Decl. ¶¶ 5-9. And 22 individuals have opted into the FLSA collective. *Id.* ¶ 15. The Court determines that Plaintiffs are similarly situated to the putative collective members, for the reasons discussed above.

8

1    Accordingly, the Court grants certification of an FLSA collective for settlement purposes.

### 2. Settlement Approval

As discussed above, the Court must determine that the settlement is fair, reasonable, and adequate. *See Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). In addition, "[a]dequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. And because settlement is prior to class certification, the Court must ensure that "the settlement is 'not the product of collusion among the negotiating parties.'" *In re Bluetooth*, 654 F.3d at 947 (quoting *In re Mego*, 213 F.3d at 458). The Court considers "essentially the same" factors in evaluating settlement of an FLSA collective action as it considers in evaluating settlement of a Rule 23 class action. *De Leon*, 2020 WL 1531331, at *7. Accordingly, the settlement of the class and collective claims in this case are considered together. *See id.* (evaluating settlement of class and collective actions together).

#### a. The Settlement is Fundamentally Fair, Adequate, and Reasonable

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class . . . may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. Moreover, "[a] district court's approval of a class-action settlement must be accompanied by a finding that the settlement is 'fair, reasonable, and adequate.'" *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012) (quoting Fed. R. Civ. P. 23(e)). "[A] district court's only role in reviewing the substance of that settlement is to ensure that it is fair, adequate, and free from collusion." *Id.* at 819 (internal quotation marks and citation omitted). In making that determination, the district court is guided by an eight-factor test articulated by the Ninth Circuit in *Hanlon*. Those factors include:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026; *see also Lane*, 696 F.3d at 819 (discussing *Hanlon* factors).

### 1. Notice Was Adequate

The Court previously approved Plaintiffs' plan for providing notice to the class when it granted preliminary approval of the class/collective action settlement. *See* Preliminary Approval Order. Prior to granting preliminary approval, the Court carefully examined the proposed class notice and notice plan, and it determined that the plan complied with Federal Rule of Civil Procedure 23 and the constitutional requirements of Due Process. *See id.* Plaintiffs now provide a declaration from a Senior Project Manager at the Settlement Administrator explaining the implementation of the plan. *See* Kline. Decl. Based on that declaration, the Settlement Administrator complied with the notice plan, and it provided notice by mail to all 100 class members. *See id.* ¶¶ 5-9. Based on the implementation details of the notice plan, the Court is satisfied that the class members have received the "best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).

### 2. *Hanlon* Factors

The Court now turns to the *Hanlon* factors. Under the first and second factors, the court considers (1) the strength of Plaintiffs' case, weighing the likelihood of success on the merits and the range of possible recovery; and (2) the risk, expense, complexity, and duration of further litigation. *See Hanlon*, 150 F.3d at 1026. Plaintiffs recognize the inherent risks in going to trial, especially because Defendant contests liability. Final Approval Motion at 16-17. Further, they note that litigation would require substantial additional discovery and pre-trial motions, which would be expensive and lengthy. *Id.* Accordingly, Plaintiffs' success was not assured, and significant risk, expense, complexity, and time likely lay ahead if the parties did not settle. Therefore, the Court finds that the first and second *Hanlon* factors favor settlement.

Under the third factor—the risk of maintaining class action status throughout the trial—the Court had not yet granted class certification, so there was some risk. *See Hanlon*, 150 F.3d at 1026.

Fourth, the settlement recovery for the class members is substantial given the circumstances of the case. The average estimated payout is $5,636.41 and the highest estimated payout is $43,742.17. Final Approval Motion at 1. The Court finds this to be a significant payout,

10

particularly considering the scale of the alleged harm.

Under the fifth *Hanlon* factor, courts consider "the extent of discovery completed and the stage of the proceedings." *Hanlon*, 150 F.3d at 1026. In this case, settlement was reached after some discovery, including production of payroll and time data and the use of an expert to create a damages model. Final Approval Motion at 3-4. The Court is satisfied that the parties were sufficiently familiar with the issues in this case to have informed opinions regarding its strengths and weaknesses under factor five.

The sixth *Hanlon* factor—the experience and views of counsel—favors approving the settlement. *See Hanlon*, 150 F.3d at 1026. Class Counsel's conclusion is that the Settlement is fair and reasonable and in the best interest of the settlement class. Final Approval Motion at 14; Stoops App. Decl. ¶ 28. Further, Class Counsel has demonstrated their thorough understanding of the strengths and weaknesses of this case and their extensive experience litigating similar cases. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (finding class counsel's recommendation in favor of settlement presumptively reasonable because counsel demonstrated knowledge about the case and the type of litigation in general).

The seventh *Hanlon* factor is neutral, since there was no government participant in the case. *See Hanlon*, 150 F.3d at 1026.

Under the eighth *Hanlon* factor, the Court considers the "reaction of the class members to the proposed settlement." *See Hanlon*, 150 F.3d at 1026. While notice was given to 100 class members, no objections have been filed and there has been only one opt-out from the class. *See* Kline Decl. ¶¶ 10-14.

Based on those factors, and after considering the record as a whole guided by the *Hanlon* factors, the Court finds that notice of the proposed settlement was adequate, the settlement is not the result of collusion, and that the settlement is fair, adequate, and reasonable.

b. The *Bluetooth* Factors

In addition to the factors considered above, the Court must also take into account that this settlement occurred before formal class certification. Thus, the settlement must meet a higher standard of fairness. *In re Mego*, 213 F.3d at 458. The Court must examine the settlement with

"an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *In re Bluetooth*, 654 F.3d at 946. "Collusion may not always be evident on the face of a settlement, and courts therefore must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.* at 947. Signs of subtle collusion include:

> (1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded;
>
> (2) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class; and
>
> (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.

*Id.* (internal quotations marks and citations omitted).

The Settlement Agreement in this case does not include any of these warning signs and contains no indication of a collusive deal. The first factor is not present, as all class members are entitled to monetary relief based on the number of hours worked during the Class Period. There is also no "clear sailing" provision because the attorneys' fees, discussed below, represent a reasonable percentage of the common settlement fund and are also comparable to the lodestar. The service awards, discussed below, are also not indicative of a collusive deal because a $5,000 award amount is "presumptively reasonable" in the Ninth Circuit. *See, e.g.*, *Smith v. Am. Greetings Corp.*, No. 14-cv-02577-JST, 2016 WL 362395, at *10 (N.D. Cal. Jan. 29, 2016). In regards to the third factor, the proposed settlement is non-reversionary.

Importantly, the parties reached the proposed settlement after an extensive arm's-length, non-collusive mediation with the assistance of an experienced mediator in the wage and hour class action field, Gig Kyriacou. Stoops App. Decl. ¶ 16; *see G. F. v. Contra Costa Cnty.*, No. 13-03667-MEJ, 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015) (noting that "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive").

1  Accordingly, the Court concludes that none of the *Bluetooth* factors are present and the proposed
2  settlement does not raise an inference of collusion.

### B. PAGA Claims

As discussed above, the Court will approve settlement of a PAGA claim if "the settlement terms (1) meet the statutory requirements set forth by PAGA, and (2) are fundamentally fair, reasonable, and adequate in view of PAGA's public policy goals." *Chamberlain,* 2020 WL 4350207, at *4.

With respect to the statutory requirements, PAGA provides that 75% of civil penalties recovered must be allocated to the LWDA and 25% must be allocated to aggrieved employees. *See Chamberlain,* 2020 WL 4350207, at *4. That requirement is met here, as the PAGA recovery is $20,000, of which $15,000 is allocated to the LWDA and $5,000 to class members.

The Court finds the Settlement to be fair, reasonable, and adequate for the reasons discussed above. Moreover, the Settlement will promote PAGA's public policy goals, which include "augmenting the state's enforcement capabilities, encouraging compliance with Labor Code provisions, and deterring noncompliance." *Chamberlain,* 2020 WL 4350207, at *4 (quoting *O'Connor*, 201 F. Supp. 3d at 1132-33). The PAGA claim reached conduct not directly addressed by the state, and it resulted in the state's recovery of $15,000 in civil penalties. Imposition of those penalties will encourage future compliance with the California Labor Code.

### C. Attorney's Fees and Costs

#### 1. Legal Standard

"While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, Fed. R. Civ. P. 23(h), courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth*, 654 F.3d at 941. "Where a settlement produces a common fund for the benefit of the entire class," as here, "courts have discretion to employ either the lodestar method or the percentage-of-recovery method" to determine the reasonableness of attorneys' fees. *Id.* at 942.

Under the percentage-of-recovery method, the attorneys are awarded fees in the amount of

a percentage of the common fund recovered for the class. *Bluetooth*, 654 F.3d at 942. Courts applying this method "typically calculate 25% of the fund as the benchmark for a reasonable fee award, providing adequate explanation in the record of any special circumstances justifying a departure." *Id.* (internal quotation marks omitted). However, "[t]he benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). Relevant factors to a determination of the percentage ultimately awarded include: "(1) the results achieved; (2) the risk of litigation; (3) the skill required and quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases." *Tarlecki v. bebe Stores, Inc.*, No. C 05–1777 MHP, 2009 WL 3720872, at *4 (N.D. Cal. Nov. 3, 2009) (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002)).

Under the lodestar method, attorneys' fees are "calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Bluetooth*, 654 F.3d at 941. This amount may be increased or decreased by a multiplier that reflects factors such as "the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Id.* at 941-42 (quoting *Hanlon*, 150 F.3d at 1029).

In common fund cases, a lodestar calculation may provide a cross-check on the reasonableness of a percentage award. *Vizcaino*, 290 F.3d at 1050. Where the attorneys' investment in the case "is minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable." *Id.* "Similarly, the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted." *Id.* Thus, even when the primary basis of the fee award is the percentage method, "the lodestar may provide a useful perspective on the reasonableness of a given percentage award." *Id.* "The lodestar cross-check calculation need entail neither mathematical precision nor bean counting . . .

14

[courts] may rely on summaries submitted by the attorneys and need not review actual billing records." *Covillo v. Specialtys Cafe*, No. C–11–00594–DMR, 2014 WL 954516, at *6 (N.D. Cal. Mar. 6, 2014) (quoting *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-07 (3d Cir. 2005)) (alterations in original).

An attorney is also entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal quotation marks and citation omitted).

### 2. Discussion

Class Counsel seeks an award of attorneys' fees of $262,500. Fee Motion at 1. This award is 30% of the value of the settlement. *Id.* And they seek an award of $14,272.32 in litigation expenses. *Id.* at 11.

The Court first approves the $14,272.32 in costs. The Court has reviewed Class Counsel's itemized lists of costs and finds that all of the expenses were necessary to the prosecution of this litigation. *See* Fee Motion, Ex B ("Stoops Fee Decl.") ¶ 51.

Counsel seeks attorneys' fees in the amount of $262,500, which is 30% of the value of the settlement and a 1.95 multiplier based on the $129,328 lodestar. Fee Motion at 1. Looking at the lodestar crosscheck, the Court determines that the multiplier is too high for a fairly routine wage and hour case with excellent results.

The Court will approve an attorneys' fee award of $236,250 as reasonable and in line with rates approved in this District for attorneys of similar skill and experience. The fee award is 27% of the constructive fund, which is just above the 25% "benchmark" in this circuit. *Bluetooth*, 654 F.3d at 942. "[I]t is common practice to award attorneys' fees at a higher percentage than the 25% benchmark in cases that involve a relatively small—i.e., under $10 million—settlement fund." *Thieriot v. Celtic Ins. Co.*, No. C 10-04462 LB, 2011 WL 1522385, at *6 (N.D. Cal. Apr. 21, 2011). The settlement fund here is under $1 million. Further, the Court notes that Plaintiffs' Counsel were working on a contingent fees basis, which carries a risk, and they achieved strong results for the class. *See Tarlecki*, 2009 WL 3720872, at *4. As stated above, the lodestar is $129,328. *See* ECF No. 61 ("Reply") at 1. The hourly rates charged by Class Counsel have been

approved by multiple courts in California. *See* Fee Motion at 9-10; Stoops Fee Decl. ¶ 33. Further, the Court finds the number of hours expended to be reasonable. *See* Reply at 1; Stoops Fee Decl. ¶¶ 34, 36; Reply, Ex. A ("Stoops Supp. Fee Decl.") ¶ 3. Using $129,328 as the lodestar results in a multiplier of approximately 1.83. The Ninth Circuit has recognized that multipliers generally range from 1 to 4. *See Vizcaino*, 290 F.3d at 1051 n.6. District courts within the Ninth Circuit commonly apply multipliers in that range in California wage and hour class actions. *See, e.g.*, *Uschold v. NSMG Shared Servs., LLC*, No. 18-cv-01039-JSC, 2020 WL 3035776, at *16 (N.D. Cal. June 5, 2020) (applying multiplier of 4); *De Leon*, 2020 WL 1531331, at *18 (applying multiplier of 1.09); *Ridgeway v. Wal-Mart Stores Inc.*, 269 F. Supp. 3d 975, 999 (N.D. Cal. 2017) (applying multiplier of 2.0). The Court considers 1.83 to be a reasonable multiplier, particularly in light of the significant effort Class Counsel expended litigating this case, and it adjusts the percentage of the settlement fund accordingly.

Accordingly, the Court approves a fee award of $236,250.

**D.     Service Award**

Named Plaintiffs Barbara Kulik, James Eskridge, Mary Dunning Garofalo, and Yadira Gomez each seek a service award of $5,000. *See* Fee Motion at 2. Incentive awards "are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009) (internal citation omitted).

"Incentive awards typically range from $2,000 to $10,000." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015). The Court typically awards an enhancement award around $5,000. *See Wong v. Arlo Techs., Inc.*, No. 5:19-cv-00372-BLF, 2021 WL 1531171, at *12 (N.D. Cal. Apr. 19, 2021) ("Service awards as high as $5,000 are presumptively reasonable in this judicial district.").

Each Plaintiff submitted a declaration indicating the work they did on the case. *See* Fee Motion, Exs. C ("Kulik Decl."), D ("Eskridge Decl."), E ("Garofalo Decl."), F ("Gomez Decl."). The work Plaintiffs describe in connection with this case is typical for a named plaintiff. The

1  Court determines that an award of $5,000 is reasonable for Plaintiffs Kulik and Garofalo. Both
2  Plaintiffs filed the case on May 10, 2021; Kulik estimates she spent 40-72 hours on the case and
3  Garofalo estimates she spent 20-30 hours on the case. Kulik Decl. ¶¶ 2, 16; Garofalo Decl. ¶¶ 2,
4  16. And the Court determines that an award of $3,000 is reasonable for Plaintiffs Eskridge and
5  Gomez. Eskridge and Gomez estimate that they spent 10-12 hours and 6-7 hours on the case,
6  respectively. Eskridge Decl. ¶ 16; Gomez Decl. ¶ 15. They also took the reputational risk
7  inherent in bringing the action. *See Rodriguez*, 563 F.3d at 958-59.
8  Accordingly, the Court approves a $5,000 service award for both Kulik and Garofalo and a
9  $3,000 service award for both Eskridge and Gomez.

### E. Administrative Costs

Plaintiffs also request settlement administration fees in the amount of $4,495 for the settlement administrator, Simpluris. *See* Final Approval Motion at 1; Kline Decl. ¶ 18. The Court finds this amount reasonable and approves the request.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

(1) A class for settlement purposes under Rule 23 and a FLSA collective for settlement purposes under 29 U.S.C. § 201 are CERTIFIED;

(2) The Settlement is APPROVED IN PART, as discussed in this Order;

(3) Plaintiffs Barbara Kulik, James Eskridge, and Mary Dunning Garofalo, as well as Opt-in Plaintiff Yadira Gomez, are APPOINTED as Class Representatives;

(4) Plaintiffs' counsel is APPOINTED as Class Counsel;

(5) $236,250 in attorneys' fees for Class Counsel are APPROVED;

(6) $14,272.32 in costs for Class Counsel are APPROVED;

(7) Service awards for Kulik and Garofalo of $5,000 each are APPROVED;

(8) Service awards for Eskridge and Gomez of $3,000 each are APPROVED;

(9) Fees to the third-party Settlement Administrator of $4,495 are APPROVED; and

(10) The timely request for exclusion by Teresa Bonilla is APPROVED.

Dated: March 13, 2023

BETH LABSON FREEMAN
United States District Judge